MICHAEL W. BIEN – Cal. Bar No. 096891
VAN SWEARINGEN – Cal. Bar No. 259809
ALEXANDER GOURSE – Cal. Bar No. 321631
AMY XU – Cal. Bar No. 330707
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
Email: mbien@rbgg.com
vswearingen@rbgg.com
agourse@rbgg.com
axu@rbgg.com

KELIANG (CLAY) ZHU – Cal. Bar No. 305509
DEHENG LAW OFFICES PC
7901 Stoneridge Drive #208
Pleasanton, California 94588
Telephone: (925) 399-5856
Facsimile: (925) 397-1976
Email: czhu@dehengsv.com

ANGUS F. NI – Wash. Bar No. 53828*
AFN LAW PLLC
502 Second Avenue, Suite 1400
Seattle, Washington 98104
Telephone: (773) 543-3223
Email: angus@afnlegal.com
* *Pro Hac Vice* application forthcoming

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| U.S. WECHAT USERS ALLIANCE, CHIHUO INC., BRENT COULTER, FANGYI DUAN, JINNENG BAO, ELAINE PENG, and XIAO ZHANG,<br><br>    Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, and WILBUR ROSS, in his official capacity as Secretary of Commerce,<br><br>    Defendants. | Case No. 3:20-cv-05910-LB<br><br>**DECLARATION OF ELAINE PENG IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge: Hon. Laurel Beeler<br>Date: September 17, 2020<br>Time: 9:30 a.m.<br>Crtrm.: Remote<br><br>Trial Date: None Set |

I, Elaine Peng, declare as follows:

1. I am a Plaintiff in the above-captioned action (the "Action"). I have personal knowledge of the matters stated herein and if called as a witness I could and would testify competently to them.

2. I was assisted in preparing this declaration in English. I primarily write and speak in Chinese, and if called as a witness I would testify in Chinese.

3. I am a United States citizen residing in Castro Valley, California.

4. I founded the Mental Health Association for Chinese Communities ("MHACC"), a nonprofit organization in 2013, with a mission of raising mental health awareness within the Chinese community through advocacy, education, research, support, and services to Chinese families and individuals afflicted by mental illness. MHACC is subsequently registered as a 501(c)(3) nonprofit organization in the State of California in 2018.

5. As President and CEO of MHACC, I started multiple Chinese support groups, developed and led numerous mental health programs, and developed the first Chinese language website for the National Alliance on Mental Illness ("NAMI").

6. Mine and MHACC's mission is to provide mental health education to reduce public prejudice against mental illness, decrease stigma among caregivers, promote mental health and provide mental health programs and peer support to the underserved Chinese community. I received the 2016 NAMI National's Multicultural Outreach Award and the 2017 NAMI California's Multicultural Outreach Award for my work in this field.

7. I first downloaded and used WeChat in 2014. Since then it has become the exclusive means for me to communicate with Chinese family members and friends in both China and in the United States on a daily basis. WeChat's group chat function also allows me to engage in discussions with a much wider network. I also receive news updates and interact with my WeChat network through likes and comments.

8. I use the group chat function frequently for political discussions. I am a member of multiple WeChat groups made up of WeChat users of similar political views

for the purpose of facilitating discussions relating to local, state or national politics.

9. I also use WeChat to further MHACC's mission. Since many of the Chinese community members we serve are not fluent in English, WeChat is a much friendlier application to them compared with other U.S. developed applications, which only have English user interfaces.

10. WeChat is our primary communications tool with our service recipients. I created two WeChat groups. One group consists of approximately 110 MHACC volunteers for our use for internal communications. The second group has approximately 420 members, made up of both volunteers, service recipients and their family members.

11. In the larger WeChat group, people in similar mental-health situations can share their experiences and organize to support one another. We also host lectures and lessons at least weekly through WeChat using the group discussion function. We also fundraise and share mental health lectures and other resources within these WeChat groups.

12. These WeChat groups have been a vital element of our work at MHACC.

13. MHACC has also created a WeChat homepage where we share mental health resources on a monthly basis. The MHACC WeChat homepage currently has approximately two hundred followers and has generated thousands of visits.

14. During the COVID-19 pandemics when physical mobility is seriously impacted, WeChat has played a bigger role in my daily life and in MHACC's daily operations. As cases of mental illness rise along with COVID-19, we have seen a dramatic increase of the volume of discussion in the MHACC WeChat groups.

15. I have also noticed an uptick in the political discussions in my other WeChat groups, since these can no longer take place in physical gatherings due to restrictions requiring social distancing.

