DIRK LANGER, Ph.D.
Pro Se
PO Box 95
Santa Barbara, California 93102
Telephone: 412-708-3752
langer@dirklanger.com

FILED

SEP 08 ⎯⎯

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. WECHAT USERS ALLIANCE, CHIHUO INC., BRENT COULTER, FANGYI DUAN, JINNENG BAO, ELAINE PENG, and XIAO ZHANG,<br><br>Plaintiff(s),<br><br>vs.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, and WILBUR ROSS, in his official capacity as Secretary of Commerce,<br><br>Defendant(s). | Case Number: 3:20-cv-05910<br><br>**BRIEF OF *AMICUS CURIAE* DIRK LANGER** |

**INTRODUCTION AND STATEMENT OF INTEREST OF AMICUS CURIAE**

Dirk Langer respectfully submits this *amicus curiae* brief in support of the Plaintiff's Complaint For Declaratory and Injunctive Relief, related to the President's Executive Order 13943 from August 2020. Dirk Langer is a dual citizen of the United States of America and the Federal Republic of Germany, with a background in Electrical and Computer Engineering, with a Ph.D. in Robotics, a Technical Expert in his field, with more than 30 years of experience in the profession. Executive Order 13943, if enforced, could have a profound impact on the freedom to

*Form updated May 2018*

communicate and would set a dangerous precedent by restricting access to the exchange and dissemination of information that might not otherwise be classified or confidential.

## ARGUMENT

### I. The Executive Order Attempts to Assert Control over the Ownership of Personal and Public Information.

It is a well-established fact that electronic communication across international borders is monitored by governments of various countries, including the United States government. Since the 1980s, telephone and fax communications have been monitored, and in later years governments began to monitor internet-based communications. Users of the telephone and of Email or social media platforms are well aware that their communications are susceptible to interception by friendly or malign agencies. It is and always has been up to the user to take appropriate measures to safeguard his or her information. Personal data belongs to the person from whom it originates and, therefore, it is entirely the decision of the informed user whether to disclose his or her own personal data when using these various media platforms. This includes all personal communication to other entities. In issuing Executive Order 13943, the United States government attempts to assert control over the ownership of this personal data, including whether or how it can be used. This would set a dangerous precedent which would limit communication and the dissemination of private, as well as public, information.

### II. The Government's Obligation and the Safeguarding of Information and National Security

It is well known that there are security concerns associated with many spaces of the internet, and with computer systems in general. As such, it is the obligation of the government to issue a security warning to the public if the government becomes aware of a potential security threat. For example, the United States government's State Department issues travel advisories for regions in the world that pose a threat to the welfare or safety of an American traveler, and the level or degree of that threat. Having been provided with that information, a traveler is in a better

*Form updated May 2018*

position to assess the consequences and make an informed decision about whether to travel to that region.  Executive Order 13943 is a blanket ban on a large space of the internet, and as such it targets millions of users in the United States and billions of users globally.  However, the United States government has not provided an explanation as to why its ban on the dissemination of personal data furthers the goal of national security.

Different countries, often based on cultural differences, utilize different communication preferences and features for their social media and communication apps.  And these country-specific social media platforms are used not only by the populations located within those countries, but by a country's diaspora who are present in the United States.  These social media platforms include WeChat in China, LINE in Japan, KakaoTalk in Korea and WhatsApp in Germany, Greece, and others.  A blanket ban on WeChat targets a specific community and people of a specific national origin in the United States for no apparent reason.  It seems absurd that the U.S. government intends to apply this type of censorship in this instance when at the same time it denounces the same type of censorship when it is applied by other governments.

National security is a paramount concern of governments. There are technological solutions such as encryption software that can be utilized to safeguard sensitive information which could jeopardize national security.  The type of data displayed on a communication platform could be determined by the provider of the platform as well as the user of that platform, based on the level of security of that platform. This fact is well known to corporations and to most individuals.  Potential users should always be made aware of the level of security associated with a particular platform.

Therefore, the blanket ban perpetuated by Executive Order 13943 would not further the goal of national security and will instead divest millions of Americans, as well as people of other countries, to communicate freely.

*Form updated May 2018*

## CONCLUSION

For the foregoing reasons, Dirk Langer, Ph.D. and Technical Expert, respectfully requests that this court grant the Plaintiff's Petition for Declaratory and Injunctive relief.

Dated:                                              Respectfully submitted,

*[signature: Dirk Langer]*

Dirk Langer, Pro Se