MICHAEL W. BIEN – 096891
VAN SWEARINGEN – 259809
ALEXANDER GOURSE – 321631
AMY XU – 330707
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
Email: mbien@rbgg.com
vswearingen@rbgg.com
agourse@rbgg.com
axu@rbgg.com

KELIANG (CLAY) ZHU – 305509
DEHENG LAW OFFICES PC
7901 Stoneridge Drive #208
Pleasanton, California 94588
Telephone: (925) 399-5856
Facsimile: (925) 397-1976
Email: czhu@dehengsv.com

ANGUS F. NI – Admitted *Pro Hac Vice*
AFN LAW PLLC
502 Second Avenue, Suite 1400
Seattle, Washington 98104
Telephone: (773) 543-3223
Email: angus@afnlegal.com

THOMAS R. BURKE – 141930
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111-6533
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
Email: thomasburke@dwt.com

DAVID M. GOSSETT – Admitted *Pro Hac Vice*
DAVIS WRIGHT TREMAINE LLP
1301 K Street N.W., Suite 500 East
Washington, D.C. 20005-3366
Telephone: (202) 973-4216
Facsimile: (202) 973-4499
Email: davidgossett@dwt.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| U.S. WECHAT USERS ALLIANCE, CHIHUO INC., BRENT COULTER, FANGYI DUAN, JINNENG BAO, ELAINE PENG, and XIAO ZHANG,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, and WILBUR ROSS, in his official capacity as Secretary of Commerce,<br><br>Defendants. | Case No. 3:20-cv-05910-LB<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE REGARDING IMPLEMENTATION OF EXECUTIVE ORDER 13943**<br><br>Judge: Hon. Laurel Beeler<br>Date: September 17, 2020<br>Time: 9:30 a.m.<br>Crtrm.: Remote<br><br>Trial Date: None Set |

[3615616.1]

Case No. 3:20-cv-05910-LB

PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE REGARDING IMPLEMENTATION OF EXECUTIVE ORDER 13943

On September 16, 2020, with only two full business days left before the civil and criminal prohibitions of President Trump's Executive Order banning WeChat (the "EO") become effective, on Sunday, September 20, Defendants remain unable or unwilling to state publicly what "any transaction that is related to WeChat" means or what conduct Defendants have deemed to be subject to criminal prosecution. Defendants' "representations and assurances" in their Notice Regarding Implementation ("Notice," Dkt. 31) fall far short of what is needed to address the serious and substantial First and Fifth Amendment issues raised by the EO. Instead, Defendants' filing demonstrates that a preliminary injunction is necessary and appropriate to preserve the status quo and prevent the irreparable loss of rights pending full adjudication on the merits.

Plaintiffs' Complaint, filed on August 21, set forth numerous reasons that the WeChat Ban is constitutionally defective and must be enjoined. Without revealing the substance of any settlement communications, Plaintiffs want this Court to know that:

- Plaintiffs attempted to resolve the preliminary injunction by agreement beginning with a meet and confer letter dated August 24;
- A telephone call between the parties was held on August 25;
- More than two weeks later, Defendants sent their first written response on September 10;
- Plaintiffs responded to Defendants in writing within hours, raising important questions and concerns, and requesting a meeting; and
- Defendants declined to meet and, instead, waited six more days, until September 16, to respond at all, making only one minor change which is clearly insufficient.

Supplemental Declaration of Michael W. Bien in Support of Preliminary Injunction, *filed herewith*, ¶¶ 2-6.

Exhibit 1 to Defendants' Notice (Dkt. 31-1) at 2:7-8 references this correspondence, implying that the questions and concerns raised by Plaintiffs have been adequately addressed. Defendants' September 16 letter does not, in fact, resolve the fundamental

constitutional defects of the EO and underscores the critical importance of the preliminary injunction to protect the rights of Plaintiffs and other WeChat users in the United States.

## I. DEFENDANTS' "REPRESENTATIONS AND ASSURANCES" ARE INADEQUATE TO CURE THE EO; THE PRELIMINARY INJUNCTION SHOULD BE GRANTED

### A. The EO Will Still Become Effective on Sunday, September 20

Defendants have not delayed the effective date of the EO's prohibitions despite the fact that the Secretary "continues to review a range of transactions, including those that could directly or indirectly impact use of the WeChat app."[1]  Notice, Dkt. 31 at ECF 2:1-2. Defendants thus continue to refuse to address one of the many fundamental flaws in the EO:  it violates the Fifth Amendment Due Process Clause due to its failure to provide notice, its vagueness, and its overbreadth.  The EO may be enforced against Plaintiffs in just four days even though a reasonable person still cannot understand what the EO means or what conduct it will prohibit.  Defendants' September 16 letter confirms Plaintiffs' understanding of the EO—it will go into effect on September 20 unless this Court enjoins it.  *See United States v. Stevens*, 559 U.S. 460, 480 (2010) ("…the First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*.  We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly…This prosecution is itself evidence of the danger in putting faith in government representations of prosecutorial restraint.  When this legislation was enacted, the Executive Branch announced that it would interpret § 48 as covering only depictions 'of wanton cruelty to animals designed to appeal to a prurient interest in sex.' See Statement by President William J. Clinton upon Signing H. R. 1887, 34 Weekly Comp. Pres. Doc. 2557 (Dec. 9, 1999).  No one suggests that the videos in this case fit that description.  The Government's assurance that it will apply §48 far more restrictively than its language provides is pertinent only as an implicit acknowledgment of the potential constitutional problems with a more natural reading.").

