MICHAEL W. BIEN – 096891
VAN SWEARINGEN – 259809
ALEXANDER GOURSE – 321631
AMY XU – 330707
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone:  (415) 433-6830
Facsimile:  (415) 433-7104
Email:  mbien@rbgg.com
   vswearingen@rbgg.com
   agourse@rbgg.com
   axu@rbgg.com

THOMAS R. BURKE – 141930
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111-6533
Telephone:  (415) 276-6500
Facsimile:  (415) 276-6599
Email:  thomasburke@dwt.com

DAVID M. GOSSETT – Admitted *Pro Hac Vice*
DAVIS WRIGHT TREMAINE LLP
1301 K Street N.W., Suite 500 East
Washington, D.C. 20005-3366
Telephone:  (202) 973-4216
Facsimile:  (202) 973-4499
Email:  davidgossett@dwt.com

KELIANG (CLAY) ZHU – 305509
DEHENG LAW OFFICES PC
7901 Stoneridge Drive #208
Pleasanton, California 94588
Telephone:  (925) 399-5856
Facsimile:  (925) 397-1976
Email:  czhu@dehengsv.com

ANGUS F. NI – Admitted *Pro Hac Vice*
AFN LAW PLLC
502 Second Avenue, Suite 1400
Seattle, Washington 98104
Telephone:  (773) 543-3223
Email:  angus@afnlegal.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| U.S. WECHAT USERS ALLIANCE, CHIHUO INC., BRENT COULTER, FANGYI DUAN, JINNENG BAO, ELAINE PENG, and XIAO ZHANG,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, and WILBUR ROSS, in his official capacity as Secretary of Commerce,<br><br>Defendants. | Case No. 3:20-cv-05910-LB<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPTEMBER 18, 2020 NOTICE REGARDING IMPLEMENTATION OF EXECUTIVE ORDER**<br><br>Judge:  Hon. Laurel Beeler<br><br>Trial Date:  None Set |

The government insists that no injunction is needed because the Secretary of Commerce has issued his *Identification of Prohibited Transactions* (*Identification*), which specifies what will be prohibited by Executive Order 13943 as of Sunday, September 20, 2020. *See* Dkt. 38; Declaration of Michael W. Bien in Support of Plaintiffs' Response to Defendants' September 18, 2020 Notice Regarding Implementation of Executive Order ("Bien Decl.") ¶ 2 & Ex. A (copy of Identification). The Secretary's promulgation proves exactly the opposite: The scope of the prohibition remains unclear, lost in qualifying phrases and caveats, and thus users are appropriately fearful that their conduct will be banned. And in prominent media pronouncements this morning, the Secretary has stated that under this *Identification* the Executive Order will ban ***all*** use of WeChat effective Sunday, thus causing the harms we outlined in our earlier papers. The media understands this to be a "ban" and is so reporting. Finally, the government's earlier assurances to Plaintiffs and to this Court are not entirely consistent with the Commerce Department's announced rules—further proof that the government's rushed actions warrant careful judicial review before they are allowed to take effect. In short, the vagueness concerns that Plaintiffs have raised—and that this Court recognized during the preliminary injunction hearing—have not been resolved. The Court should issue the preliminary injunction it outlined during yesterday's hearing.

1. According to the *Identification*, the Secretary's prohibition "only apply to the parties to business-to-business transactions" (*id.* at 6), so—the government stresses—individual users should not "fear criminal prosecution or civil enforcement for personal use of the WeChat app to communicate with friends and family, read the news, engage in political debate, or participate in religious activities." Dkt. 38 at 2-3. But it is in fact quite unclear from the terms of the *Identification* whether any of these uses will still even be able to occur after Sunday: While the prohibitions apparently apply only to business-to-business transactions, the prohibited b2b transactions also seem to include all of the functions necessary to allow ***any*** use of the WeChat app to occur in the United States: the Secretary has interpreted "transaction" to include the provision to WeChat or Tencent of "internet hosting services" (*id.* at 5 ¶ 2), "content delivery

services" (*id.* at 5 ¶ 3), and "internet transit or peering services" (*id.* at 6 ¶ 4) "enabling the functioning … of the WeChat mobile application." *Id.*

This is by no means the only ambiguity in the Secretary's order. For example, the *Identification* in one place says that the prohibition does not include "the exchange of … business information using the WeChat mobile application, to include the transferring and receiving of funds." *Id.* at 7. But elsewhere, the Secretary bans "[a]ny provision of services through the WeChat mobile application for the purpose of transferring funds" (*id.* at 6 ¶ 5); does the ban, therefore, include all of the backend services necessary to allow that individual ("business") transfer of funds? Users are left wondering including several of the plaintiffs who are or operate businesses on WeChat.

