MICHAEL W. BIEN – 096891
VAN SWEARINGEN – 259809
ALEXANDER GOURSE – 321631
AMY XU – 330707
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone:   (415) 433-6830
Facsimile:   (415) 433-7104
Email:       mbien@rbgg.com
             vswearingen@rbgg.com
             agourse@rbgg.com
             axu@rbgg.com

KELIANG (CLAY) ZHU – 305509
DEHENG LAW OFFICES PC
7901 Stoneridge Drive #208
Pleasanton, California 94588
Telephone:   (925) 399-5856
Facsimile:   (925) 397-1976
Email:       czhu@dehengsv.com

ANGUS F. NI – Admitted *Pro Hac Vice*
AFN LAW PLLC
502 Second Avenue, Suite 1400
Seattle, Washington 98104
Telephone:   (773) 543-3223
Email:       angus@afnlegal.com

THOMAS R. BURKE – 141930
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111-6533
Telephone:   (415) 276-6500
Facsimile:   (415) 276-6599
Email:       thomasburke@dwt.com

DAVID M. GOSSETT – Admitted *Pro Hac Vice*
DAVIS WRIGHT TREMAINE LLP
1301 K Street N.W., Suite 500 East
Washington, D.C. 20005-3366
Telephone:   (202) 973-4216
Facsimile:   (202) 973-4499
Email:       davidgossett@dwt.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| U.S. WECHAT USERS ALLIANCE, CHIHUO INC., BRENT COULTER, FANGYI DUAN, JINNENG BAO, ELAINE PENG, and XIAO ZHANG,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, and WILBUR ROSS, in his official capacity as Secretary of Commerce,<br><br>Defendants. | Case No. 3:20-cv-05910-LB<br><br>**PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge:   Hon. Laurel Beeler<br><br>Trial Date:   None Set |

# INTRODUCTION

Today the Secretary of Commerce brought some clarity to one of the issues before this Court by finally confirming that WeChat will be banned—shut down—for the millions of Chinese speaking Americans that rely on it to communicate, speak, read, pray, organize and operate their businesses. In so doing, the Secretary also cut off communications not only between millions of people in the United States with each other but also communications with friends, families, and businesses in China and the rest of the Chinese diaspora that rely on WeChat.

This is nothing more than an unprecedented prior restraint on protected speech, on the press, on the right to assemble and petition the government and the free exercise of religion. It is anything but "narrowly tailored;" it is a sledge hammer. The burden is on Defendants to justify the restrictions on speech—but they have failed to do so. The evidence today that these "interests" of the government are, in fact, a pretext are even stronger today. For example, the use of TikTok may continue unabated even though the weak evidence defendants previously presented focused almost exclusively on TikTok, not WeChat, as the danger.

The prohibitions of the Executive Order, including the imposition of criminal and civil penalties, without additional notice, are effective on Sunday, but what acts are prohibited and by whom, remain vague and unclear.

The dispute is ripe, the harm is irreparable and the First Amendment questions are serious and crystalized. The balance of hardships tips sharply in favor of Plaintiffs and the preliminary injunction must issue to preserve the status quo.

This renewed motion incorporates by reference all materials in the record, including Plaintiffs' original Motion (Dkt. 17-1), Reply (Dkt. 28), Notices to the Court (Dkts. 33 and 45), and the declarations and exhibits supporting those filings (no arguments are waived). An Amended Complaint will be filed today.

I. **PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS, AND HAVE, AT THE VERY LEAST, SHOWN SERIOUS QUESTIONS AS TO MERITS**

    A. **Plaintiffs Are Likely to Succeed on Their First Amendment Claims and Have Presented Serious Questions Going to Merits**

As we understand it from the Secretary's public statements and the government's representations to this Court, the Secretary's *Interpretation* is a complete ban on the use of WeChat.  Such a complete ban on WeChat is an unprecedented is a clear First Amendment violation—but at the very least, meets the standard for a preliminary injunction to preserve the status quo because "serious questions going to the merits were raised [with] the balance of hardships [tipping] sharply in the plaintiff's favor."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011).

There are a litany of reasons why the WeChat ban is unconstitutional (or poses, at the very least,  "serious questions going to the merits" as to whether Defendants' actions violate the First Amendment).  *First*, the EO and the *Interpretation* function as a prior restraint in that they prevent Plaintiffs and other WeChat users from speaking without the government's approval and "make[] the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official." *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151 (1969); *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 226 (1990); *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230 (7th Cir. 2015) (holding operator was entitled to preliminary injunction based on government's campaign to starve an online forum for sex-related classified ads of its business).

