MICHAEL W. BIEN – 096891
VAN SWEARINGEN – 259809
ALEXANDER GOURSE – 321631
AMY XU – 330707
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
Email: mbien@rbgg.com
vswearingen@rbgg.com
agourse@rbgg.com
axu@rbgg.com

KELIANG (CLAY) ZHU – 305509
DEHENG LAW OFFICES PC
7901 Stoneridge Drive #208
Pleasanton, California 94588
Telephone: (925) 399-5856
Facsimile: (925) 397-1976
Email: czhu@dehengsv.com

ANGUS F. NI – Admitted *Pro Hac Vice*
AFN LAW PLLC
502 Second Avenue, Suite 1400
Seattle, Washington 98104
Telephone: (773) 543-3223
Email: angus@afnlegal.com

THOMAS R. BURKE – 141930
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111-6533
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
Email: thomasburke@dwt.com

DAVID M. GOSSETT – Admitted *Pro Hac Vice*
DAVIS WRIGHT TREMAINE LLP
1301 K Street N.W., Suite 500 East
Washington, D.C. 20005-3366
Telephone: (202) 973-4216
Facsimile: (202) 973-4499
Email: davidgossett@dwt.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| U.S. WECHAT USERS ALLIANCE, CHIHUO INC., BRENT COULTER, FANGYI DUAN, JINNENG BAO, ELAINE PENG, and XIAO ZHANG,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, and WILBUR ROSS, in his official capacity as Secretary of Commerce,<br><br>Defendants. | Case No. 3:20-cv-05910-LB<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge: Hon. Laurel Beeler<br>Date: September 19, 2020<br>Time: 1:30 p.m.<br>Crtrm.: Remote<br><br>Trial Date: None Set |

**INTRODUCTION**

Defendants' continue to ignore major issues central to this Court's decision and have replied with a reformulation of prior arguments that changes nothing. Among the major issues not rebutted, or in some instances even addressed, in Defendants' Opposition are the following:

1. The WeChat EO and the Secretary's Identification are and must be interpreted as a total ban on the use of the WeChat app by plaintiffs and all users in the United States.

2. The WeChat Ban will effect and harm only the Chinese American community and is motivated by President Trump's continued efforts to blame China for the pandemic and the recession rather than taking responsibility for his own failures.

3. WeChat is a unique super app that Chinese Americans are dependent on for multiple communication and other functions, protected by the First Amendment, especially in the pandemic.  This is especially true for people with low literacy in English and for communications with friends and family in China.

4. Defendants do not respond to plaintiffs' demonstration that the Secretary's Identification did not cure the vagueness claim.

As to the arguments Defendants do address, their rhetoric cannot hide the fact that they are largely rehashing points they have already made.  Below we address a few of the specific arguments Plaintiffs raise in their opposition. But the bottom line is that it remains the case that the government will, effective Sunday, bar all use of WeChat in the United States; that doing so will run roughshod over the First Amendment rights of U.S. users of the app and is otherwise unlawful; and that the balance of harms here plainly favors plaintiffs, who merely ask at this time that the Court preserve the status quo to allow for full briefing on the validity of the government's actions.

[3617503.1]                                               1                        Case No. 3:20-cv-05910-LB
REPLY IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION

## I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR FIRST AMENDMENT CLAIMS AND HAVE PRESENTED SERIOUS QUESTIONS GOING TO MERITS

Defendants cannot credibly argue that there are not at least serious questions that go to the merits of Plaintiffs' First Amendment claims, which merely requires that Plaintiffs show "colorable First Amendment claim." *Warsoldier v. Woodford*, 418 F.3d 989, 1001 (9th Cir. 2005).[1]  Indeed, the Government's statements that the Executive Order will ban all use of WeChat effective on Sunday confirms Plaintiffs' worst fears.  *See* Dkt. 45 at 2.  The Government does not dispute that, if permitted to take effect, the EO and *Identification* will prohibit an unprecedented amount of protected First Amendment activity and shut down an entire platform for speech.  *See* Mot., Dkt. 17 at 21-25 (stating that "[n]early everything that happens on WeChat is protected First Amendment activity," including but not limited to personal associations, worship, political speech, professional speech, and commercial speech).  Even without "deciding what level of scrutiny should apply," the Court can comfortably conclude that there are "serious First Amendment questions" and grant preliminary relief.  *Viacom Int'l, Inc. v. FCC*, 828 F. Supp. 741, 743 (N.D. Cal. 1993).

