Pages 1 - 41

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Laurel Beeler, Judge

```
U.S. WECHAT USERS ALLIANCE,      )
CHIHUO INC., BRENT COULTER,      )
FANGYI DUAN, JINNENG BAO,        )
ELAINE PENG, and XIAO ZHANG,     )
                                 )
          Plaintiffs,            )
                                 )
  VS.                            )   No. C 20-5910 LB
                                 )
DONALD J. TRUMP, in his          )
official capacity as President   )
of the United States, and       )
WILBUR ROSS, in his official     )
capacity as Secretary of         )
Commerce,                        )
                                 )
          Defendants.            )
_____  )
```

San Francisco, California
Friday, September 18, 2020

**TRANSCRIPT OF REMOTE VIDEO PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:          ROSEN BIEN GALVAN & GRUNFELD LLP
                         101 Mission Street, Sixth Floor
                         San Francisco, California 94105-1738
                    BY:  **MICHAEL W. BIEN, ESQ.**
                         **VAN SWEARINGEN, ESQ.**

                         DEHENG LAW OFFICES PC
                         7901 Stoneridge Drive, #208
                         Pleasanton, California 94588
                    BY:  **KELIANG (CLAY) ZHU, ESQ.**


                **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported By:  Ruth Levine Ekhaus, RDR, FCRR
             Official Reporter, CSR No. 12219

1    **APPEARANCES**:   **(CONTINUED)**

2    For Plaintiffs              DAVIS WRIGHT TREMAINE LLP
                                 505 Montgomery Street, Suite 800
3                                San Francisco, California 94111-6533
                            BY:  **THOMAS R. BURKE, ESQ.**
4
                                 DAVIS WRIGHT TREMAINE LLP
5                                1301 K Street NW, Suite 500 East
                                 Washington, DC 20005
6                           BY:  **DAVID M. GOSSETT, ESQ.**

7    For Defendants:             UNITED STATES DEPARTMENT OF JUSTICE
                                 Civil Division, Federal Programs Branch
8                                Ben Franklin Station, P.O. Box No. 883
                                 Washington, DC 20044
9                           BY:  **MICHAEL DREZNER, ESQ.**
                                 **SERENA M. ORLOFF**, ESQ.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   Friday - September 18, 2020                    11:45 a.m.

 2                   P R O C E E D I N G S

 3                        ---o0o---

 4       THE CLERK:  Calling Civil Action 20-5910, US WeChat

 5   Users Alliance, et al.

 6       Counsel, if you could, please state your appearances for

 7   the record.

 8       MR. BIEN:  Good morning, Your Honor.  Michael Bien and

 9   Van Swearingen from Rosen, Bien, Galvan & Grunfeld on behalf of

10   plaintiffs; along with Clay Zhu, Angus Ni, Thomas Burke, Dave

11   Gossett.  Thank you.

12       THE COURT:  Good morning.

13       MS. ORLOFF:  Good morning, Your Honor, and afternoon

14   here on the east coast.  Serena Orloff from the Department of

15   Justice Civil Division; and with me is Michael Drezner, my

16   colleague, for the Government.

17       THE COURT:  Great.  Okay.  So let me -- thank you all

18   for being available on short notice.  I'm looking at my

19   computer screen just to double-check that there has been

20   nothing else filed since 10:45 -- which is fine.

21       Let me tell you my concern, the genesis of my comment

22   about mootness, and then maybe we can hear what the Government

23   has to say about it.

