JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
AUGUST FLENTJE
Special Counsel to the Acting
Assistant Attorney General
ALEXANDER K. HAAS
Branch Director
DIANE KELLEHER
Assistant Branch Director
SERENA M. ORLOFF
MICHAEL DREZNER
STUART J. ROBINSON
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
Ben Franklin Station, P.O. Box No. 883
Washington, DC 20044
Phone: (202) 305-0167
Fax: (202) 616-8470
E-mail: serena.m.orloff@usdoj.gov
*Counsel for Defendants*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. WECHAT USERS ALLIANCE, *et al.*, | Case No. 3:20-cv-05910-LB |
| Plaintiffs, | **DEFENDANTS' NOTICE OF MOTION, MOTION TO STAY INJUNCTION PENDING APPEAL, AND MEMORANDUM IN SUPPORT; NOTICE OF CERTAIN RECORD MATERIALS** |
| v. | |
| DONALD J. TRUMP, President of the United States, and WILBUR ROSS, Secretary of Commerce, | |
| Defendants. | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL ......... 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 2

PRELIMINARY STATEMENT ............................................................................. 2

STATEMENT OF THE ISSUES............................................................................. 4

DISCUSSION ..................................................................................................... 4

   A.   Legal Standard ........................................................................... 4

   B.   The Balance Of Equities Strongly Supports A Stay Of The Injunction ........... 5

   C.   Defendants And The Public Interest Will Be Irreparably Harmed.................... 8

   D.   Defendants Have A Strong Likelihood Of Success On The Merits ................ 10

       1.   The Challenged Restrictions Are Not Subject to First Amendment Scrutiny Because They Are Directed at Business Transactions.............................. 10

       2.   Alternatively, the Prohibited Transactions Satisfy Intermediate Scrutiny .............. 11

   E.   Alternatively, The Court Should Stay at Least Part of its Preliminary Injunction ........... 16

CONCLUSION.................................................................................................. 17

NOTICE OF CERTAIN RECORD MATERIALS ...................................................... 17

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

3

*A & M Records, Inc. v. Napster, Inc.*,
4
   284 F.3d 1091 (9th Cir. 2002) ............................................................................ 16

5

*Apple, Inc. v. Samsung Elecs. Co.*,
6
   No. 11-cv-01846, 2012 WL 2527044 (N.D. Cal. July 2, 2012) ................................. 4

7

*Arcara v. Cloud Books, Inc.*,
   478 U.S. 697 (1986) ............................................................................................... 11

8

*Boumediene v. Bush*,
9
   553 U.S. 723 (2008) ................................................................................................. 5

10

*California v. Azar*,
11
   911 F.3d 558 (9th Cir. 2018) ................................................................................... 6

12

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
   254 F.3d 882 (9th Cir. 2001) ................................................................................... 3

13

*Cohen v. Cowles Media Co.*,
14
   501 U.S. 663 (1991) ............................................................................................... 11

15

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*,
16
   321 F.3d 878 (9th Cir. 2003) ................................................................................. 17

17

*CTIA - The Wireless Ass'n v. City of Berkeley*,
18
   928 F.3d 832 (9th Cir. 2019) ................................................................................... 6

19

*Distributed v. U.S. Dep't of State*,
   838 F.3d 451 (5th Cir. 2016) ................................................................................... 7

20

*Drummond Co., Inc. v. Collingsworth*,
21
   No. 13-mc-80169, 2013 WL 6074157 (N.D. Cal. Nov. 18, 2013) ......................... 15

22

*E. Bay Sanctuary Covenant v. Barr*,
23
   934 F.3d 1026 (9th Cir. 2019) ............................................................................... 17

24

*Elrod v. Burns*,
   427 U.S. 347 (1976) ................................................................................................. 6

25

*G.K. Ltd. Travel v. City of Lake Oswego*,
26
   436 F.3d 1064 (9th Cir. 2006) ......................................................................... 13, 14

27

*Goldie's Bookstore v. Superior Ct.*,
28
   739 F.2d 466 (9th Cir. 1984) ................................................................................... 6

*Habitat Educ. Ctr. v. U.S. Forest Serv.*,
  607 F.3d 453 (7th Cir. 2010) ............................................................. 17

*Hilton v. Braunskill*,
  481 U.S. 770 (1987) ............................................................................ 4

*Holder v. Humanitarian Law Project*,
  561 U.S. 1 (2010) ....................................................................... 5, 6, 7

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
  433 F.3d 1199 (9th Cir. 2006) ........................................................... 15

*Language Line Servs., Inc. v. Language Servs. Assocs., Inc.*,
  500 F. App'x 678 (9th Cir. 2012) ...................................................... 16

*Lone Star Sec. & Video, Inc. v. City of Los Angeles*,
  827 F.3d 1192 (9th Cir. 2016) ........................................................... 12

*Mayweathers v. Newland*,
  258 F.3d 930 (9th Cir. 2001) ............................................................... 4

*McCullen v. Coakley*,
  573 U.S. 464 (2014) .......................................................................... 13

*Nken v. Holder*,
  556 U.S. 418 (2009) ............................................................................ 4

*OKKO Bus. PE v. Lew*,
  133 F. Supp. 3d 17 (D.D.C. 2015) ....................................................... 6

*Pac. Coast Horseshoeing Sch., Inc. v. Kirchmeyer*,
  961 F.3d 1062 (9th Cir. 2020) ........................................................... 12

*Ramos v. Wolf*,
  No. 18-16981, 2020 WL 5509753 (9th Cir. Sept. 14, 2020) .................. 5

*Rostker v. Goldberg*,
  453 U.S. 57 (1981) ............................................................................... 7

*Short v. Brown*,
  893 F.3d 671 (9th Cir. 2018) ............................................................... 5

*Stagg P.C. v. U.S. Dep't of State*,
  158 F. Supp. 3d 203 (S.D.N.Y. 2016) .................................................. 7

*Trump v. Hawaii*,
  138 S. Ct. 2392 (2018) .................................................................. 5, 13

*U.S. WeChat Users Alliance, et al. v. Trump, et al.*, Case No. 3:20-cv-05910-LB
Defendants' Motion to Stay Preliminary Injunction Pending Appeal and Notice of Record Materials
iii