16. The daily operation of MHACC largely depends on the free, continuous and uninterrupted access to WeChat services in the United States. MHACC provides, and people in need of mental health assistance receive, a substantial amount of MHACC's services on WeChat.

17. I learned about the Executive Order on WeChat from contacts sharing the news to me, and from discussions in group chats and from media reports. I also read the Executive Order itself, read news articles, and discussed with others to try to understand its scope.

18. So far I have not fully understood, and no one can give me a definitive answer, on the meaning of the words "transaction that is related to WeChat".

19. I understand that the Executive Order will take effect forty-five days after its issuance, and that violation of the Executive Order may subject one to administrative, civil or criminal liabilities.

20. I am not certain whether WeChat can still be used in the United States after the Executive Order takes effect, or that if WeChat can be used, what uses will cause me to violate the Executive Order and what uses will not. For example, I don't know if I will be violating the Executive Order if I simply log onto WeChat, send a message to my service recipients, make a voice or video call to my family, or share mental health resources with my service recipients. The possibility of being penalized for using WeChat leaves me in fear of violating the law simply by communicating with people.

21. To the extent access to WeChat is denied to users located in the United States because of the Executive Order, the mission and operation of MHACC will be negatively impacted in a very significant way. Since the Executive Order, we have received hundreds of inquiries from our service recipients and their family members who expressed serious concerns about not being able to get help from us if WeChat is banned.

22. I am concerned that, as a result of the Executive Order, MHACC will not be able to serve its current users with much needed mental health services, and that I will lose contact with the providers, care recipients, and family members with whom I am in regular contact.

23. My ability to maintain my own social ties, and to communicate with other Chinese community members in China and in the United States will also be adversely affected. For example, I created a WeChat family group chat with all my thirty-eight

family members. I video chat with my elderly parents-in-law in China frequently on WeChat to check on their health.  Without WeChat, I will have to go back to the old way of buying calling cards and making expensive international calls.  I will also not be able to reach all of my family members with one click.  I will not be able to look at them through video calls with my own eyes.  Nor can they see that I am well with their own eyes.

24. Since WeChat is the most popular social media platform among Chinese speakers in the U.S., it is practically impossible for me and MHACC to seek an alternative social media platform that has the same or substantially similar reach.

25. Faced with the threats of losing access to WeChat posed by the Executive Order, MHACC and I have been forced to expend our limited time, energy and resources to explore other U.S. based social media platforms.  However, we have not found a good alternative.

26. We resorted to switching to Line (another, Korean-made social media application) for our MHACC group sharing function as an imperfect temporary solution.  However, the process so far has been slow and ineffective and the solution problematic for a number of reasons.

27. For example, the majority of our four hundred plus service recipients are either elderly, or deficient in English, or both.  When we first founded MHACC in 2013, we went to great trouble just to instruct them on how to set up WeChat accounts, how to use WeChat to message and share, as many of them do not know how to use a smart phone.  In some cases we had MHACC staff drive hours to recipients' homes, or recipients drive hours to our office, just to have WeChat set up.  The process took an enormous amount of time and effort.

28. Since we started the project of switching to Line, we received countless inquiries and requests for help with setting up Line.  We now have no choice but to repeat the same process as we did with WeChat set-up.  The process this time is proving to be more time and energy consuming, as Line only has an English user interface and is thus unfriendly to our audience.  I had to pull two MHACC staff from their routine work and

designated them to help with Line related inquiries specifically. Nonetheless, the process has been slow and inefficient and only a small percentage of recipients have switched to Line so far.

29. Additionally, almost all of MHACC's data is stored on WeChat. We store our service recipients' names, addresses, contact information, and other vital information on WeChat. We sent out intake questionnaires on WeChat for them to complete. Our staff conducts one-on-one counselling with them on WeChat. We rely on the chat history to evaluate their case and design their treatment, and then deliver it to them on WeChat. We share articles on WeChat. In one case we even used the real-time location sharing function on WeChat to prevent a suicide attempt.

30. Since WeChat is its own ecosystem, I am not aware of any method to transfer this information outside of WeChat. Banning WeChat will mean erasing all this valuable information and destroying the informational foundations that MHACC has strived for years to build.

31. Further, we regularly invite guest speakers and mental health experts in China to host lectures or lessons on WeChat in Chinese to our service recipients. This will be impossible to do without WeChat.

32. Despite the mitigation measures we have been forced to take, it is my sincere belief that the harm being caused by the Executive Order, if it is allowed to stand, cannot be fully redressed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed at Castro Valley, California this 26th day of August, 2020.

*Elaine Peng*
Elaine Peng