---

[1] This is despite the fact the IEEPA explicitly prohibits the President from "directly or indirectly" curtailing "personal communications." *See* Mot. (Dkt. 17) at 32-33.

### B. The "Representations and Assurances" Provide No Clarity About What the Secretary Will or Won't Do on September 20

Defendants have still provided no information whatsoever about what specific "transactions" will be prohibited on September 20. Thus, the Secretary has not taken off the table his ability to ban the *use* of WeChat by anyone, including Plaintiffs and all other WeChat users in the United States. This could be done, for example, through a definition of transaction and an enforcement order directed at Tencent itself, or entities that contract with Tencent to provide products or services that allow WeChat to function in the United States, like Apple or Google, who make available the WeChat app in their online stores for use on their phones, and provide regular updates to the WeChat app through automatic downloads to app users.

The first sentence of the "representations and assurances" paragraph (Dkt. 31 at ECF 2:1) confuses rather than clarifies: "At present, activity involving the WeChat app is not prohibited." But on Sunday, September 20, there apparently *will* be activity involving the WeChat app that is prohibited, the Secretary just has not decided what the activity may be and sees no reason to inform Plaintiffs, the public, or this Court in advance of the effective date.

The second sentence (*id.* at ECF 2:1-4) confirms that the Secretary reserves the right to define transactions and to initiate an enforcement action on September 20, "that could directly or indirectly impact the use of the WeChat app." This expressly leaves open the possibility of actions that could ban or limit *all* of the constitutionally-protected uses of WeChat even if the "Secretary does not intend to take actions that would target persons or groups whose only connection with WeChat is their use or downloading of the app to convey personal or business information between users…or impose criminal or civil liability on such users." This is confirmed by the last sentence (*id.* at ECF 2:4-6): "the use of the app for such communications could be directly or indirectly impaired through measures targeted at other transactions, use and downloading of the app for this limited purpose" will not be prohibited.

**C.   There Are Numerous Other Activities and Uses of WeChat That May Still Be Prohibited and Subject to Criminal and Civil Sanctions That Are Not Addressed by Defendants' "Representations and Assurances"**

Defendants have provided a very narrow and limited statement that is anything but a safe harbor that would provide reasonable notice to WeChat users of what conduct will be prohibited by the EO on Sunday, September 20: "the Secretary does not intend to take actions that would target persons or groups whose only connection with WeChat is their use or downloading of the app to convey personal or business information between users." *Id.* at ECF 2:2-4. Plaintiffs' evidence submitted in support of this motion illustrates uses of the app that are not addressed by this carefully couched statement. For example, WeChat has a payments function that is used to buy and sell goods and to transfer funds to other users. *See, e.g.*, Sun Decl. (Dkt. 17-11) ¶ 10; Zhang Decl. (Dkt. 17-6) ¶ 10. That may be prohibited. WeChat users also use the app to store and manage data and information about their WeChat contacts, customers, employees and patients, and generally to run their businesses. *See, e.g.*, Duan Decl. (Dkt. 17-4) ¶¶ 14, 16; Peng Decl. (Dkt. 17-5) ¶¶ 10-11; Coulter Decl. (Dkt. 17-3) ¶¶ 11-12. That may be prohibited. WeChat users also purchase services from WeChat or Tencent, such as subscriptions and advertisements, and receive payments from or through WeChat/Tencent for products and services that they sell through the app. *See, e.g.*, Sun Decl. (Dkt. 17-11) ¶¶ 19-23; Duan Decl. (Dkt. 17-4) ¶¶ 18-20. These all may be prohibited.

In addition, anyone who does anything on WeChat other than "the use and download of the app to convey personal or business information to another user" may lose the benefit of even this narrow assurance because they no longer have that as their "only connection with WeChat," whatever that means. *See* Notice, Dkt. 31 at ECF 2:2-4.

**D.   Defendants' New Position Further Undermines the "National Security" Justification for the WeChat Ban**

Of course, Defendants' newly articulated indifference to individual WeChat users who "convey personal or business information" with other users, flies in the face of their entire rationale for banning WeChat in the first place—the purported national security

implications of the public's use of WeChat.  Having first failed to articulate any actual national security concern, the administration's latest "assurances" that users can keep using WeChat, and exchange their personal and business information, only further illustrates the hollowness and pre-textual nature of Defendants' "national security" rationales.

## II.     THE RECENT TIKTOK DECISION IS NOT RELEVANT

Defendants Notice of Recent Decision (Dkt. 32) concerns a lawsuit brought by an individual employee of TikTok challenging the President's August 6, 2020 executive order concerning TikTok.  Most importantly, that employees' lawsuit does not present a First Amendment claim.  *See* Dkt. 32 at 3, n. 1.  In the TikTok matter, the Government's assurance cured the specific concern raised by the plaintiff employee—that he would be prosecuted for receiving a paycheck.  *See* Dkt. 32 at 2.  The above inadequacies make clear that the Government's assurances here do not resolve Plaintiffs' injuries.  Finally, many of the Administrations' concerns about TikTok have are presently being addressed through the proposed spin-off of TikTok by ByteDance (TikTok's parent company) and proposed major investment/purchase in the new entity by U.S.-based Oracle.

## CONCLUSION

For all of these reasons, Plaintiffs request that this Court enter a preliminary injunction enjoining the EO.

DATED:  September 16, 2020         Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Michael W. Bien*
      Michael W. Bien

Attorneys for Plaintiffs