Indeed, it is unclear if the government itself knows what the Secretary has banned. On the one hand, there are news reports today quoting "a senior Commerce official" as saying that, because of the *Identification*, "'[w]hat immediately is going to happen is users are going to experience a lag or lack of functionality' … . 'It may still be usable but it is not going to be as functional as it was.' There may be sporadic outages as well, the official said." Bien Decl. ¶ 7 & Ex. F (September 18, 2020 Reuters article). But Secretary Ross himself said earlier this morning on the *Fox Business Network* that, "[f]or all practical purposes [WeChat] will be shut down in the U.S. … as of midnight Monday." Bien Decl. ¶ 4 & Ex. C. The government has carefully focused its Notice to this Court on the likelihood of civil or criminal penalties for individual users. *See* Dkt. 38 at 2, 3. The government does not really address what the order will actually do, however, let alone all the harms that flow from an absolute ban on WeChat. In addition, the ambiguity of the Executive Order as to retroactive application is maintained in today's Statement, which states that the Secretary may continue to change the definition of "transaction" in the future, which Section 3 of the EO allows to become effective without notice. Bien Decl. ¶ 2 & Ex. A (*Identification* at paragraph 7).

2. It also remains similarly unclear what, if any, factual basis the Administration has for its claims that ordinary uses of WeChat represent an urgent threat to national security. In a televised interview on Friday morning, the Secretary of Commerce stated that it "is our *fear*" that

WeChat is "taking data from the American public and sending it to China." Bien Decl. ¶ 11. But the Secretary provided no examples of "data" being "sen[t] . . . to China" or how the mere transmission of "data" to China constitutes a national security threat. A separate statement from an anonymous "senior Commerce official" to a reporter for the technology publication CNET appears to confirm that the Administration has no evidence whatsoever of private data being harvested by WeChat in the United States. "Whether we have any evidence, domestically, of these particular apps taking data is missing the point, according to this official, because the Administration "know[s] what the Chinese government's intent is here in the United States." Bien Decl. ¶ 10 & Ex. I. Serious questions thus continue to exist whether the interests identified by the government really exist, let alone preclude being so urgent as to need rushed enforcement without giving the court and the parties time to address them.

3. In the government's Notice submitted to this Court on Wednesday, the government stressed that "we can provide assurances that the Secretary does not intend to take actions that would target persons or groups whose only connection with WeChat is their use or downloading of the app to convey personal or business information between users." Dkt. 31, at 2. Although it may well be true that the government will not "take action[]" against such uses, what the government failed to say in that filing was that both use and downloading of the WeChat app would be prohibited effective Sunday.[1] Counsel may not have known the true scope of the ban (and they did note that "the Department of Commerce continue[d] to review a range of transactions" then). And the government's "assurance" was, perhaps carefully, framed only in terms of enforcement actions against users—not directly addressing what conduct would be banned. But this ambiguity, which certainly affected the presentation of plaintiffs' preliminary injunction motion before the Court yesterday, is yet more proof that the government's rushed process itself causes plaintiffs and others harm.

---

[1] While there may be some question about whether use of the app will continue to be allowed, there is no doubt that the Secretary has purported to preclude all downloading of the app as of that day. *See Identification* at 5 ¶ 1.

4. Plaintiffs in this case have sought a preliminary injunction barring enforcement of the Executive Order pending the outcome of this litigation or alternatively for 60 days afgter the secretary defines the covered transactions. See Dkt. 17-13, at ¶¶ 11-13 (proposed relief). That remains the appropriate relief given, so no new motion for a preliminary injunction is needed. To be sure, the Secretary's *Identification* starts the 60-day clock contained in the proposed preliminary injunction. But it is the Executive Order that harms plaintiffs, and the existing preliminary injunction motion remains for the Court's decision.

\* \* \* \* \*

The Court should therefore preserve the status quo, as plaintiffs have argued, to allow the parties an opportunity to address the important questions about, *first*, what the Secretary's *Identification* actually means, and *second*, the legality of those prohibitions. Because the E.O. is itself *ultra vires* and in violation of the First and Fifth Amendment, the Secretary's pronouncements cannot "cure" those defects. Especially given the fact that the *Identification* apparently will shut WeChat down entirely, thus plainly operating as a prior restraint to protected speech, plaintiffs' preliminary injunction is clearly necessary.

DATED: September 18, 2020          Respectfully submitted,

                                                  ROSEN BIEN GALVAN & GRUNFELD LLP

                                                  By: */s/ Michael W. Bien*
                                                        Michael W. Bien

                                                Attorneys for Plaintiffs