*Second*, there are serious questions as to whether the EO and *Interpretation,* in closing off WeChat to its users, are a content-based restriction that singles out content on WeChat, created and distributed by people in the Chinese community, for differential treatment.  Defendants' arguments that the restrictions are content-neutral is belied by the differential treatment announced by the Government toward  Tik-Tok, which does not primarily have a Chinese-user base.  *See Berger v. City of Seattle,* 569 F.3d 1029, 1051 (9th Cir. 2009) (rules purportedly regulating time, place, manner of speech actually found

to be "content-based by its very terms" by restricting people "from communicating a particular set of messages").  Despite allegedly similar concerns with respect to both WeChat and Tik Tok, Tik Tok users are not being immediately silenced, but Plaintiffs will be shut off from the domestic Chinese-American community and their overseas networks effective Sunday.  Plaintiffs have submitted unrebutted evidence that there is no *bona fide* national security concern regarding WeChat, but instead that the directive is motivated by a desire to silence Chinese-American voices and incite anti-Chinese animus in exchange for political points.  Therefore, serious questions are presented whether the EO can meet strict scrutiny as "the least restrictive or least intrusive means" of promoting a governmental interest, *see Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989), when the government has not even seriously considered the possible alternatives to a complete ban.  *See* Opp., Dkt. 22 at 38-39.  At the very least, the Court needs to preserve the status quo so that the "burden [can] shift to the government to justify the restriction." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011).

*Even if* the Court applies intermediate scrutiny (and it should not given the speech of millions involved)  there are also serious questions as to whether the EO and the Secretary's definitions satisfy those restrictions.   The Government's arguments on national security are overbroad, conclusory, and unsupported.  *See* Reply, Dkt. 28 at 8-10.  Even after clarifying that the WeChat ban is effective on Sunday, the Government still cannot identify the source of their "fear" that use of WeChat poses a threat to national security.  *See* Pls' Response, Dkt. 45 at 3-4.  The Court does not need to take the Government's word just because they invoke unsubstantiated concerns about "national security" as a talisman—especially when it is their burden to "justify the restriction" on speech.  *Thalheimer*, 645 F.3d at 1116; *S.O.C. v. County of Clark*, 152 F.3d 1136, 1146 (9th Cir. 1998) (plaintiffs demonstrated probable success on the merits because county did not meet its burden of demonstrating that its content-based ordinance was the least restrictive means to further a compelling interest).

Finally, it is beyond serious dispute that there are no substitutes to WeChat for

Plaintiffs. The constraints of the pandemic have forced the majority of communications and associations to occur virtually. Plaintiffs have no viable alternative to WeChat to access the vast network of Chinese communities found online. For numerous reasons, apps like Line, Telegraph, and WhatsApp are not broadly used within the Chinese and Chinese diaspora communities in which Plaintiffs wish to engage. Now that we know that the EO will be interpreted to ban fully WeChat, the practical effects of the WeChat ban are truly as broad as Plaintiffs hypothesized: Defendants have closed "an entire medium" of communication for Plaintiffs. *See* Mot., Dkt. 17 at 34-36.

### B. Executive Order 13943, as Interpreted by the Secretary's *Identification* of Prohibited Transactions, Remains *Ultra Vires*

As we previously argued, Executive Order 13943 is *ultra vires* under the IEEPA. That remains the case even after the Secretary's *Identification*. The EO itself establishes the prohibition that the Secretary's *Identification* interprets, and that prohibition remains unlawful if the Secretary's *Identification* does not define it narrowly enough so as to avoid running afoul of the express limitations on the President's authority in 50 U.S.C. § 1702(b). The Secretary's Identification does not come close to doing so.

Subsection 1702(b) forbids Defendants from "regulat[ing] or prohibit[ing], directly *or indirectly*," personal communications not involving transfers of value as well as the importation or exportation of information or informational materials. 50 U.S.C. § 1702(b)(1), (3) (emphasis added). Congress included the phrase "directly or indirectly" in Section 1702(b) to ensure that the IEEPA's protections for the personal communications and for exchange of information or informational materials has "a broad scope" that "facilitates transactions and activities incident to the flow of information and informational materials." *Kalantari v. NITV, Inc.*, 352 F.3d 1202, 1205 (9th Cir. 2003) (quoting H.R. Conf. Rep. No. 102-482 at 239 (1994)).

As we previously argued, the Executive Order by its terms bars "any transaction" with WeChat, regardless whether it falls within the scope of the IEEPA's limitation. Indeed, the *Identification* simply demonstrates that the prohibition in the EO is unlawful.

Under the Secretary's interpretation, the Executive Order prohibits "*Any* provision of services to distribute or maintain the WeChat mobile application, constituent code, or mobile application updates"; "*Any* provision of internet hosting services enabling the functioning or hosting of the WeChat mobile application" and "*Any* utilization of the WeChat mobile application's constituent code, functions, or services in the functioning of software or services developed and/or accessible within . . . the United States and its territories." Identification at ¶¶ 1-2, 6. As the Secretary himself admitted this morning, on national television, WeChat will "for all practical purposes . . . be shut down in the U.S." as soon as the President's prohibition takes effect on September 20. By "shut[ting] down" an entire medium of communication, through which Plaintiffs and millions of other Chinese Americans exchange ideas about news, culture, religion, politics, and myriad other topics, Defendants have acted *ultra vires* by "indirectly" prohibiting Plaintiffs' personal communications and importation and exportation of information or informational materials.