Defendants do not deny that they make distinctions based on national origin and instead acknowledge that the WeChat EO disproportionately burdens Chinese-Americans and their ability to speak.  *See* Opp., Dkt. 22 at 36-37.  This is precisely the type of prohibited content-based restriction that "[distinguishes] among different speakers, allowing speech by some but not others."  *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340–41 (2010).  The EO singles out WeChat users (i.e., predominantly Chinese-Americans) as the only group subject to speech restrictions, exactly as the law at issue in *Citizens United* prohibited corporations from engaging in political speech due to their

---

[1]  Nor should the Court be persuaded by the Government's argument that it is "prejudiced with its response due in three hours" by Plaintiffs' use of the sliding-scale standard for preliminary injunctions when the standard was briefed in the original motion, *see* Mot., Dkt. 17 at 23, and again in the reply, in responding to Defendants' briefing, *see, e.g.*, Dkt. 28 at 12-13.

1  corporate identify. *Id.* at 340. Further, Defendants still cannot rebut evidence that the EO
2  is based on racial animus and the need to garner political favor.

3  The Government fully recognizes the extent to which Plaintiffs rely on WeChat but
4  hopes that the Court will simply ignore the breadth of the EO and the amount of speech it
5  burdens. Other social media applications cannot connect Plaintiffs to the same networks or
6  communities. Further, courts that analyze *whether* ample alternative avenues exist do not
7  ask *why* there are so few alternatives. Defendants fail to establish that there are ample
8  alternative avenues, even if this Court conclusively decides that intermediate scrutiny is
9  the right standard to apply.

10  As previously argued, the other *Winters* factors also weigh in favor of Plaintiffs.
11  *See* Mot., Dkt. 17 at 35-40. It is indisputable that the potential loss of any First
12  Amendment freedoms is irreparable harm. *See Warsoldier*, 418 F.3d at 1001-02 ("[U]nder
13  the law of this circuit, a party seeking preliminary injunctive relief in a First Amendment
14  context can establish irreparable injury sufficient to merit the grant of relief by
15  demonstrating the existence of a colorable First Amendment claim.") (quotation marks
16  omitted). And the balance of the hardships and the public interest weigh clearly in the
17  Plaintiffs' favor after considering the imminent infringement of Plaintiffs' First
18  Amendment rights in the face of ambiguous and unsubstantiated national security
19  concerns. *See Sammartano v. First Judicial Dist. Court, in & for Cty. of Carson City*, 303
20  F.3d 959, 974 (9th Cir. 2002), *abrogated on other grounds* ("Courts considering requests
21  for preliminary injunctions have consistently recognized the significant public interest in
22  upholding First Amendment principles."). To preserve the status quo and Plaintiffs' First
23  Amendment rights, this Court must issue an injunction. *See, e.g.*, *Index Newspapers LLC*
24  *v. City of Portland*, No. 3:20-CV-1035-SI, 2020 WL 4220820, at *9 (D. Or. July 23, 2020)
25  (granting TRO because plaintiffs raised serious First Amendment questions).

26  Finally, after conceding that the EO will result in a complete ban of WeChat, the
27  Government's insistence that its "actions do not burden substantially more speech than
28  necessary" (Opp. at 7) rings hollow. Never before has an administration banned an entire

social media platform – that is indisputably the primary platform of communications needs for a minority community – with such discriminatory animus and haste.

## II. DEFENDANTS' DEFINITIONS OF PROHIBITED TRANSACTIONS ARE NOT COMMITTED TO AGENCY DISCRETION

Having previously argued that Plaintiffs should have waited to challenge the EO until the Secretary issued his definitions of prohibited transactions, Defendants now claim that the question of whether these definitions comply with the clear statutory limits on Defendants' authority is beyond the scope of judicial review. It is not. Notably absent from Defendants' argument is any reference to statutory language suggesting that this question is committed to agency discretion. As Plaintiffs demonstrated in their Reply brief, the language Defendants previously cited for this argument in fact proves the opposite. See Reply at 7:27 – 8:12. Defendants' new cases in support of this argument are simply inapposite, because Plaintiffs are not challenging the validity of a decision to withhold enforcement, the allocation of a lump-sum budget appropriation, or an agency's refusal to reconsider a prior decision based on alleged material error. Rather, Plaintiffs argue that Defendants exceeded the authority granted to them by a statutory provision that explicitly states that "[t]he authority granted to the President by this section does not include the authority to regulate or prohibit, directly or indirectly," personal communications or the exchange of information or informational materials. 50 U.S.C. § 1702(b)(1), (3). Courts have considered in the past whether Defendants exceeded the authority delegated to them by the IEEPA, *see* Reply at 8:8-12, and Defendants have offered no plausible reason why this Court should do otherwise.

## III. DEFENDANTS FAIL TO SUBSTANTIATE THEIR NATIONAL SECURITY HARMS

The government again stresses the purported national security implications of this case—now calling them "of the highest importance," Opp. at 5; *see also id.* at 3-4, 13. But wishing does not make it so, and certainly does not substitute for an *actual* evidentiary

showing to demonstrate this to the Court.[2] As we explained in our earlier reply brief (Dkt. 28 at 8-9), almost none of the "evidence" to which the government cites—the same evidence it cited in its prior opposition (Dkt. 22 at 4-13)—has anything specifically to do with WeChat. *See* Dkt. 28 at 9 n.7.