24       And this wasn't meant to foreclose an avenue for

25   directing -- for addressing the issues that now are more
```

**PROCEEDINGS**

1  concrete.  I mean, it's not moot in the sense that, of course,

2  the harm is concrete now.

3      I will tell you this just by preliminarily -- and I don't

4  know whether it was entirely obvious at the end of the hearing,

5  but after all I was convinced by the prudential ripeness

6  argument that the Government advanced.

7      So the order that I was going to issue this morning, until

8  I had the ping on my notifications that -- about the

9  secretary's issuance of the definition of "per transaction," I

10 was going to say it wasn't ripe and sort of offer -- I would

11 say I was basically available any time to address it, when the

12 Secretary did define "transaction."

13     So that was what the order was going to be after

14 yesterday's hearing.  And then, of course, I didn't do it this

15 morning because I didn't have to.

16     And my concern is not that -- and the situation that we

17 have now -- and I have feedback from somebody.  I don't know if

18 someone is on two devices, which will give feedback.

19     The situation that I have now is that the main argument

20 that I was considering yesterday, is a ground for the -- are

21 you all hearing feedback too?  I'm not sure why that is.

22     Okay.  Let's try that.  Good.  That took care of it.

23     Can you all still hear me?  Good.  So I think that was it.

24     The perils of having court hearings at home with all the

25 noise that attends the background, so I'm glad -- the whole

1    point of using a headset is so I avoid it on my end.

2         Yesterday, the ground that I was considering -- and the

3    only ground I was considering -- to grant the preliminary

4    injunction was the void for vagueness ground.  And that -- and

5    as refined in the reply brief, that was very much a notice

6    Fifth Amendment issue.  And, in fact, you defined the issue by

7    reference to Judge Orrick's opinion.

8         That, for example, is now off the table because it no

9    longer exists because of the nature of the ban of WeChat.  It's

10   not -- it does not have civil or criminal penalties for the

11   individuals, as the Government said in its notice that it gave

12   last Wednesday.

13        But, in any event, as I said, I was going to say the rest

14   of it was not ripe because how, for the reasons we said

15   yesterday, can I decide the burdens on speech, for example,

16   without knowing what the burdens are?  And so now we do know

17   what the burdens are; right?  We do.  But if I were to look at

18   the case in the vacuum of the executive order, I became

19   convinced that, given the national security -- the President's

20   ability to issue executive orders in an interest of national

21   security, the issue was not ripe -- and this is

22   the Government's argument all along -- until the Secretary

23   issued his guidance.

24        So now we have a concrete issue; we have a real issue.

25   And so I am interested in hearing the Government's perspective

**PROCEEDINGS**

1   on whether the motion is moot.

2        The reason I brought it up -- and it is not to say that I

3   can't address the issue, ultimately, today; but here was my

4   thought process about how does one tee this up.  And I don't

5   mean for it to create enormous burdens, but as the Government

6   said, I think, in its notice this morning, but certainly we

7   contemplated this through the briefing, the appropriate way to

8   challenge the secretary's action is a complaint and then a TRO;

9   right?

10       And then so -- then I recognize the burdens this places on

11  a plaintiff.  I can imagine a shortcut process that would

12  enable us to address the issues realtime, before the -- before

13  anything goes into effect.  So I'm not saying I'm not here to

14  address the First Amendment issues -- because now this case

15  really is -- well, I will say this about the ultra vires

16  argument -- I said this yesterday, I think, but it was hard,

17  again, to decide on the record that was only the executive

18  order, whether the implementation of that order, through the

19  definition of "transaction" by the Secretary of Commerce, in

20  fact, exceeded the President's authority under the statute as a

21  communication that he couldn't regulate.  So that wasn't ripe

22  either.

23       And so now we have a situation where those issues are

24  ready to be addressed.  My procedural concern is:  Are they

25  able to be addressed in the context of this complaint and this

1   motion?  Because the fact landscape or the procedural landscape

2   is different.  As to what does that mean concretely for our

3   ability to address the issue, I could imagine a shortcut

4   process where there is a placeholder complaint that essentially

5   cross-references the factual allegations of the underlying

6   complaint and an accompanying TRO, that could be queued up --

7   and things could be cleaned up -- this was something that I

8   thought about -- next week even.

9        And then we would -- depending upon what happened --

10  assuming I granted the TRO, then we would set a briefing

11  schedule to address the preliminary injunction motion.

12       So that was why I sort of -- I rattled this morning about

13  the issue.  And thank you, Mr. Bien, for then filing something.

14       So I just wanted to describe, one, where we were as of

15  yesterday; two, my concerns about how to best address the

16  issues that absolutely are now ripe, and are now concrete.  And

17  so that was -- that was my concern.

18       So we can now proceed in one of two ways.  Mr. -- we could

19  hear first from the Government about what its position is on

20  the issue of whether the existing motion is moot and what the

21  correct procedural way to address it is; and then we can hear

22  from Mr. Bien; and then we can decide what to do.

23            **MS. ORLOFF:**  Thank you, Your Honor.  And I think --

24            **THE COURT:**  I'll put myself on mute.

25            **MS. ORLOFF:**  I think I can be fairly brief because

1   Your Honor, in many ways, took the words right out of my mouth

2   in terms of some of the points I was going to make.

3       We agree with the Court that the issues that we have spent

4   the last three weeks litigating are mooted, and it's not to say

5   that we don't think that plaintiffs still have a claim; we

6   recognize that they do.  But the fact is that the plaintiffs

7   noticed as of this morning now reads like an argument for why

8   the Court should enjoin the Secretary's decision issued this

9   morning, whereas during the last three weeks we were focused on

10  the state of the executive order, you know, where we disagree

11  with the arguments that are presented in the notice.  But we

12  can't have an adversarial process where the complaint and the

13  motions that we have filed have now really been overtaken by

14  events and the landscape has fundamentally changed.

15      So, you know, I don't -- I think we would be amenable to,

16  say, an approach that is something like what Your Honor has

17  laid out.

18      We don't think Your Honor should grant a TRO.  But what we

19  would request is some time to sit and meet and confer with

20  plaintiffs.  We can do it today; get a schedule together for

21  any motion that they may wish to file -- an amended complaint.

22  If we can't agree, we can lay out our positions in a filing

23  with the Court.

24      The one procedural issue I would note is that there is a

25  reference to a classified threat assessment in I think it's --

**PROCEEDINGS**

 1    I believe it is in the rule itself.  If it's not, there is such

 2    a classified threat assessment.  And we are conferring with our

 3    clients as to whether or not we want to bring that to the

 4    Court's attention in connection with any expedited briefing,

 5    and what the protocols would be for that.

 6         So we are trying to drill down on that right now.  But our

 7    proposal is that we confer with the plaintiffs and we submit

 8    either jointly or, you know, a contested schedule sometime