*United States v. Albertini*,
   472 U.S. 675 (1985) ........................................................................................... 13

*Virginia v. Hicks*,
   539 U.S. 113 (2003) ........................................................................................... 11

*Winter v. NRDC, Inc.*,
   555 U.S. 7 (2008) ................................................................................................. 5

### Regulation

*Addressing the Threat Posed by WeChat, and Taking Additional Steps To Address the National Emergency With Respect to the Information and Communications Technology and Services Supply Chain*,
   85 Fed. Reg. 48641 (Aug. 11, 2020, first issued Aug. 6, 2020) ................................... 2

### Rules

Fed. R. Civ. P. 54 ..................................................................................................... 3

Fed. R. Civ. P. 62 ..................................................................................................... 4

Fed. R. Civ. P. 65 ............................................................................................... 16, 17

### Other Authorities

Facebook, Inc., Account Settings, *Where can I find and manage my Facebook language settings?*
   https://www.facebook.com/help/327850733950290 ................................................ 14

Facebook Inc., Select Your Language,
   https://m.facebook.com/language.php ................................................................... 14

Help, Line, Signing Up,
   https://help.line.me/line/win/categoryId/10000309/pc?lang=en ............................... 15

Instagram, Help Center – Mangaging Your Account, *How do I change my language settings on Instagram?*,
   https://help.instagram.com/111923612310997?helpref=search&sr=6&query=How%20do%20I%20add%20and%20switch%20between%20multiple%20Instagram%20accounts%3F/.... 15

Instagram Translations for 25 Languages (Dec. 21, 2012),
   https://about.instagram.com/blog/announcements/instagram-translations-for-25-languages ... 15

Linkedin, Select Language Setting,
   https://www.linkedin.com/help/linkedin/answer/997 ............................................... 14

Marissa Perino, Business Insider, Tech Reference, *How to change your support language on Snapchat to the language you need* (May 14, 2020),
    https://www.businessinsider.com/how-to-change-language-on-snapchat ................................ 14

Microsoft, Skype Help, *What languages are supported in Skype?,*
    https://support.skype.com/en/faq/FA34781/what-languages-are-supported-in-skype?q=Chinese+language ........................................................................................ 14

Microsoft, Skype Help, *How do I change my language in Skype?,*
    https://support.skype.com/en/faq/FA34779/how-do-i-change-my-language-in-skype ............. 14

Panda Buddy Editoral Team, *Can you use Skype, WhatsApp or FaceTime in China?* (June 9, 2020),
    https://pandabuddy.net/use-skype-whatsapp-or-facetime-in-china/ ........................................ 14

Signal, Support, Signal Messenger Features, Language Options,
    https://support.signal.org/hc/en-us/articles/360049188372-Language-Options ...................... 15

Steven Millward,Tech in Asia, Social Media, *Line App Lauches in China, Keen to Fight with WeChat* (Dec. 12, 2012),
    https://www.techinasia.com/line-app-launched-china ............................................................ 15

Twitter, Help Center – Account Settings, How to change you language settings,
    https://help.twitter.com/en/managing-your-account/how-to-change-language-settings#:~:text=Sign%20in%20to%20your%20Twitter,the%20Language%20drop%2Ddown%20menu ........................................................................................................ 15

Waseem Patwegar, Techbout, *How to Change Support Language in Snapchat*,
    https://www.techbout.com/change-language-in-snapchat-32591/ .......................................... 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
AUGUST FLENTJE
Special Counsel to the Acting
Assistant Attorney General
DIANE KELLEHER
Assistant Branch Director
SERENA M. ORLOFF
MICHAEL DREZNER
STUART J. ROBINSON
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
Ben Franklin Station, P.O. Box No. 883
Washington, DC 20044
Phone: (202) 305-0167
Fax: (202) 616-8470
E-mail: serena.m.orloff@usdoj.gov
*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| U.S. WECHAT USERS ALLIANCE, *et al.*, | Case No. 3:20-cv-05910-LB |
| Plaintiffs, | **DEFENDANTS' NOTICE OF MOTION, MOTION TO STAY INJUNCTION PENDING APPEAL, AND MEMORANDUM IN SUPPORT; NOTICE OF CERTAIN RECORD MATERIALS** |
| v. | |
| DONALD J. TRUMP, President of the United States, and WILBUR ROSS, Secretary of Commerce, | |
| Defendants. | |

<u>**NOTICE OF MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL**</u>

PLEASE TAKE NOTICE that Defendants Donald J. Trump, President of the United

States, and Wilbur Ross, in his official capacity as Secretary of Commerce, by and through

undersigned counsel, hereby move to stay the preliminary injunction entered against Defendants

*U.S. WeChat Users Alliance, et al. v. Trump, et al*., Case No. 3:20-cv-05910-LB
Defendants' Motion to Stay Preliminary Injunction Pending Appeal and Notice of Certain Record Materials

1

pending any appeal to the U.S. Court of Appeals for the Ninth Circuit and, if necessary, pending any further review by the Supreme Court, for the reasons more fully set forth in the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

Defendants hereby move the Court to stay its order granting Plaintiffs' motion for a preliminary injunction, ECF No. 59 ("Order"), pending any appeal to the Ninth Circuit and, if necessary, any further review by the Supreme Court.  Separately, Defendants respectfully submit that the Court may modify any aspect of its injunction in light of the additional points and authorities and factual materials presented in connection with the merits of this motion, which reflect the materials that the Secretary relied on in reaching his Identification decision.[1] Defendants request a ruling by the Court on or before October 1, 2020, to provide Defendants time to request relief from the Ninth Circuit, if necessary.

A stay is amply warranted.  First, the balance of harms weighs strongly in favor of a stay. The Court's preliminary injunction permits the continued, unfettered use of WeChat, a mobile application that the Executive Branch has determined constitutes a threat to the national security and foreign policy of the United States.  *See Addressing the Threat Posed by WeChat, and Taking Additional Steps To Address the National Emergency With Respect to the Information and Communications Technology and Services Supply Chain*, 85 Fed. Reg. 48641, 48641 (Aug. 11, 2020, first issued Aug. 6, 2020); Identification of Prohibited Transactions to Implement Executive Order 13943 and Address the Threat Posed by WeChat and the National Emergency

---

[1] As set forth in greater detail below, the materials provided herewith relate to the Secretary's September 17, 2020 Identification, and were cleared, in part, for release today, September 24, 2020; the prior briefing schedule did not permit the Court to consider any portion of the record of the Secretary's decision because the briefing almost exclusively occurred before the Secretary's action, *see* ECF Nos. 17-37, and Defendants were not able to submit the materials to the Court in the 36-hour period occurring after the Secretary's decision (ECF Nos. 48, 49, 52), in advance of the Court's consideration of the renewed Rule 65 request.  Defendants submit these record materials here to inform this proceeding.