    **C.**    **Plaintiffs are Likely to Succeed on their Challenges to the *Identification* Based on the Administrative Procedures Act.**

As the Court is well aware, Plaintiffs' prior preliminary-injunction pleadings focused only on the Executive Order, which is itself unlawful for all the reasons we have given. But the Secretary's *Identification*, which purports to implement the Executive Order, is also itself unlawful under the Administrative Procedures Act. The APA directs courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; "contrary to constitutional right, power, privilege or immunity"; or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706. The *Identification* violates the APA for at least two reasons.

First, the government conceded at oral argument today that the Secretary has implemented the Executive Order so as to ban all use of WeChat by plaintiffs and other domestic users. But Section 1702(b) of the International Emergency Economic Powers Act

("IEEPA") states in relevant part that "[t]he authority granted to the President by [the IEEPA] does not include the authority to regulate or prohibit, directly or indirectly … (1) any postal, telegraphic, telephonic, or *other personal communication*, which does not involve a transfer of anything of value." 50 U.S.C. § 1702(b)(1).[1] The Secretary has now interpreted and implemented the Executive Order, however, precisely to bar such personal communications using WeChat.

The Court previously expressed skepticism about the ripeness of our argument that the Executive Order was *ultra vires* under the IEEPA, on the ground that the Secretary might have interpreted the Executive Order to be consistent with the IEEPA. But now that the Secretary has acted, the same underlying problem of the government running roughshod over the limitations contained in the IEEPA demonstrates that the *Identification* violates Section 706. The Secretary *could* perhaps have interpreted the Executive Order in a limited fashion consistent with the IEEPA—the Court's point.  But he chose not to do so, and thus his actual implementation of the Executive Order can and must be reviewed in light of the IEEPA.  It is plainly inconsistent with that controlling statute.[2]

Second, the *Identification* is also invalid on procedural grounds under the APA. Because the Secretary's determination of which transactions are covered by the Executive Order is purported to have binding legal effect, it constitutes a final rule that should have been promulgated via notice-and-comment rulemaking procedures under 5 U.S.C. § 553(b). The government will surely argue that the *Identification* falls within the foreign affairs exception in Section 553(a)(1).  But that provision must be "narrowly construed and

---

[1] It also provides that the president may not regulate or prohibit "(2) donations, by persons subject to the jurisdiction of the United States, of articles, such as food, clothing, and medicine, intended to be used to relieve human suffering…[or] (3) the importation from any country, or the exportation to any country, whether commercial or otherwise, regardless of format or medium of transmission, of any information or informational materials[.]" *Id.* (b)(2)-(3).

[2] To the extent the government argues for a narrower interpretation of the *Identification*, that would be inconsistent with the government's representations both in the media and in this Court. It would also serve to illustrate plaintiffs' argument that both the Executive Order and the *Identification* are unconstitutional on vagueness grounds.

only reluctantly countenanced." *Zhang v. Slattery*, 55 F.3d 732, 744 (2d Cir. 1995); *see also* H.R. Rep. No. 79-1980, at 257 (1946) (limited to "only those 'affairs' which so affect the relations of the United States with other governments that, for example, public rulemaking provisions would provoke definitely undesirable consequences." The Ninth Circuit has repeatedly explained that this exception must be construed narrowly. *E.g.*, *E. Bay. Sanctuary Covenant v. Trump*, 932 D.3d 742, 775 (9th Cir. 2018). The government is regulating (and banning) the use by U.S. citizens and residents of a specific business's app. Any underlying relation to the foreign affairs of the country is at best highly attenuated.

Indeed, the Secretary of Commerce himself apparently recognizes that the National Emergency declared by the President in May 2019, underlying the WeChat Executive Order, is not a sufficient reason to skip over the APA's notice-and-comment requirement. In November 2019 the Secretary issued a notice of proposed rulemaking to implement Executive Order 13873 ("Securing the Information and Communications Technology and Service Supply Chain")—the very Executive Order declaring the national emergency on which the later WeChat Executive Order (E.O. 13943) was based.  *See* Proposed Rule; Request for Comments; *Securing the Information and Communications Technology and Services Supply Chain*, 84 Fed. Reg. 65316 (Nov. 27, 2019).

And the concern about the lack of notice-and-comment procedures here is not purely hypothetical.  In such proceedings, for example, plaintiffs and others could have argued that an alternative to an outright ban would have been strict data privacy or other restrictions on WeChat in the United States, rather than an outright ban.