The government also stresses the fact that Congress has not "invoked" its authority to block the President's action pursuant to the IEEPA. Opp. at 7. That is true, but besides the point: It remains the case that Congress specifically limited that presidential authority to bar personal communications by means of the invocation of a (purported) national emergency. 50 U.S.C. § 1702(b)(1); *see also id.* at (b)(2)-(3). It is that statutory prohibition on which plaintiffs rely.

Finally, the government repeatedly argues that this Court must simply defer blindly to its invocation of national security interests. *See* Opp. at 3; *see also id.* at 13. But that is simply not the law. As the Ninth Circuit has explained, courts "are free to review whether the actions taken pursuant to a national emergency comport with the power delegated by Congress." *United States v. Spawr Optical Research, Inc.*, 685 F.2d 1076, 1080-81 (9th Cir. 1982). Or as the Supreme Court has framed the point, "it is error to suppose that every case r controversy which touches on foreign relations lies beyond judicial cognizance." *Japan Whaling Ass'n v. American Cetacean Soc.*, 478 U.S. 221, 230 (1986).[3]

Here, especially given the profound First Amendment issues raised by this case, the Court reasonably can and should determine whether the government's purported national security interests have any factual basis, or instead are merely political cover for actions taken for the President's political advantage.

---

[2] At the Court's hearing earlier today (Dkt. 46), the government referred to a purported classified threat assessment related to WeChat. Notably, there is no reference—even redacted—to such classified material, or to a request to produce such material *in camera*, in the government's actual filing.

[3] Nor should this Court feel bound otherwise by *Trump v. Hawaii*, *see* Opp. at 3, in which the Court was bound by rational basis review—a more deferential standard than what is applicable here. *See Hawaii*, 138 S. Ct. 2392, 2422 (2018).

## IV. PRELIMINARY INJUNCTIVE RELIEF IS NECESSARY TO AVOID FURTHER HARMS

Defendants suggest that Plaintiffs have shifted to now contending irreparable harm from losing connection with friends, family, congregants, business partners, and political contacts, but Plaintiffs' Motion adequately addresses these concerns. Defendants incorrectly argue that "Plaintiffs' supplemental motion fails to even attempt to distinguish cases" in Defendants Opposition. *See* Plaintiffs' Reply, Dkt. 28 at 18-19 (distinguishing Defendants' cases). It is also incorrect that Plaintiff Peng's complaints "stem primarily from fear about the effect of the Order" on her mental health service recipients. Opp. at 12. Those concerns are valid, but regardless Plaintiff Peng's concerns are also about MHACC, the mental health organization that she founded and built to serve the mental health needs of her community are sufficient harms in and of themselves.

## V. THE BALANCE OF HARDSHIPS AND THE PUBLIC INTEREST WEIGH HEAVILY IN PLAINTIFFS' FAVOR

Defendants rely on vague, conclusory, and unsupported assertions of "compelling national and foreign policy concerns," and point to the same cases that they relied on in their original Opposition brief (Dkt. 22). Opp. at 13. However, those cases are distinguished in part by the fact that they relied on substantial evidence of a national security or foreign policy threat. *See* Dkt. 28 at 19-20; page 5-6, *supra*. Defendants additionally cite *Stagg P.C. v. U.S. Dep't of State*, 158 F. Supp. 3d 203, 207 (S.D.N.Y.), but, that case is inapposite as it involved classified and unclassified technical data that was not approved for public release. *Id.* at 210. Similarly, *Def. Distributed v. U.S. Dep't of State*, 121 F. Supp. 3d 680, 689, 696 (W.D. Tex. 2015) involved restrictions of the export of "defense articles," and there, the court concluded "Plaintiffs have not shown a substantial likelihood of success on the merits of their claim under the First Amendment." Here, there is simply no evidence that any of Plaintiffs' communications threaten the United States' national security or foreign policy interests. On the other hand, Plaintiffs have demonstrated irreparable harm through uncontested evidence.

## VI. A NATIONWIDE INJUNCTION IS APPROPRIATE

Defendants cite *California v. Azar* for the proposition that a nationwide injunction should not issue. However, "[u]nlike the plaintiffs in California v. Azar… the [Plaintiffs] here 'do not operate in a fashion' that permits neat geographic boundaries." *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1282–83 (9th Cir. 2020) (affirming nationwide injunction against new rule adopted by Department of Justice and Department of Homeland Security, in combination with presidential proclamation). Here, the Defendants ask that an injunction be limited to Plaintiffs, Dkt. 22. at 40, but that is not a workable alternative form of injunction because—as Plaintiffs have demonstrated and Defendants have not contested—Plaintiffs would be left to only use WeChat to communicate with each other. Such a solution would not provide relief to remedy Plaintiffs' harms from a nationwide WeChat ban.

DATED: September 18, 2020            Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Michael W. Bien*
    Michael W. Bien

Attorneys for Plaintiffs