 9    later today.

10         **THE COURT:**  Okay.  So one question I have, of course,

11    is the -- and, again, I am still processing -- if you could

12    mute yourself again, Ms. Orloff, I think that will take care of

13    our feedback issue.

14         All right.  So one concern that I have is the timing.

15    And, obviously, if the Government were to agree -- which I

16    doubt that it would given Mr. Drezner's representations -- to

17    defer the implementation of the Secretary -- of the executive

18    order pending a tidy briefing schedule -- absent that

19    agreement, which I am guessing is not going to happen, there is

20    the issue of the ban going into effect as of -- as of the 20th.

21    And the representations that have been made by the Government

22    in the public arena, in press conferences, about the effect of

23    the regulation on the users who, while are not subject to civil

24    or criminal penalties themselves, nonetheless, are essentially

25    cut off from the app as of Sunday night.

**PROCEEDINGS**

1    So that is in the record; we know that.  It is an

2  admission or definitely something I can notice and so I'm not

3  concerned about that.

4    And so to maintain the status quo and I -- you know, I'm

5  all fine with an orderly briefing schedule to address,

6  ultimately, the landscape of a preliminary injunction.  That's

7  fine.

8    A lot of the existing papers can be re-purposed without a

9  lot of effort to address adding the Secretary as a defendant,

10  however that.  So what I had imagined -- I imagine that it is

11  going to be an issue for the plaintiffs not having a prompt

12  decision on the TRO -- which is how I'm thinking of the case

13  now -- before the implementation on September 30th.

14    One thought that I had is something to the effect of

15  amending the complaint with a cover sheet, essentially, to add

16  a defendant.  That would require the Government's consent as a

17  new defendant -- and I don't know how that would work with

18  the -- I have to think about the capacities and the consent,

19  but I think for a clean record we would do that.

20    And then we would have a TRO motion that would be

21  addressed today or tomorrow, where -- we have two whole days.

22  I'm kind of exaggerating for literary effect.  I prefer to do

23  it today or tomorrow morning, because no matter what the

24  outcome -- and it may be amenable, the motion itself, to being

25  heard on the papers.

**PROCEEDINGS**

1    And -- because in the end, now we do have, as you said, we

2  have a First Amendment claim that's ready to decide; and we

3  have a pronouncement in the press that it is what the

4  plaintiffs feared it would be.

5    And I have been working on my order, my ultimate order,

6  all morning anyway, because I am able to do that; but to really

7  write a robust order that is ultimately a preliminary junction

8  order, not a TRO but a preliminary injunction order, that

9  necessarily would have to come on the heels of full briefing.

10    So those are my thoughts to respond to Ms. Orloff's

11  argument.  I mean, one, you can respond first and I want to

12  hear from Mr. Bien why he thinks, nonetheless, I should be able

13  to address this.

14    My concern is not substantive; it's procedural, as you

15  know.  But let's hear from Ms. Orloff first.

16    **MS. ORLOFF:**  Thank you, Your Honor.

17    I do want to say it feels a little concerning -- and maybe

18  I just misunderstood the Court, but it sounded like the Court

19  perhaps had already made up its mind on the relief that would

20  be issued and was writing the opinion now, so --

21    **THE COURT:**  No.  I'm writing the facts now.  I don't

22  mean to interrupt you, but just to kind of reassure you, to the

23  contrary, I like oral argument; I care about your views.  I

24  changed my mind based on your colleague's able arguments

25  yesterday, having thought it through more concretely.

**PROCEEDINGS**

1    And I'm just really plowing ahead writing the facts,

2  which -- which I had written a more -- I had a long set of

3  facts for the preliminary injunction.  I then cut it way down.

4  And now I need to add in -- I can add in, for example, right

5  now what the Secretary has done.

6    I can queue up the arguments that the general -- you know,

7  these are the -- I can get out of my order, I believe, the

8  Fifth Amendment issues that I wrote about before, that I know

9  longer need to include.

10    And so that's what I'm just -- I'm preparing.  I have

11  not -- I'm just telling everybody that I am prepared to

12  address, realtime, any revamped motion within a time period --

13         **MS. ORLOFF:**  Okay.

14         **THE COURT:**  -- that gets an order before the effective

15  date.

16         **MS. ORLOFF:**  Understood.  And thank you for the

17  clarification, Your Honor.

18    I do -- you know, we will comply with whatever briefing

19  schedule Your Honor sets with respect to a TRO and,

20  subsequently, a preliminary injunction.

21    I do think, though, that the plaintiffs -- and I do not

22  want to minimize their strong preference to use the WeChat app.

23  But that -- the declarations they have submitted in support of

24  their preliminary injunction motion, in my mind, show that, you

25  know, they have been preparing for this day for the last

**PROCEEDINGS**

1   45 days; and that there are substitutes for WeChat, even if the

2   plaintiffs do not prefer them.

3        And I just to note a few, Jinneng Bao noted in his

4   declaration that he has been looking into alternatives such as

5   Line, Facebook, and Telegram; Brent Coulter discussed iMessage

6   and FaceTime, and talked about efforts that he has already put

7   into making alternative arrangements; Chihuo stated in its

8   declaration that it has redesigned its website; Elaine Peng

9   said she is switching to Line; and Xiao Zhang said she built a

10  new website for her foundation to receive donations.

11       And in light of the fact that this is not a prior

12  restraint on speech, the plaintiffs remain free to use a

13  plethora of other applications to communicate, to get their

14  news, to speak with family at home, to engage in any religious

15  activities they wish to.

16       This is a limitation on a single app.  We understand there

17  are challenges, but this has been coming for 45 days.  And

18  there are serious national security issues at play.  And so,

19  you know, we will comply with whatever schedule Your Honor

20  sets.  But I would just urge the Court not to rush this

21  process; these are extremely important issues, I think,

22  sensitive issues of national security.  And I believe we should

23  take the time to litigate them properly.

24       **THE COURT:**  I agree with all of that, and I'm happy to

25  do whatever expedited schedule we need to do to address the

**PROCEEDINGS**

1    issues fully.  But the fact record is different.

2        First -- and then we'll hear from Mr. Bien.  But the fact

3    record is different because, one, the focus of yesterday's

4    argument was on the void for vagueness, and while the issues of

5    the first -- I'm sorry.  If you don't mind muting yourself, I

6    think it is your room that's giving us feedback.

7        The focus was on the void for vagueness.  And I do

8    appreciate that the First Amendment was implicated on the sort

9    of -- on the classic *Winters* elements, you know, we were

10   talking about the void for vagueness arguments.

11       And now -- but a big part of the plaintiffs' argument in

12   the opening brief -- and it was retained, but not emphasized as

13   much in the reply brief -- was that we sort of didn't really

14   need to get there fully; partly, for, I think, the reasons that

15   you advanced in your opposition brief.

16       So I hear the arguments that you're making.  We didn't

17   know what the effect was going to be, which is why the issues

18   weren't ripe.  I appreciate that you're pointing to facts in

19   some of the declarations for these plaintiffs.

20       And it is also true that it's now a matter of public

21   record that it's essentially shutting off the app for everybody