*U.S. WeChat Users Alliance, et al. v. Trump, et al*., Case No. 3:20-cv-05910-LB
Defendants' Motion to Stay Preliminary Injunction Pending Appeal and Notice of Certain Record Materials

2

1    with Respect to the Information and Communications Technology and Services Supply Chain

2    ("Identification").  *See* Decl. of John Costello, Ex. C.  As previously explained, and as elaborated

3    on in certain materials considered by the Secretary in conjunction with his decision, *see id.* Ex. A

4    & Ex. B, WeChat provides the capability for the government of the People's Republic of China

5    ("PRC") to, *inter alia*, surveil the American people and collect and use vast swaths of personal

6    and proprietary information from American users to advance its own interests.  Furthermore,

7    Executive Branch officials have determined that, if WeChat continues to be widely available for

8    use in the United States, the PRC may use WeChat for these purposes.  Moreover, compared to

9    the irreparable harm to national security and foreign policy posed by a preliminary injunction,

10   the harm to Plaintiffs is minimal.  They do not face a ban on their ability to communicate or

11   engage in other expression protected by the First Amendment; rather, they must merely (and

12   eventually) use one of the many alternative means of communication available to them that do

13   not pose such risks, many of which are available in a vast number of languages, including

14   Chinese.  Further, although this Court need not find that its decision was in error in order to stay

15   its injunction, Defendants respectfully submit that the Court erred in holding that "the plaintiffs

16   have shown serious questions going to the merits of the First Amendment claim[.]"  Order at 3;

17   *see id.* at 16-18.  The Court should therefore grant Defendants' motion to stay the preliminary

18   injunction pending any appeal.

19        The Court also has the authority to grant a partial stay or to revise its remedy in light of

20   the considerations set forth in this motion and the record materials provided herewith that detail

21   the harms to national security specifically flowing from WeChat.  *See* Fed. R. Civ. P. 54(b)

22   (recognizing that an interlocutory order like the one at issue "may be revised at any time before

23   the entry of a [final] judgment"); *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,

24   254 F.3d 882, 886 (9th Cir. 2001).  Defendants are concurrently moving to expedite

25   consideration of this Motion to Stay, and respectfully request that the Court rule on this Motion

26   or otherwise grant relief from the injunction no later than October 1, 2020.

27

28

*U.S. WeChat Users Alliance, et al. v. Trump, et al*., Case No. 3:20-cv-05910-LB
Defendants' Motion to Stay Preliminary Injunction Pending Appeal and Notice of Certain Record Materials

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**STATEMENT OF THE ISSUES**

Whether the Court should stay pending appeal or otherwise modify its Order granting Plaintiffs' motion for a preliminary injunction, where the Court appears to have applied an incorrect standard in weighing the balance of harms; where the preliminary injunction irreparably harms the national security and foreign policy interests of the United States, as further demonstrated in the record materials filed herewith; and where the balance of equities tips sharply in the Government's favor; and where the Government is likely to show, or at least has presented a substantial case, that the Court's analysis of Plaintiffs' First Amendment claim is in error.

**DISCUSSION**

**A.      Legal Standard**

Federal Rule of Civil Procedure 62(c) grants district courts discretion to "'suspend, modify, restore, or grant an injunction' during the pendency of the defendant's interlocutory appeal." *Mayweathers v. Newland*, 258 F.3d 930, 935 (9th Cir. 2001) (quoting Fed. R. Civ. P. 62(c)).   "Deciding whether to grant a stay of a preliminary injunction pending an appeal is an equitable inquiry." *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846, 2012 WL 2527044, at *2 (N.D. Cal. July 2, 2012).  In determining whether to grant such a stay, district courts consider four factors: (1) the applicant's likely success on the merits; (2) irreparable injury to the applicant absent a stay; (3) substantial injury to the other parties; and (4) the public interest. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see Nken v. Holder*, 556 U.S. 418, 433-34 (2009).  Additionally, "[e]ach factor in the analysis need not be given equal weight." *Apple, Inc.* 2012 WL 2527044, at *2 (citation omitted).  The factors for "assessing the harm to the opposing party and weighing the public interest . . . merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. at 435.

*U.S. WeChat Users Alliance, et al. v. Trump, et al*., Case No. 3:20-cv-05910-LB
Defendants' Motion to Stay Preliminary Injunction Pending Appeal and Notice of Certain Record Materials

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.       The Balance Of Equities Strongly Supports A Stay Of The Injunction**

Though the Court weighed the balance of the equities in its Order, that weighing was in error.  A proper analysis of the equities demonstrates that a stay is warranted.

In the Ninth Circuit, when a plaintiff has only shown "serious questions" about the merits of a claim rather than a likelihood of success on the merits, a preliminary injunction cannot issue unless "'the balance of hardships tips *sharply* in the plaintiff's favor' and the other two factors are satisfied." *Ramos v. Wolf*, No. 18-16981, 2020 WL 5509753, at *10 (9th Cir. Sept. 14, 2020) (quoting *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (emphasis added)).  Here, the Court concluded only that "[t]he balance of equities favors the plaintiffs"; it did not hold that the balance tips sharply in their favor.  Order at 20; *see also id.* at 3, 15.  Accordingly, Plaintiffs have not satisfied the applicable standard for a preliminary injunction.