Plaintiffs thus are likely to succeed on the merits of their APA claims.

### D. Plaintiffs are likely to succeed on their Vagueness Claims

Plaintiffs have previously argued that the EO is void for vagueness because it was entirely unclear what transactions would be barred.  *See* Dkt. 17, at 16-21; Dkt. 28 at 11-12. The issuance of the Secretary's *Identification* of course changes this argument; but it does not in the end eliminate the argument:  As plaintiffs explained this morning (Dkt. 45 at 2-3), it remains unclear what the Executive Order, as implemented by the *Interpretation*,

bans.  Indeed, different government officials have provided different interpretations of it to the media today.  *See id.*  And as we also noted, the Secretary specifically retains the authority to change what transactions are banned (*Identification* at ¶ 7).  Coupled with the provision in the Executive Order allowing for enforcement of the prohibitions without any notice (E.O. 13943 at 2 § 3), our prior argument that the Executive Order is void for vagueness remains likely to succeed on the merits even after the Secretary's promulgation of his *Interpretation.*

## II. PRELIMINARY INJUNCTIVE RELIEF IS NECESSARY TO AVOID FURTHER HARMS

The uncontested evidence shows Plaintiffs fear being disconnected from families and friends in the United States and China as well as of being cut off from political discussions, campaign participation, religious events, and other social and cultural events. Mot. (Dkt. 17-1) at 35-36.  The unrebutted evidence also shows a WeChat ban effectively cuts of Plaintiffs' primary means of communication with business and non-profit contacts. *Id*. at 36.

There are no effective substitutes or available alternatives to WeChat because no other app with the same or similar set of functions is designed for and used by Chinese-speaking users, and none have the network effects of WeChat.  *See* Duan Decl. ¶¶ 29-30; Peng Decl. ¶¶ 24-26, 28; Zhang Decl. ¶¶ 19-20, 22-23; Coulter Decl. ¶ 11; Bao Decl. ¶ 17; *see also* Sun ¶¶ 12-34.  After learning today of Defendants' WeChat ban, Plaintiff Peng is "shocked and frightened, as my service recipients who are suffering mental health problems – including depression, schizophrenia, bipolar disorder, and post-traumatic stress disorder – will lose access to WeChat, the only channel for the them to receive services, educational materials, and treatment resources. This is a humanitarian crisis."  *See* Suppl. Peng Decl." ¶ 7.  Plaintiff Peng has tried to move the MHACC provider group to alternative apps but the majority of her service recipients cannot be shifted to other apps because WeChat is the only app with the functions MHACC needs that is also in the Chinese language.  *Id.* ¶¶ 8-9.  This includes WeChat's ability to:  "store all service

recipients' names, addresses, contact information, medical history, and other vital information;" "send out questionnaires;" allow for staff to "conduct one-on-one counselling;" evaluate case histories; and design and delivery treatment. *Id.* ¶ 9. MHACC has used " the real-time location sharing function on WeChat to prevent a suicide attempt." *Id.* Plaintiff Peng is "not aware of any method to transfer this information outside of WeChat." *Id.* Banning WeChat will mean that Plaintiff Peng and MHACC will lose "all these this valuable patient-specific information and destroy[] the fundamental foundation that MHACC has strived for years to build." *Id.* Plaintiff Peng will also lose "a critical and irreplaceable forum to reach" other Chinese Americans with whom she engages in political organizing. *Id.* ¶ 10.

### III. THE BALANCE OF HARDSHIPS AND THE PUBLIC INTEREST WEIGH HEAVILY IN PLAINTIFFS' FAVOR

For the reasons already identified, the balance of hardships and public interest weigh heavily in Plaintiffs' favor. The government's invocation of national security concerns remains entirely speculative and conclusory.

### CONCLUSION

For the reasons already in the record as well as those set forth above, Plaintiffs request that the Court enter a preliminary injunction as follows: Defendants President Donald J. Trump, in his official capacity, and Secretary of Commerce, Wilbur Ross, in his official capacity, as well as their agents, servants, employees, and all persons acting under their direction, are enjoined, pending final judgment, from enforcing Sections 1(a) and 2(a)-(b) of Executive Order 13943 to directly or indirectly prohibit or limit any use of the WeChat application in the United States or by "United States persons" abroad. Defendants President Donald J. Trump, in his official capacity, and Secretary of Commerce, Wilbur Ross, in his official capacity, as well as their agents, servants, employees, and all persons acting under their direction, are enjoined, pending final judgment, from implementing Section 5 of Executive Order 13943 to directly or indirectly prohibit or limit any use of the WeChat application in the United States or by "United

States persons" abroad.

DATED: September 18, 2020 　　　Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Michael W. Bien*
　　　Michael W. Bien

Attorneys for Plaintiffs