22   as of the effective date.  That's what the Government has said

23   publicly.

24       So it does need to be queued up for consideration.  I

25   absolutely agree.  But there is the sort of -- and I have your

**PROCEEDINGS**

1   briefs.  It's not as if I don't have the arguments you've made.

2   So it puts me in a better position than I would be without any

3   briefing at all.  And then the issue is:  What supplemental

4   briefing do we need to address the issues and how do we do

5   that?

6        And so, let's ask Mr. Bien what his thoughts are now.

7        **MR. BIEN:**  Thank you, Your Honor.

8        First, I want to indicate that we feel that the briefing

9   that you have in front of you is appropriate for you to issue a

10  preliminary injunction to -- now.  We, of course, can

11  supplement with anything else you want us to address and we'll

12  just go through.

13       First of all, Secretary Ross is a defendant; I want to

14  point that out.  And what we want to do is prohibit the

15  implementation of the power -- his powers to take action on

16  Sunday.

17       So everything is here to maintain the status quo; to

18  preserve people's rights.  As the Court has noted, those rights

19  have already been harmed and they are going to continued to be

20  harmed because, as Ms. Orloff just admitted, this is a ban;

21  this is nothing else than a ban.

22       Who exactly is going to be prosecuted doesn't really

23  matter.  What matters is our clients' rights to use the app

24  will end on Sunday.  That's the position the Government is

25  taking publicly; they just said it again today.

**PROCEEDINGS**

1    That is a deprivation of their fundamental rights.  It's a

2    prior restraint, and we are prepared to make that argument.

3    What has happened today is the Government is speaking,

4    once again, out of three or four mouths.  What the US Attorneys

5    are saying here; what the Secretary said in his, quote,

6    official statement; what he said to the press.  And then

7    what -- I would take a look at Exhibit I attached to my

8    declaration what his secret people are saying, commerce people

9    are saying off-the-record to reporters, which is, again,

10   complete ban.

11   As to the national security concerns, they remain very

12   curious and unsupported, despite this vague reference here

13   today to some secret stuff.

14   What's interesting is TikTok has all the problems.  That's

15   what was in the defendants' evidence that they submitted, yet

16   the Government has chosen not to stop TikTok from working

17   whatsoever.  Okay?  So if this is really that kind of national

18   security problem, about gathering information, monitoring, why

19   are they allowing one to go forward, one not?

20   It's been speculated that it has to do with who has better

21   connections in the White House, but that's not the point.  The

22   point is, if this was a true national security concern, there

23   is no justification for allowing TikTok to function completely

24   on Sunday, while shutting down WeChat.

25   I would also point out, again, the sliding scale.  We just

**PROCEEDINGS**

 1   want to preserve people's rights now; prohibit the Government

 2   from moving forward.  We have established harm.  We have

 3   established that -- I agree with you, it's certainly ripe now.

 4   We know what they are doing; they said what they are going to

 5   do; and they did it; and it's a shut-down.

 6        So we are also receiving communications to our clients'

 7   website about, you know, can I communicate; can I do this; can

 8   I use the app?  Our clients don't know what they can do.

 9        And, one, whether or not the Government is going to come

10   after them, I'll accept counsel's representations.  But they

11   are going to go after everyone else who is necessary to use the

12   app.  So communications could be turned off.  I think we

13   disagree, obviously, as to what our evidence proved.  Our

14   clients all said they could find no alternatives; there is no

15   other alternatives for Chinese-speaking people in America.

16        We know that institutions are going to interpret this as

17   University of Kansas did.  By the way, we put that article in

18   the record for Your Honor today.

19        And I think that procedurally there is no problem.  You

20   could address it through an appropriate preliminary injunction

21   issued today.

22        And then let's have a test on the merits.  Let's look at

23   what's going on.  If the Government actually has -- I don't

24   know.  I'm not sure how they can put on -- there are many

25   more -- if they are going to go to -- if they are going to do a

**PROCEEDINGS**

1   ban, then it's teed up now.  I'm not sure what else they could

2   do.  But they can come back with something else down the road.

3   Injunctions can always be modified, if they choose to change

4   and more narrowly tailor what they plan to do to actually

5   address true national security interests.

6       But I think that's not their choice; their choice was a

7   ban.  And so we think it is teed up now.  Again, we would be

8   glad to address any kind of procedural issues.

9       Again, we think that the power of the Secretary is limited

10  to the power of the executive order.  And the executive order

11  remains unconstitutional on its face, and I think we have

12  established that.

13      **THE COURT:**  So -- and please help me with this point,

14  because this is the trouble I have.

15      If your complaint had been filed after the -- however you

16  articulated your claims, had been filed after the Secretary

17  issued the definition -- and whatever tweaks that would be

18  reflected in your complaint would have that, then I would be

19  entirely comfortable relying -- absent the Government's, for

20  example, telling me that there should be different briefing, or

21  the parties agreeing that there should be different briefing,

22  because the issues are different now.

23      And so the reason I raise that is because I just issued an

24  order last week which was the Paycheck Protection -- the SBA's

25  Paycheck Protection Plan.  And this idea of whether the

**PROCEEDINGS**

1  Government has to fund speech -- or you think about the

2  *National Endowment of the Arts* case *versus Finley*, whether it

3  has to, when acting as a patron, fund it -- versus -- and so I

4  can imagine that some of the Government's First Amendment

5  arguments might be different now than they were in the brief,

6  which was -- which led with ripeness, addressed some of First

7  Amendment issues on the *Winters* factors, irreparable harm.

8       And so I, one, am concerned that the existing brief

9  doesn't fully capture the fact landscape of what's at issue;

10  two, I have already mentioned that, on its own, I have decided

11  and I was about to issue an order saying that the attack just

12  on the President's order was not ripe until defined.

13       Now it is, so the -- and now I'm concerned -- and

14  Ms. Orloff identified this too, that the First Amendment issues

15  have changed.  You have said that they haven't, and I can

16  absolutely accept that.

17       And then the procedural issues that attend -- and so what

18  you're telling me is, I can just take the complaint as it is,

19  issue a preliminary injunction without the Government's

20  weighing in any more on what the First Amendment issue --

21  landscape.

22       Essentially, I would be issuing, then, a First Amendment

23  preliminary injunction -- because you have to tell me if you

24  really think the Fifth Amendment argument works anymore, given

25  that -- how it was defined in your reply brief.

**PROCEEDINGS**

1      You also told me at the hearing yesterday that as a lawyer

2   you learned, if you don't address things you've conceded them.

3   You may wish to revisit how you want to maintain your arguments

4   in the context of what the Secretary's definition actually

5   says.  But, at least as of the reply brief, it was full-out

6   Fifth Amendment due process, and it was not as it was in your

7   opening motion.

8      And so what I -- when I worked my way through -- again,