Further, Defendants respectfully submit that the Court erred in concluding that the balance favors Plaintiffs at all.  While acknowledging that "the threats that the government has identified generally are significant," the Court nonetheless held that "the specific evidence about WeChat is modest."  *Id.* at 20.  The Court's disagreement with the assessment by responsible Executive Branch officials charged with national-security decisions about the strength of the evidence related to WeChat—and the threat it poses to national security—is not a basis to impose a preliminary injunction.  *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 33-34 (2010) ("That evaluation of the facts by the Executive" regarding "sensitive and weighty interests of national security and foreign affairs" "is entitled to deference.").  The Supreme Court has repeatedly emphasized that "'neither the Members of this Court nor most federal judges begin the day with briefings that may describe new and serious threats to our Nation and its people.'"  *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008) (quoting *Boumediene v. Bush*, 553 U.S. 723, 797 (2008)).  And the Court's stated need for "specific evidence" on WeChat bears no resemblance to how national security decisions are reached, which must rest on considered judgments about risk, foreign policy, and necessary preventive measures.  *See Trump v. Hawaii*, 138 S. Ct. 2392, 2409 (2018) ("[W]hen the President adopts "a preventive measure . . . in the

*U.S. WeChat Users Alliance, et al. v. Trump, et al*., Case No. 3:20-cv-05910-LB
Defendants' Motion to Stay Preliminary Injunction Pending Appeal and Notice of Certain Record Materials

5

context of international affairs and national security," he is "not required to conclusively link all of the pieces in the puzzle before [courts] grant weight to [his] empirical conclusions." (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 35 (2010)); *see also OKKO Bus. PE v. Lew*, 133 F. Supp. 3d 17, 28 (D.D.C. 2015) (whether government action was an "effective strategy" in fulfilling certain "foreign policy objectives . . . is not a question for this Court").

The materials provided with this filing, which are a subset of the materials considered by the Secretary in connection with his decision, make clear that the threat posed specifically by WeChat is significant.  *See, e.g.*, Costello Decl. Ex. A, U.S. Dep't of Commerce, Memorandum for the Secretary from John K. Costello, Deputy Assistant Sec. for Intelligence and Security (Sept. 17, 2020) ("Decision Mem.") at 5-14 (detailing the PRC's long-term espionage efforts against the United States; the Chinese Communist Party's ("CCP") influence over companies such as Tencent; the PRC's legal requirements that private companies assist in intelligence and surveillance efforts; and Tencent's history of assisting the PRC's monitoring, surveillance, and censorship efforts); *see also* Section C, *infra*.

By contrast, Plaintiffs have not established irreparable harm.  In light of the principle that "[t]he loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury[,]" the Court found that "[t]he immediate threat is the elimination of [Plaintiffs' preferred] platform for communication, which results in irreparable injury absent an injunction."  Order at 20 (citing *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018), and *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  However, even absent an injunction, Plaintiffs will be able to continue using WeChat in the short-term to some extent, such that their "platform for communication" will not in fact be "eliminat[ed]," Order at 20, further demonstrating that they face no immediate, substantial burden on their speech.  Additionally, as set forth below, the prohibitions at issue in this case do not impact First Amendment rights – instead, they bar economic transactions that enable hostile action by a foreign adversary and thus threaten national security; the impact on speech is incidental.  Moreover, "[i]t is the '*purposeful* unconstitutional suppression of speech [that] constitutes irreparable harm for preliminary injunction purposes.'"

*U.S. WeChat Users Alliance, et al. v. Trump, et al.*, Case No. 3:20-cv-05910-LB
Defendants' Motion to Stay Preliminary Injunction Pending Appeal and Notice of Certain Record Materials

6

1    *CTIA - The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 851 (9th Cir. 2019) (quoting

2    *Goldie's Bookstore v. Superior Ct.*, 739 F.2d 466, 472 (9th Cir. 1984)) (emphasis added).

3    Defendants respectfully submit that the Court incorrectly concluded the Executive Order and its

4    implementing decision—which aim at economic activity, not speech—meet this controlling

5    standard.

6         The Court's analysis also appears to have been substantially influenced by Plaintiffs'

7    suggestion that other social media applications and news sources are not available to users whose

8    predominant language is Chinese.  *See* Order at 4 ("WeChat provides content (such as the news)

9    in Chinese, which is critical for the many U.S. WeChat users with limited proficiency in

10   English.").  But as set forth below, numerous other mobile applications and news sources *are*

11   available in Chinese, *see infra* note 3, a point the Government did not have the opportunity to

12   develop in light of the rapidly shifting landscape between the morning of Friday, September 18,

13   2020, when the Secretary announced his decision, and later that evening, when the Government

14   was required to oppose Plaintiffs' motion to enjoin that decision.  *See infra* Section C.

15        Even if Plaintiffs have established a serious question about their First Amendment

16   claim—which they have not—that serious question does not outweigh the national security and

17   foreign policy interests at stake.  *See, e.g., Def. Distributed v. U.S. Dep't of State*, 838 F.3d 451

18   (5th Cir. 2016) ("The fact that national security might be permanently harmed while Plaintiffs-

19   Appellants' constitutional rights might be temporarily harmed strongly supports our conclusion

20   that the district court did not abuse its discretion in weighing the balance in favor of national

21   defense and national security."); *Stagg P.C. v. U.S. Dep't of State*, 158 F. Supp. 3d 203, 209-10

22   (S.D.N.Y. 2016) ("Even assuming for the purposes of this motion that Stagg P.C. has shown a

23   substantial likelihood of success on the merits of its First and Fifth Amendment and APA claims,

24   the balance of the equities and the public interest both require the denial of this preliminary

25   injunction[,]" given that "national security [is] a "'public interest of the highest order'" (citation

26   omitted)), *aff'd*, 673 F. App'x 93 (2d Cir. 2016).  And the Supreme Court has recognized that,

27   even in balancing First Amendment interests "when it comes to collecting evidence and drawing

28

*U.S. WeChat Users Alliance, et al. v. Trump, et al.*, Case No. 3:20-cv-05910-LB
Defendants' Motion to Stay Preliminary Injunction Pending Appeal and Notice of Certain Record Materials

7

factual inferences in this area, 'the lack of competence on the part of the courts is marked,' and respect for the Government's conclusions is appropriate." *Humanitarian Law Project*, 561 U.S. at 34 (quoting *Rostker v. Goldberg*, 453 U.S. 57, 65 (1981)).