9   working on it today was to prepare me to understand what was

10  left in the litigation so I could best address it.  I cannot

11  imagine that the complaint, as it stands, is necessarily your

12  full theory of prosecution.  Which is very different than the

13  issue of -- let's say, this came out of nowhere; right?

14     Let's say, today, Groundhog Day, you had no notice of what

15  happened.  Today the President and the Secretary

16  simultaneously -- or the President issued an executive order

17  that contained the Secretary's definition.  So you would be

18  left -- that's the -- because I, from my view, that's the

19  position that you find yourself in today.

20     We have the luxury of having the good work that you put in

21  before the implementation date which enables us to have a

22  pretty good preliminary assessment of the landscape.  But I'm

23  concerned -- which is why I raised this possibility of -- isn't

24  it -- I'm not sure of this, it may be that you would merely say

25  something like I have a -- the complaint, to the extent it's

1  amended to include this additional language, period; that we

2  move for -- we stand on our motion as grounds for injunctive

3  relief to prevent the implementation of the order as of Sunday.

4  Right?

5      And then the Government might tell me -- I don't know what

6  you'll tell me.  Is that briefing sufficient?  It depends on

7  what Mr. Bien says; when do you want to tell me whether it is

8  or isn't sufficient?

9      And then, if there are substantial questions -- and this

10  was the argument in the reply brief on the First Amendment,

11  when the argument was made as of yesterday that there are at

12  least substantial questions raised under the *Winters* sliding

13  scale, that gives us you enough, you know, for now to sort of

14  avoid the robust analysis.

15      You may think differently.  You know, rely -- or you may

16  say you know, we think you should deny it, we rely on our

17  previous arguments, we also wish to supplement them on this

18  issue.

19      I don't know because -- and that's why I raise these

20  issues for your consideration today.

21      **MR. BIEN:**  Your Honor, we would be pleased to respond

22  to your concerns by preparing new papers that reflect what

23  you've done and we can get them on file.  I don't think we

24  can -- I can't say we can do it today.  We can try.

25      What do you think, team?  You can signal me.

**PROCEEDINGS**

1      But, I think we can do it by tomorrow morning.  It doesn't

2   give us a whole lot of time before the effective date, but we

3   can -- we can listen to what you said, go back, and come back;

4   and then, obviously, the Court needs to hear from

5   the Government too, once we've done that.

6      You know, it -- it may be possible -- and I am looking

7   around at my team, whether we can do something, you know,

8   before the end of the day, but -- I'm getting some yesses.

9   Maybe we can try for that.

10      And then maybe we give -- and then, if the Government can

11   respond by tomorrow, it gives us a chance to have, if the Court

12   is willing to have a hearing sometime on Saturday, I will waive

13   my Rosh Hashannah privilege.

14      **THE COURT:**  Oh, I'm so sorry.  I know it's

15   Rosh Hashannah.  And that's, obviously, a problem.  I'm really

16   sorry about that.

17      **MR. BIEN:**  That's okay.

18      **THE COURT:**  And it's the first night tonight too.

19   It's amazing how everything just --

20      **MR. BIEN:**  This is not a year where anything is

21   normal, so --

22      **THE COURT:**  I know.  I know.  I know.  I know.

23      One issue -- one suggestion is, I don't know whether the

24   team can rely on the existing declaration -- the existing

25   supporting materials without having to -- that makes it easier.

1   I don't want to make people photocopy all night to deliver me

2   chambers copies.  I can certainly press "print."  But if there

3   are -- if it becomes necessary to submit supporting papers --

4   it's 12:15 now.

5        I imagine a complaint might be fairly easy to file.  I

6   don't know whether if -- I mean, I know this is a terrible --

7   well, in any event, I don't know whether, then, you get tonight

8   off, and then file something in the morning.

9        **MR. BIEN:**  We have a big team; don't worry about that.

10       **THE COURT:**  Okay.

11       **MR. BIEN:**  So we will get our -- we will get a

12  complaint, amended complaint, and some -- a new brief on file.

13  We'll refer to the existing evidence.  If we need something

14  new, we'll add that.  And I'm not sure I'll be able to get you

15  a chambers copy or not --

16       **THE COURT:**  If there are no attachments and it's just

17  printing, I have no problem with that.

18       When I have -- I'm not going to make you look at your own

19  binders, but when I have this much stuff, it just becomes --

20  it's hard to do it electronically; it's actually impossible.  I

21  appreciate that people have been giving me chambers copies.

22       But we do have tight timeline.  And so then, from a team

23  perspective, what's your best guess about what time you can get

24  something -- sounds like you can probably file the complaint

25  today; so at least the Government will have that.

**PROCEEDINGS**

1    And it sounds like the briefing, obviously, you briefed

2    some of the issues, and there may be things that you can

3    incorporate by reference, which is fine.

4        **MR. BIEN:**  We'll represent that we'll get the brief

5    filed also before midnight tonight so the Government can -- and

6    then if they give us a deadline, you should set a deadline with

7    them when they should respond tomorrow.  And we can have a

8    hearing tomorrow.

9        **THE COURT:**  Okay.  That sounds fine.

10   From the Government's perspective -- again, I apologize

11   for -- the briefing schedule is just too tight, and the order

12   was to, you know -- you may or may not find this --

13       **MR. BIEN:**  There is another option, Your Honor.

14   And I'll just say, as you suggested many times,

15   the Government could agree to postpone implementation for a

16   week, and we could do this in an orderly and appropriate way.

17   And we don't have to -- you don't have to issue an order.

18   We, you know, we would accept the Government's

19   representation.  It would have to be public.  But that is the

20   option here, given the circumstances.

21   Again, the Government had an opportunity to act.  Our

22   complaint has been on file for a long time, as has our motion.

23   They chose to wait.

24       **THE COURT:**  I know the Government has said before

25   that -- I appreciate your argument that the plaintiffs have had

**PROCEEDINGS**

1    45 days and the opportunities and all of that.  So I appreciate

2    those arguments.

3         And I am sorry to put you to the burdens of filing

4    something tomorrow, but we're going to have to have a hearing

5    tomorrow.  And what I suggest -- we do have fairly robust

6    briefing -- and, again, I have really digested your briefs, as

7    you know from yesterday.

8         I do think there is an ability to say in your briefs to

9    make arguments to say, "This is how we think it should go," by

10   reference to your earlier arguments.  You don't necessarily

11   have to reiterate them.  You can incorporate them by reference.

12   I am very comfortable with that approach because that allows me

13   to continue to excite the existing documents that are in my,

14   now, four versions of the order that I was writing, because it

15   changed along the way.  It changed on Wednesday.  And then it

16   changed again yesterday.  It's changed against this morning.

17   Now, it will change again based on your filings.

18        So I strongly recommend that everybody incorporate by

19   reference as much as they can and then supplement their

20   arguments.  I think it will make it easier on you.  It will

21   make it easier for you to get something to the Government

22   earlier, rather than later.

23        I think the Government can rely on those issues.  And