The balance of equities therefore tips sharply in favor of the United States. And, at the very least, the balance does not tip sharply in Plaintiffs' favor. Those equities would not justify an injunction, and they are more than adequate to justify a stay.[2]

### C.    Defendants And The Public Interest Will Be Irreparably Harmed Absent a Stay

The United States will suffer irreparable harm, both substantive and procedurally, if the Court does not stay its decision. As to substance, absent implementation of the Secretary's prohibitions, WeChat will continue to collect vast amounts of personal and sensitive information from approximately 19 million active daily users in the United States in a range of formats, including text, images, video, and audio. *See* Decision Mem. at 4, 6. This bulk collection includes, but is not limited to, "phone numbers, names, internet protocol (IP) address[es], contact lists, geolocation data, Wi-Fi access points, Internet or network activity information, device model, network type, call history, chat data, search history, biometric information, and payment case information," as well as stored photos and medical data from WeChat "mini-programs." *Id.* at 10. This information, once transmitted to Tencent, cannot be clawed back; it will be inescapably and perpetually available to the PRC through its interrelationship with Tencent and coercive national intelligence laws. *See id.* at 7-8 (discussing close ties between Tencent and the PRC, including a Tencent "Party Committee" that "boasts nine general branches, 89 party branches and 3,386 members" as of 2017); *id.* at 8 (Chinese National Intelligence Law "obliges individuals, organizations and institutions to assist Public Security and State Security officials in carrying out a wide array of intelligence work"); *see also* Costello Decl., Ex. B, Dep't of Homeland Security, Cybersecurity and Infrastructure Security Agency Note, TikTok and

---

[2]  Defendants incorporate by reference their prior explanation as to why a nationwide injunction is improper. *See* ECF No. 22 at 40; ECF No. 51 at 14. For those reasons, and at a minimum, the Court should stay its Order's nationwide effect.

*U.S. WeChat Users Alliance, et al. v. Trump, et al*., Case No. 3:20-cv-05910-LB
Defendants' Motion to Stay Preliminary Injunction Pending Appeal and Notice of Certain Record Materials

1    WeChat Risk Assessment (Sept. 2, 2020) ("CISA Assessment") at 2 (noting WeChat's "history

2    of providing information to, and actively cooperating with, the Chinese government").

3            The loss of control over this vast body of information to a corporate arm of a foreign

4    adversary poses numerous harms to the national security of the United States.  It exposes the

5    country to an unacceptable risk that the PRC will "compel Tencent [or its employees or

6    contractors] to provide systemic access to U.S. [users'] sensitive personal information," Decision

7    Mem. at 12, to assist activities that are directly adverse to the interests of the United States,

8    including "facilitat[ing] intelligence and surveillance targeting"; "train[ing] algorithms for facial

9    and voice recognition"; and "generat[ing] cooperative and coercive tools of domestic control."

10   *Id.* at 6; *see also* CISA Assessment at 2-3 (data exfiltrated through WeChat could be used, *inter*

11   *alia*, to hone spear-phishing activities, gain access to protected systems and networks, and reveal

12   sensitive and valuable "details about the number of users in a location, their movements and

13   daily routines, and otherwise unknown associations between users and locations").  In addition,

14   "WeChat offers a platform for the PRC that allows only pro-CCP propaganda and content to

15   millions of U.S. users" and thus not only permits the CCP to "subversively influence the views

16   of millions of U.S. WeChat users" but further requires "U.S. citizens . . . to self-censor the

17   content they share[.]"  *Id.* at 14; *see also* CISA Assessment at 3 ("WeChat already surveils

18   foreign users of the application in order to improve its ability to censor content" and "[t]he

19   Chinese government could use WeChat . . . to censor unfavorable content and promote pro-

20   Chinese government content in an attempt to sway public opinion and sow discord").  Those

21   harms only increase if WeChat retains an unrestricted ability to recruit new users in the United

22   States through the new downloads permitted by the Court's injunction, which perversely permits

23   Tencent to *continue* to generate an ever-growing dependence on the WeChat app among the

24   Chinese diaspora in this country, thus amplifying and exacerbating these threats.  These harms

25   cannot be repaired.

26           A stay would also take account of the materials submitted herewith, which were

27   considered by the Secretary in reaching his Identification decision.  The highly compressed

28

*U.S. WeChat Users Alliance, et al. v. Trump, et al*., Case No. 3:20-cv-05910-LB
Defendants' Motion to Stay Preliminary Injunction Pending Appeal and Notice of Certain Record Materials

9

schedule never provided the Court with the occasion to review even this partial record of the Secretary's decision.  The Court acknowledged that the Government has "significant national security concerns" regarding the threats posed by China, but nevertheless determined that a nationwide preliminary injunction was appropriate because the Government "has put in scant little evidence" that the Secretary's specific actions were appropriate to address those concerns. Order at 18.  The decisional materials filed with this motion should address this concern.

Furthermore, the Government would be prejudiced if the Court declined to take account of those materials.  When this case was filed on August 25, 2020, Plaintiffs sought to invalidate the President's Executive Order on its face, and Defendants' initial opposition—while outlining the general nature of the threat posed by WeChat—was focused on the nonjusticiability of Plaintiffs' original claims and the lack of merit to their facial challenges, as to which the Court ultimately agreed.  *See* ECF No. 22 at 17-22; Sept. 18, 2020 Tr. ("Sept. 18 Tr."), ECF No. 66, at 4:5-6, 9-10, 6:16-22.  Because of that focus, Defendants could represent to the Court, as they did, that they would not rely on any documents that were not publicly available in their opposition to Plaintiffs' discovery motion.  *See* Discovery Order, ECF No. 25 at 4 ("The defendants . . . agreed that they would not rely on any documents in their opposition that are not publicly available.").

On September 18, 2020, when the Secretary issued his final decision, however, the focal point for judicial review shifted to the record underlying that decision.  *See* Joint Discovery Letter (Sept. 3, 2020), Defendants' Position, ECF No. 18, at 4 ( "Any such challenge [should be] decided on the basis of an administrative record compiled by the agency"); *see also* Sept. 18, 2020 Tr. at 7:1-2 (Court acknowledging that "the fact landscape or the procedural landscape is different" after the Secretary's decision); *id.* at 14:1 ("the fact record is different"); *id.* at 18:22 ("the issues are different now").  The Secretary's Identification is supported by materials that are not in the public record, but in the very short interval between the Secretary's decision and the Court's ultimate ruling, the Government did not have time to compile, process, and submit such materials, some of which required additional inter-agency review before submission to the Court.