24   then, recognizing that you may feel that your arguments

25   persuade for the reasons that they did in your earlier brief

1    and those are sufficient.  And you may also want to put a

2    marker in for issues that you think might require further

3    illumination.  And that's what the Government suggested, that

4    you may not have a full amount of time to address sufficiently

5    tomorrow.  And then we will just talk about what we'll do.

6         I think we have to have a hearing tomorrow at about 1:00,

7    because I may need time between -- I will do my very best

8    between now and then to get as organized as I can, so when your

9    motions come in -- I'm not going to start working on something

10   at midnight tonight, just so you know.

11        I will work until my day is finished, whatever time that

12   is, and then leave and start again tomorrow.  And then,

13   recognizing that the Government will file something at X-time

14   and you should tell me, and I propose a hearing at 1:00 or

15   possibly 2:00 tomorrow.

16        **MS. ORLOFF:**  So thank you, Your Honor, for those

17   thoughts.

18        Just to share a couple of thoughts from the Government's

19   perspective, I have been trying to communicate with my

20   colleagues; we do also have Rosh Hashanah observance, many on

21   our team.  And so I think there is a feeling that this is a

22   little bit of a hardship.  But, that being said, we're ready to

23   meet it.

24        We would like as much time as possible, as the Court can

25   give us.  We would request a meeting at 2:00, if the Court is

**PROCEEDINGS**

1  willing to put it then.

2      And also we thought it might be helpful to propose some

3  page limits.  And the Court does have some sense of briefing on

4  this and certainly as to background and things like that.  We

5  would suggest 15 or 20 pages at tops, which would, I think,

6  keep things focused on just the most important issues.

7      That way we wouldn't be, you know, you think of weighting

8  arguments that we may have, and that we may wish to make, and

9  points that we may oppose but don't think are centrally

10  relevant to the case.  So that's the one ask that we would make

11  is we could, maybe, put some page limits on it.

12      We, you know, I guess I would -- if the plaintiffs file at

13  midnight tonight, you know, that is 3:00 a.m. eastern time, we

14  will try and start to work now and put together our arguments

15  but we will need some time to respond, and just ask for as much

16  time as the Court can give us.  I guess I would propose, maybe

17  11:00 a.m., but I don't know if that gives the Court enough

18  time to prepare.

19      **THE COURT:**  So one issue that -- do you mind muting

20  yourself, again, feedback.

21      **MS. ORLOFF:**  I'm sorry.

22      **THE COURT:**  A headset might help with that, but I am

23  not -- this is overly tech problem-solving for people.

24      I, in thinking about this this morning, I was trying to

25  think, what can I do -- and Rosh Hashanah went straight out of

**PROCEEDINGS**

1  my head this morning as I was making my coffee.

2       I was thinking what could I do to shortcut this process.

3  One thing I thought is that the plaintiffs filed an amended

4  complaint and a renewed motion for a TRO/preliminary

5  injunction, and we had a hearing today at, let's say, before

6  sunset, and then we could decide then, and where the Government

7  would have an opportunity to be heard, but not necessarily file

8  stuff.  And then, at that point, I might have an idea.

9       I do want to fully have the Government consider the

10  issues.  And I don't know what the answer is because we need --

11  I need to think about it.  I literally am in the business of,

12  right now, I'm adding to my fact section; what I call my

13  statement.  I am literally typing in what happened, you know,

14  excerpting and putting into the facts and refining some of

15  my -- synopsizing things that I think don't need to be

16  emphasized so much.

17       So I haven't got -- and as I've told you already, I

18  100 percent was focusing on the void for vagueness arguments,

19  and I'm now shifting because there is where I think it's going

20  to go to revisiting some of my earlier thoughts on the First

21  Amendment.  But I, obviously, need the briefing.

22       But let's say this were a TRO today, we would have a

23  hearing today.  If the plaintiff filed a complaint at noon or

24  1:00 or 2:00 and simultaneously, I would set a hearing today,

25  recognizing that the East Coast has some issues with timing.

**PROCEEDINGS**

1        I'm open to that process.  I don't want anyone to get up

2   at 3:00 in the morning and start working on a brief to sort

3   of -- on a holiday.  And I'm willing to work with you to try to

4   at least have a preliminary hearing on the issues today, if

5   that's at all possible.

6        I can't imagine the amended complaint is that hard to do.

7   And if you decided next week that there are refinements that

8   you want to make to it because of the rushed nature of this,

9   because assume it was unexpected that you would have that

10  opportunity -- Rule 15(a) exists for a reason -- and I would be

11  very amenable for prettying things up later.  So I once amended

12  an indictment myself by slapping something on top of it and

13  cleaned it up later.

14       So it seems to me that we could have a proper hearing even

15  today, if that would be helpful for you.  I am willing to do it

16  tomorrow, but I feel enormous guilt -- I think that's the

17  appropriate emotion to express -- by doing it on Rosh Hashanah.

18       And so I want to -- my job sometimes is to save you from

19  yourselves.  And I know that you have clients that -- and I am

20  extremely supportive of your diligence in representing your

21  clients' interests on the Government's side.

22       And I'll make one other observation and then you can tell

23  me if you want a preliminary hearing this afternoon at, say,

24  3:00.  I don't know whether that's possible.  I will work as

25  hard as I can -- or even 4:00 or 5:00.  4:00.

**PROCEEDINGS**

 1          Maybe that's a good approach for everybody.  When lawyers

 2    file motions that are necessarily heard during the holiday

 3    season, I think of the poor associates who are going to ruin

 4    their New Years; and I always move those hearings and adjust

 5    the believing schedules sua sponte.  I am a judge, and not just

 6    one who plays one on Zoom, and I have the ability to make it

 7    all work.

 8          And so, I wonder from the Government's -- I wonder what

 9    everybody thinks about at least making a stab at trying to get

10    through it preliminarily this afternoon, during daylight hours.

11          MS. ORLOFF:  I can address that, Your Honor, from

12    the Government's perspective.  We don't have associates here,

13    unfortunately --

14          THE COURT:  I know that.

15          MS. ORLOFF:  -- but we would like -- I'm sure you do.

16    I'm sure Your Honor knows that.

17          We would like the time to, I think, compile some legal

18    authority and to put together our thoughts in a more coherent

19    fashion.  So I have not heard any feedback from my colleagues

20    that they would prefer a hearing this afternoon.  And I think

21    we would probably strongly prefer a hearing tomorrow, as

22    compared to today.

23          THE COURT:  Okay.  So, Mr. Drezner, looks like you

24    want to say something.  Then we'll go back to Mr. Bien.

25          MR. DREZNER:  Not to interrupt my colleague, but one

**PROCEEDINGS**

1   suggestion might be, given that plaintiffs believe that their

2   papers adequately represent what they are seeking and that

3   essentially not much has changed in their view, one proposal

4   would be to have their brief filed somewhat earlier than

5   midnight West Coast time, perhaps, I don't know, 8:00 p.m. or

6   6:00 p.m. West Coast time.  And that would give us a bit more

7   ability to, then, respond to their arguments and have, I think

8   what, Your Honor is looking for is a systematic and thoughtful

9   hearing tomorrow.