*U.S. WeChat Users Alliance, et al. v. Trump, et al*., Case No. 3:20-cv-05910-LB
Defendants' Motion to Stay Preliminary Injunction Pending Appeal and Notice of Certain Record Materials

10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### D.      Defendants Have A Strong Likelihood Of Success On The Merits

#### 1.      The Challenged Restrictions Are Not Subject to First Amendment Scrutiny Because They Are Directed at Business Transactions

As the Court acknowledged at the conference on September 18, 2020, the issuance of the Secretary's decision shifts the First Amendment analysis.  *See* Sept. 18 Tr. at 19:3-6 ("I can imagine that some of the Government's First Amendment arguments might be different now than they were in the [prior] brief, which . . . led with ripeness").  It is now clear that the specific prohibited transactions identified by the Secretary do not target expression and will not expose Plaintiffs to criminal or civil liability based on any protected speech, making First Amendment scrutiny inappropriate.  Rather, and consistent with the focus of the Executive Order itself, the prohibitions extend solely to economic transactions between businesses, explicitly exempting the "exchange between or among WeChat mobile application users of personal or business information."  Identification at 6-7.  First Amendment scrutiny is therefore inappropriate.

In light of the Secretary's decision, Plaintiffs have largely abandoned their "chill" theory and now argue that prohibiting economic transactions between other parties will have a downstream effect on their ability to engage in expressive activity.  *See* ECF No. 48 at 1-4.  However, such downstream, incidental effects on expressive activity generally do not justify First Amendment scrutiny of the challenged regulation.  For example, in *Arcara v. Cloud Books, Inc.*, 478 U.S. 697 (1986), a bookstore ordered to be closed as a public nuisance claimed that "the effect of the statutory closure remedy impermissibly burdens its First Amendment protected bookselling activities," but the Supreme Court disagreed: "every civil and criminal remedy imposes some conceivable burden on First Amendment protected activities," and the First Amendment could not be invoked "to defeat a valid statute aimed at penalizing and terminating illegal uses of premises."  *Id.* at 705-707; *see also Virginia v. Hicks*, 539 U.S. 113, 123 (2003) (upholding a state trespass policy even as to those who trespass for First Amendment purposes, because "it is Hicks' nonexpressive conduct—his entry in violation of the notice-barment rule— not his speech, for which he is punished as a trespasser"); *Cohen v. Cowles Media Co.*, 501 U.S. 663, 669 (1991).

*U.S. WeChat Users Alliance, et al. v. Trump, et al*., Case No. 3:20-cv-05910-LB
Defendants' Motion to Stay Preliminary Injunction Pending Appeal and Notice of Certain Record Materials

11

Here, the Executive Order and the Identification prohibit business-to-business economic transactions with a foreign entity and its subsidiaries based on the President's national security determinations.  The fact that those prohibitions may have adverse, downstream effects on Plaintiffs' preferred mode of speech is legally irrelevant:  "Neither the basis for the . . . [restriction] . . . nor its purpose . . . has anything to do with the First Amendment." *Hicks*, 539 U.S. at 123.  Thus, the First Amendment scrutiny is simply inapplicable to the Government's challenged actions.  The Government is therefore likely to succeed on the merits of Plaintiffs' First Amendment claim.

### 2.      Alternatively, the Prohibited Transactions Satisfy Intermediate Scrutiny

Even if the Ninth Circuit were to conclude that the First Amendment has some bearing here, Defendants remain likely to succeed on the merits of this claim.  To the extent the First Amendment is implicated, it imposes, at most, intermediate scrutiny of the Secretary's actions, as the Court acknowledged.  Order at 17.  Even where the Government  regulates the time, place or manner of expression, such action survives intermediate scrutiny so long as it "advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests." *Pac. Coast Horseshoeing Sch., Inc. v. Kirchmeyer*, 961 F.3d 1062, 1068 (9th Cir. 2020) (citation omitted).  As a component of this analysis, courts also examine whether the regulation "leave[s] open adequate alternative opportunities" for speech or expression. *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192, 1202 (9th Cir. 2016).  The Executive Order satisfies each of these requirements.

First, and for the reasons discussed in Sections B and C, *supra*, and in the materials provided with this motion, the governmental interests advanced here are important and compelling.  The Court recognized that the Government had cited evidence demonstrating, among other things, how WeChat is used for "censorship in China, the dissemination of propaganda in the Chinese diaspora, and the potential to facilitate surveillance."  Order at 12.

*U.S. WeChat Users Alliance, et al. v. Trump, et al*., Case No. 3:20-cv-05910-LB
Defendants' Motion to Stay Preliminary Injunction Pending Appeal and Notice of Certain Record Materials

12

1   Indeed, the Court properly held that, in regulating WeChat, "[c]ertainly the government's

2   overarching national-security interest is significant." *Id*. at 18.

3          Nevertheless, the Court concluded that the Government had provided insufficient

4   "evidence" that the Secretary's prohibitions on certain transactions "addresses those concerns[.]"

5   *Id*.  However, as explained *supra* at Part C, the schedule did not permit the Government a

6   meaningful opportunity to submit the information underlying the Secretary's decision in the

7   hours that elapsed between that decision and the Government's deadline to oppose Plaintiffs'

8   renewed motion for a preliminary injunction on a new amended complaint.  In any event, in light

9   of the extensive materials the Government did cite relating to China's persistent activities to

10  conduct espionage and surveillance, and its ability to use WeChat to amass personal information

11  relating to more than one billion users (including millions of Americans), it is self-evident that

12  preventing Americans from using WeChat, over time, will reduce the PRC's ability to engage in

13  these activities.  Certainly under the deferential standard applicable under the First Amendment,

14  and particularly in the national security context, Defendants have demonstrated that the United

15  States' national security ends are advanced by protecting the data of the American people from

16  collection and utilization by China.  *See Hawaii*, 138 S. Ct. at 2409; *see also G.K. Ltd. Travel v.*

17  *City of Lake Oswego*, 436 F.3d 1064, 1073 (9th Cir. 2006) (holding that courts "generally defer"

18  to the Government in "determining whether the government's ends are advanced by a

19  regulation").