10       **THE COURT:**  Yeah.  I think I, obviously, I think that

11   that's -- I wish it were Monday; then this would not be an

12   issue.  But -- but the implementation is on Sunday and so we

13   have to address the issue between now and sometime tomorrow

14   afternoon because I will need the time to hear you and then

15   decide, after the hearing, what the outcome is.

16       Mr. Bien -- and I do think page limits are a good idea.  I

17   honestly -- I think 15 pages should be enough for everybody

18   under the circumstances.  And I really do think people's can

19   incorporate by reference earlier arguments that -- and that

20   will help me enormously too, so we are doing us all favors by

21   that approach.

22       Mr. Bien.  You're still on mute.

23       **MR. BIEN:**  Sorry.

24       You know, the Government's has had an opportunity to brief

25   this.  They filed a brief today with argument, not just a

**PROCEEDINGS**

1  representation, about what was going on.  You know, we can do

2  it by TRO, if that's what the Court would prefer.

3      **THE COURT:**  I don't have a preference; whatever you

4  want to do is okay with me.  And if I decide I need more

5  briefing, then I decide I need more briefing.

6      **MR. BIEN:**  Right.

7      And I do think that it's at least possible that we can sit

8  down and just write something.

9      The Court has expressed a preference for an amended

10  complaint that addresses this; and we would, obviously, that

11  do.  And we could do a short -- short brief allowing a hearing

12  today.  But I don't think -- there is not going to be a lot of

13  time for the Government -- it would be us responding to them.

14  And, you know, I just don't know how that would work.  I guess,

15  it would be the equivalent of a TRO; they don't get to file a

16  brief.  And --

17      **THE COURT:**  They can, if they want to.  I allow that

18  opportunity.  I always invite the Government to respond.  And

19  often they can.

20      By the way, I don't mean to interrupt you.  We have

21  somebody on the phone named Hong Gao, who raised a hand.  And I

22  don't know if that's somebody --

23      **MR. BIEN:**  He is not counsel, no.

24      **THE COURT:**  Okay.  All right.  So that's good.  So

25  only lawyers are speaking here.  So thank you.  If -- okay.

**PROCEEDINGS**

1    Sorry about that.

2        So -- no.  I appreciate that and -- so there is somebody

3    named Gang Chen -- so I'm assuming everybody -- I'm going to

4    ignore the people raising their hands in the audience.

5        So, Mr. Bien, I apologize.

6        **MR. BIEN:**  I guess we could -- I mean, I'm looking at

7    my team -- but if we can -- we could try to proceed today, you

8    know, file an amended complaint and do a short brief and get it

9    on file.  And if you could do it at 4:00 or 5:00, we can get

10   something on, you know, on file, you know, at 3:00 or 4:00, an

11   hour or so before.

12       I think the Government has had an opportunity to brief

13   this.  They did a brief that we tried to respond to already

14   today.  I don't know why they get another chance.  But it's --

15   it isn't -- you know, and the TRO, if we do a TRO -- or, again,

16   any injunction can be modified, as the Court has pointed out.

17       But I think the key is to maintain the status quo, to stop

18   the ban from going into effect.  And we have been making that

19   same argument from day one.

20       Obviously, the Government's actions do shift the facts,

21   and we can -- recognize that.  But they don't change the

22   fundamental essence of what we were afraid they were going to

23   do is what they actually did, and are going to do.

24       So that's why I said that we thought the preliminary

25   injunction is still a valid, appropriate motion.  We would be

**PROCEEDINGS**

1   glad to amend, to make it procedurally appropriate, and to

2   point out how it's going on.  I think that's a good idea.

3       And we can -- I suggest that we decide what's going on so

4   we can all hit the --

5       **THE COURT:**  I think that's right.  So let's do this --

6   Ms. Orloff, you wanted to say something?

7       **MS. ORLOFF:**  Your Honor, yes, please.  I'm sorry.  I

8   just want to respond briefly.

9       I mean, I think surely the notice we filed earlier today

10  was really directed at the plaintiffs' prior arguments and was

11  not directed to new arguments that they may want to make.

12      But I am getting requests from my team, and since the

13  plaintiffs feel like they can respond sometime earlier today

14  than midnight, we would request -- and, you know, we would like

15  the time to put together our legal arguments in response to the

16  plaintiffs', rather than doing this on the fly.

17      So we would request that the plaintiffs file earlier than

18  midnight tonight, if possible, to give us some nighttime hours

19  that's not in the middle of the night on Rosh Hashanah, working

20  on this, then we would be prepared to file a response tomorrow.

21      And, you know, I don't know how critical an amended

22  complaint is at this juncture.  You know, if the Court wants

23  it, we fully understand.  But I think from our perspective it

24  would be more helpful to see whatever arguments are in their

25  brief so that we can respond.

1          **THE COURT:**  Okay.

2      So my concern was the procedural appropriateness, because

3  you raise the issue too of my issuing a preliminary injunction

4  on a complaint that no longer fully reflects the fact

5  landscape.  It seemed problematic because the attack was on the

6  executive order.  And so that was my concern.

7      I think that -- and if the Government will stipulate that

8  I don't have to do that, that we can deem the complaint amended

9  to fully embrace the plaintiffs' arguments in the context of

10  the Secretary too.  Because now the plaintiffs have the ability

11  to say:  Hey, this definition doesn't change anything.  It's

12  the -- and I do think that the plaintiffs want to accuse,

13  essentially, the definition, not just in the context of the

14  executive order, but the executive order as implemented.

15      And that gets us over the ripeness argument.  Because

16  other than that, it's not ripe just based on the executive

17  order, even though it is ripe now.

18      So you guys if you want to concede that they can defer the

19  filing of their amended complaint until some other time, and,

20  but then sort of deem it amended, I'm fine with that; although

21  I don't know how much work it is to amend the complaint.  It

22  doesn't strike me as it's all that much work.

23      But, Mr. Bien, what do you think?

24          **MR. BIEN:**  I have one other suggestion that might cure

25  some of this problem.  We think we should proceed today with a

**PROCEEDINGS**

1  hearing.  We would -- we suggest simultaneous briefing.  We

2  both know what's going on.  There is no surprises.

3         THE COURT:  Okay.

4         MR. BIEN:  Then we can argue it.  And everyone gets

5  their fair chance.  They know much more than we did and had

6  advance notice what was happening, because they wrote a brief

7  about it already.

8         THE COURT:  I really would prefer, if you can, to

9  simultaneously file a complaint.  I do think procedurally

10  that's the correct way to do it.  If you disagree and stipulate

11  that it's okay, I'm fine with that; but it feels weird to me

12  because I don't think -- I'm not issuing an order just on the

13  executive order.  I'm doing it as defined by the Secretary of

14  Commerce.

15         MR. BIEN:  We will file.  We can do both today by the

16  deadline.

17         THE COURT:  I think it's fine to submit simultaneous

18  briefs.  I think that's an excellent suggestion.  If we need

19  more briefing -- we know this case.  Let's do that.

20      I don't want more than 15 pages.  I would prefer 10.  My

21  ability to digest -- you know, the one person who ends up

22  working then tonight and tomorrow is me.  That's okay.  I'll

23  take the hit for the team.  But I do think the fewer pages the

24  better.  What can you live with?

25         MR. BIEN:  We can live with 15, Your Honor.

PROCEEDINGS