20         The Court faulted Defendants for failing to adopt other unspecified "steps to address data

21  security."  Order at 18.  However, the Secretary's decision explains why such steps are not

22  feasible.  Decision Mem. at 14-15.  Indeed, an action like this one is a critical component of a

23  foreign policy arsenal aimed at achieving change in Chinese policies that are harmful to the

24  country's national interests, including speech interests.  Specifically, "addressing national

25  security concerns through mitigation requires a baseline level of trust in the entity subject to the

26  mitigation terms," which is not possible so long as "WeChat remains under Tencent ownership,

27  Tencent maintains a deep relationship with the CCP and PRC; PRC laws remain applicable to

28

*U.S. WeChat Users Alliance, et al. v. Trump, et al*., Case No. 3:20-cv-05910-LB
Defendants' Motion to Stay Preliminary Injunction Pending Appeal and Notice of Certain Record Materials

13

Tencent's operations outside of China, Tencent continues to support ongoing efforts to support PRC surveillance and censorship; and [the PRC's intelligence and security services] continue to engage in an ongoing pattern of espionage to collect U.S. person information." *Id.* at 14. Because less restrictive measures would fail to achieve the Defendants' goal of preventing wholesale exposure of Americans' data to the PRC, the Secretary's prohibitions do not burden substantially more speech than necessary. *See United States v. Albertini*, 472 U.S. 675, 689 (1985) (holding that the validity of time, place and manner "regulations does not turn on a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests").

Thus, the alternatives suggested by the Court would in fact "fail to achieve the government's interests" and accordingly cannot serve as a basis to invalidate the Secretary's action. *See McCullen v. Coakley*, 573 U.S. 464, 495 (2014). Barring WeChat only "from government devices," as the Court first suggests, clearly would not prevent WeChat from collecting the enormous majority of data from its American users, and therefore would not halt the flow of such data to the PRC. *See* Order at 18. Moreover, neither Plaintiffs nor the Court is qualified to make policy judgments about how best to address these national security concerns, and suggestions that the Secretary could have decided differently do not invalidate his actions. *See supra* at 5-8.

The Government can also satisfy the final prong of intermediate scrutiny, because ample alternative avenues of communication remain available. The Ninth Circuit has "cautioned against invalidating government regulations for failing to leave open ample alternative channels unless the regulation foreclose[s] 'an entire medium of public expression[.]'" *G.K. Ltd. Travel*, 436 F.3d at 1074 (emphasis added). WeChat is not "an entire medium" of communication; it is a single mobile application to which there are numerous alternatives, as Plaintiffs concede. *See, e.g.*, Decl. of Wanning Sun ¶ 34, ECF No. 17-11. Moreover, insofar as the Court concluded that "WeChat is effectively the only means of communication for many in the community" because "Chinese speakers with limited English proficiency have no options other than WeChat," Order

*U.S. WeChat Users Alliance, et al. v. Trump, et al.*, Case No. 3:20-cv-05910-LB
Defendants' Motion to Stay Preliminary Injunction Pending Appeal and Notice of Certain Record Materials

14

at 17, that conclusion is mistaken as well.  Facebook has been offered in a Chinese-language format since at least 2008, and it only takes a matter of seconds to view news sources and many popular mobile and social media applications in Chinese, including Facebook, LinkedIn, Skype, Snapchat, Instagram, Twitter, Signal, Line and many others.[3]  There are numerous and widely available alternative avenues for communication in the United States, including for Chinese speakers with limited English proficiency.

---

[3] For Facebook language options, s*ee, e.g.*, https://www.facebook.com/help/327850733950290 (instructions to change language settings); https://m.facebook.com/language.php (list of languages includes "Traditional Chinese (Taiwan)," "Simplified Chinese (China)" and "Traditional Chinese (Hong Kong)").  For LinkedIn language options, *see, e.g.*, https://www.linkedin.com/help/linkedin/answer/997 (instructions to change language settings); https://www.linkedin.com/signup/cold-join?session_redirect=https%3A%2F%2Fwww%2Elinkedin%2Ecom%2Fsettings%2Fselect-language&trk=login_reg_redirect (select language from drop-down menu).  For Skype language options, *see, e.g.*, https://support.skype.com/en/faq/FA34779/how-do-i-change-my-language-in-skype; https://support.skype.com/en/faq/FA34781/what-languages-are-supported-in-skype?q=Chinese+language; *see also* https://pandabuddy.net/use-skype-whatsapp-or-facetime-in-china/.  For SnapChat language options, *see, e.g.*, https://www.businessinsider.com/how-to-change-language-on-snapchat (instructions to change language settings); https://www.techbout.com/change-language-in-snapchat-32591/ (noting that SnapChat is available in 20 languages, including Chinese).  For Instagram language options, *see, e.g.*, https://help.instagram.com/111923612310997?helpref=search&sr=6&query=How%20do%20I%20add%20and%20switch%20between%20multiple%20Instagram%20accounts%3F (instructions for changing language settings); https://about.instagram.com/blog/announcements/instagram-translations-for-25-languages (announcing capability for twenty-five languages, including Chinese) (Dec. 21, 2012).  For Twitter language options, *see, e.g.*, https://help.twitter.com/en/managing-your-account/how-to-change-language-settings#:~:text=Sign%20in%20to%20your%20Twitter,the%20Language%20drop%2Ddown%20menu (instructions to change language settings); https://about.twitter.com/ (select language from drop down menu in upper right hand corner of screen).  For Signal language options, *see, e.g.*, https://support.signal.org/hc/en-us/articles/360049188372-Language-Options (choose Chinese language from drop-down menu in upper right hand corner of screen).  For Line language options, *see, e.g.*, https://help.line.me/line/win/categoryId/10000309/pc?lang=en (choose language from drop-down menu); *see also* https://www.techinasia.com/line-app-launched-china.  Several Chinese language news sources are also available in the United States. *See, e.g.*, https://www.chinapress.com.my/; https://www.worldjournal.com/wj/index; http://www.guojiribao.com/index.shtml.  This is not an exhaustive list.