```
 1          THE COURT:  Okay.  15.  Ms. Orloff?  Mr. Drezner?  You
 2   suggested 15, so 15.
 3          MS. ORLOFF:  We're fine with 15 too.  But we, I think,
 4   vigorously oppose the idea of simultaneous briefing.
 5          The plaintiffs' prior assertions of harm was very much
 6   focused on this idea that they could be prosecuted for criminal
 7   and civil violations.  And, you know, we -- it is -- they will
 8   now, I think, have to have a revised theory of harm in some
 9   respects.  It is, you know, like punching a pillow or just --
10   it's very difficult to know what they are going to say and to
11   know where we should be leveraging our response.
12          If the plaintiffs can file today, we can get our response
13   in by 11:00 a.m. tomorrow and we can have a hearing.  But doing
14   this in realtime is like ships crossing in the night, I think,
15   really doesn't make much sense, and isn't the way to make
16   decisions in this very sensitive area of national security.
17          THE COURT:  I have to think that the plaintiffs'
18   arguments are going to be focused on First Amendment.  Am I
19   wrong on that?
20          I mean, one of issues is:  Do you stand on your previous
21   arguments to preserve them, without reiterating them?  Do you
22   have small -- and do you have sections where you say, you know
23   here is this claim, in addition to the reasons one, two, three,
24   four?
25          I really imagine staccato addressing of the issues.  I
```

**PROCEEDINGS**

1   don't disagree with you, Ms. Orloff.  I do think it's better --

2   obviously, you don't want to waste time responding to

3   unnecessary arguments.  The problem is that the reply brief

4   mechanism is also useful because the plaintiffs refined their

5   arguments the last time based on the arguments that you raised.

6   And -- I don't know.

7        I don't know if you guys -- well, so I sort of reached the

8   limit.  I think you guys need to get to work.

9        If -- I think simultaneous briefing would work fine.  I

10  think it's a great suggestion, but I don't know that I want to

11  order it over your objection because I don't want to deny you

12  the opportunity to respond to the arguments fully.  And so I'm

13  prepared -- so given that the pages are limited to 15,

14  Mr. Bien, what's a reasonable time, given that it's now 12:40,

15  what's a reasonable time to get things on file?

16          **MR. BIEN:**  3:30.

17          **THE COURT:**  See?  That's great.

18       So that's the -- they are asking for three hours.  I think

19  if things are filed at 3:30, you can file something three hours

20  after that at 6:30.  That's what we're going to do.  That's

21  what we're going to do, because these issues have been fully

22  briefed.  And if we need more time, we need more time.

23       And then I don't -- then that's at 6:30 and so then at --

24  by 6:45, I would like plaintiffs to say whether they think it's

25  useful to file a reply.  And if so, to propose a time.

**PROCEEDINGS**

1       You know, you'll get essentially, if everybody is getting

2   three hours to do their opening briefs, then you can have an

3   hour and a half -- I'm not saying you have to file it tonight;

4   you can file it tomorrow morning.  But you can file it tomorrow

5   morning and then we'll have -- then we'll set a hearing for

6   tomorrow.  That's what we're going to do.

7       And that's -- I, personally, don't think I can handle more

8   paper than that under this tight timeline.  It's not as if we

9   are operating in a vacuum of briefing.  And that's how I think

10  we'll proceed then.

11      We'll set a further hearing if you file something, I would

12  like you to file something by 8:30 a.m. tomorrow morning.  The

13  optional reply will be due by 8:30 tomorrow morning.

14      If you're not going to file one you should -- actually

15  6:30, 7:30, 8:00.  8:00 tonight.  If want to file something you

16  go do it by 8:00 tonight.  If not, then you can file something

17  earlier saying you're not going to file a reply and that you

18  think the existing -- that's just to be polite to me.  Then

19  by -- that way, we'll have full briefing tonight at 8:00.

20  Everyone will have a good night sleep; not perfect, but not

21  bad.  Then we will have a hearing tomorrow.

22      Let me just ask my staff what they think I'm going to put

23  myself on mute for a second.

24                      (Pause in proceedings.)

25          **THE COURT:**  Okay.  The hearing will be at 1:30

**PROCEEDINGS**

 1   tomorrow.  Let's try to get everybody finished by -- because I

 2   know it's on the East Coast for the Government.  That's five so

 3   I'm cutting it a half-hour earlier to 1:30.  I'm hopeful that

 4   given the substantial briefing that we have had already and the

 5   incoming briefs that we'll get this afternoon, that we'll be

 6   able to deal with things reasonably.

 7            **MR. BIEN:**  Judge Beeler?  Excuse me one second, if I

 8   might.  Could we have a little more time to file the amended

 9   complaint?  Because, I think, I was anticipating everything

10   would happen today, but given -- and it will simply address

11   just the procedural issue and make sure that we have something

12   in there addressing the new events.

13            **THE COURT:**  Yes.  So you can still file your opening

14   brief at 3:30.

15            **MR. BIEN:**  Yes.

16            **THE COURT:**  When would you like to file your

17   complaint?

18            **MR. BIEN:**  Can we have until 5:00 p.m. for that?

19            **THE COURT:**  Yes.

20            **MR. BIEN:**  Give us a little more time.

21            **THE COURT:**  Will you file a black-lined version of

22   your complaint too?  So file a clean copy, but also a

23   black-lined version as an exhibit, so I can see the changes.

24            **MR. BIEN:**  Yes.

25            **THE COURT:**  Okay.  All right.  All right.

**PROCEEDINGS**

1        Thanks everybody.  I think that's a wrap.

2        Elaine, sorry about that.  If you don't mind popping on

3    the call for the 12:30.

4        I'll see everybody tomorrow at 1:30.

5            **MR. BIEN:**  Thank you, Your Honor.

6        **MS. ORLOFF:**  Thank you.

7            (Proceedings adjourned at 12:44 p.m.)

8                    ---o0o---

9

10                **CERTIFICATE OF REPORTER**

11       I certify that the foregoing is a correct transcript

12   from the record of proceedings in the above-entitled matter.

13

14   DATE:   Monday, September 21, 2020

15

16

17

18   _____

19       Ruth Levine Ekhaus, RDR, FCRR, CSR No. 12219
                Official Reporter, U.S. District Court

20

21

22

23

24

25