*U.S. WeChat Users Alliance, et al. v. Trump, et al*., Case No. 3:20-cv-05910-LB
Defendants' Motion to Stay Preliminary Injunction Pending Appeal and Notice of Certain Record Materials

1    As to the Court's concerns about WeChat users' ability to communicate with persons in

2 China, the Ninth Circuit has observed that whether the First Amendment extends to such

3 international communications "is a difficult and, to some degree, unresolved issue." *Yahoo! Inc.*

4 *v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1217 (9th Cir. 2006).  But

5 even where courts have concluded that such protections may exist, they have been careful to

6 emphasize that they are subject to "competing considerations" such as "the security of the United

7 States*." See Drummond Co., Inc. v. Collingsworth*, No. 13-mc-80169, 2013 WL 6074157, at

8 *14 (N.D. Cal. Nov. 18, 2013).  Here, critical national security interests are advanced by

9 restricting WeChat's ability to operate in the United States.  Indeed, it is absurd to suggest that

10 the First Amendment protects the Chinese government's ability to leverage alleged reliance on

11 the WeChat app in order to conduct surveillance, censorship, and repression, activities that are

12 directly repugnant to the First Amendment and pose a palpable threat to the national security of

13 the United States.  And Plaintiffs do not and cannot assert that WeChat is the only available

14 method to communicate with individuals in China.  Thus, the First Amendment does not bar

15 regulation of WeChat simply because it has achieved the popularity and dependency sought by

16 the PRC, precisely so it can surveil users, promote its propaganda, and otherwise place U.S.

17 national security at risk.

18    **E.    Alternatively, The Court Should Stay at Least Part of its Preliminary**
19         **Injunction**

20    The Court may modify or set aside all or any part of its injunction in light of the

21 considerations set forward in this memorandum and accompanying materials.  "A district court

22 has inherent authority to modify a preliminary injunction in consideration of new facts."

23 *Language Line Servs., Inc. v. Language Servs. Assocs., Inc*., 500 F. App'x 678, 680 (9th Cir.

24 2012) (citation omitted); *A & M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir.

25 2002) (explaining that a district court has inherent authority to modify a preliminary injunction

26 based on changed circumstances or new facts).  If the Court determines it will not revise or stay

27 the entire injunction order, Defendants alternatively request a stay of the injunction as applied to

28

*U.S. WeChat Users Alliance, et al. v. Trump, et al*., Case No. 3:20-cv-05910-LB
Defendants' Motion to Stay Preliminary Injunction Pending Appeal and Notice of Certain Record Materials

16

Paragraph 1 of the Identification.  Defendants also request that Plaintiffs post a bond under Federal Rule of Civil Procedure 65(c).

Defendants request that the Court limit or stay the injunction at least insofar as it applies to Paragraph 1 of the Identification of Prohibited Transactions, which prohibits "[a]ny provision of services to distribute or maintain the WeChat mobile application, constituent code, or mobile application updates through an online mobile application store, or any online marketplace where mobile users within the land or maritime borders of the United States and its territories may download or update applications for use on their mobile devices."  Identification at 5.  This more limited approach, which would continue to enjoin enforcement of the other prohibitions adopted by the Secretary, protects Plaintiffs' alleged interests as existing WeChat users while guarding against at least some of the increased harms to national security that would flow from the unrestricted use of WeChat by new users in the United States.  Barring new users from WeChat – one of the six prohibitions – plainly has a much smaller impact on Plaintiff's expressive activities, and an "injunction must be narrowly tailored to remedy the specific harm shown."  *E. Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019).  The balance of the equities therefore should be struck differently with respect to the first prohibition.

Second, the Court should require Plaintiffs to post a bond.  Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order *only* if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c) (emphasis added).  Although the district court is afforded wide discretion and may waive the bond where there is no evidence of potential damage, *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003), here there is substantial evidence of harm to the Government, *see* Parts B and C, and the Court has not made a finding on a bond.  Defendants have demonstrated irreparable harm to national security, and might reasonably be expected to suffer additional pecuniary harm related to the implementation of the injunction or protective measures necessitated thereby.  Such a bond

*U.S. WeChat Users Alliance, et al. v. Trump, et al.*, Case No. 3:20-cv-05910-LB
Defendants' Motion to Stay Preliminary Injunction Pending Appeal and Notice of Certain Record Materials

17

cannot account for the harm to national security but is appropriate in a case presenting real

potential harm to Government interests.  *Cf. Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d

453 (7th Cir. 2010).

## CONCLUSION

Defendants' motion to stay the Court's preliminary injunction pending any appeal should

be granted.

## <u>NOTICE OF CERTAIN RECORD MATERIALS</u>

Defendants respectfully notify the Court that in further support of the arguments

presented here and in Defendants' prior briefing, they respectfully submit the attached

Declaration of John Costello, along with a partially redacted version of the Decision

Memorandum, the CISA Assessment considered by the Secretary, and the Secretary's

Identification of Prohibited Transactions.  Defendants also plan to lodge the unredacted version

of the Decision Memorandum and certain classified information with the Court for *ex parte, in*

*camera* review.

Dated: September 24, 2020                    Respectfully submitted,

                                             JEFFREY BOSSERT CLARK
                                             Acting Assistant Attorney General

                                             AUGUST FLENTJE
                                             Special Counsel to the Acting
                                             Assistant Attorney General

                                             ALEXANDER K. HAAS
                                             Branch Director

                                             DIANE KELLEHER
                                             Assistant Branch Director

                                             */s/  Serena M. Orloff*
                                             SERENA M. ORLOFF
                                             MICHAEL DREZNER
                                             STUART J. ROBINSON
                                             Trial Attorneys
                                             United States Department of Justice

*U.S. WeChat Users Alliance, et al. v. Trump, et al*., Case No. 3:20-cv-05910-LB
Defendants' Motion to Stay Preliminary Injunction Pending Appeal and Notice of Certain Record Materials

18

Civil Division, Federal Programs Branch
Ben Franklin Station, P.O. Box No. 883
Washington, DC 20044
Phone: (202) 305-0167
Fax: (202) 616-8470
E-mail: serena.m.orloff@usdoj.gov

*Counsel for Defendants*

*U.S. WeChat Users Alliance, et al. v. Trump, et al*., Case No. 3:20-cv-05910-LB
Defendants' Motion to Stay Preliminary Injunction Pending Appeal and Notice of Certain Record Materials

19