MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
VAN SWEARINGEN – 259809
BENJAMIN BIEN-KAHN – 267933
ALEXANDER GOURSE – 321631
AMY XU – 330707
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:  (415) 433-6830
Facsimile:  (415) 433-7104
Email:  mbien@rbgg.com
        egalvan@rbgg.com
        vswearingen@rbgg.com
        bbien-kahn@rbgg.com
        agourse@rbgg.com
        axu@rbgg.com

KELIANG (CLAY) ZHU – 305509
DEHENG LAW OFFICES PC
7901 Stoneridge Drive #208
Pleasanton, California  94588
Telephone:  (925) 399-5856
Facsimile:  (925) 397-1976
Email:  czhu@dehengsv.com

ANGUS F. NI – Admitted *Pro Hac Vice*
AFN LAW PLLC
502 Second Avenue, Suite 1400
Seattle, Washington  98104
Telephone:  (773) 543-3223
Email:  angus@afnlegal.com

THOMAS R. BURKE – 141930
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California  94111-6533
Telephone:  (415) 276-6500
Facsimile:  (415) 276-6599
Email:  thomasburke@dwt.com

DAVID M. GOSSETT – Admitted *Pro Hac Vice*
DAVIS WRIGHT TREMAINE LLP
1301 K Street N.W., Suite 500 East
Washington, D.C.  20005-3366
Telephone:  (202) 973-4216
Facsimile:  (202) 973-4499
Email:  davidgossett@dwt.com

JOHN M. BROWNING – Admitted *Pro Hac Vice*
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York  10020-1104
Telephone:  (212) 603-6410
Facsimile:  (212) 483-8340
Email:  jackbrowning@dwt.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| U.S. WECHAT USERS ALLIANCE, CHIHUO INC., BRENT COULTER, FANGYI DUAN, JINNENG BAO, ELAINE PENG, and XIAO ZHANG,<br><br>          Plaintiffs,<br><br>     v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, and WILBUR ROSS, in his official capacity as Secretary of Commerce,<br><br>          Defendants. | Case No. 3:20-cv-05910-LB<br><br>**PLAINTIFFS' RESPONSE TO DECLARATION OF JOHN COSTELLO**<br><br>Judge:     Hon. Laurel Beeler<br><br>Trial Date:     None Set |

On October 19, 2020, Defendants filed a declaration of John Costello, ECF No.93- 1, in support of their pending Motion to Stay the preliminary injunction issued by this Court a month earlier.  In his newly filed declaration, Mr. Costello purports to rebut the expert declaration of Adam Roach, which analyzed Defendants' September 18, 2020 Identification of Prohibited Transactions ("Identification") and concluded that WeChat would "effectively be shut down as soon as [the prohibitions] are fully implemented." ECF No. 84-1 at ¶ 13.  But the Costello declaration further *confirms* that Defendants have not met the standard for a stay.

First, the Costello declaration contradicts the government's argument that the prohibitions affect only "business-to-business transactions" and are not aimed at speech. According to Mr. Costello, who personally drafted the Decision Memorandum on which the Secretary of Commerce relied to issue the Identification, "[t]he intent of the prohibitions is to substantially reduce the number of daily users of the WeChat mobile application in the United States." ECF No. 93-1 at ¶ 9.  Reducing the number of WeChat users, of course, means reducing the amount of protected speech that users publish through the platform.  Regulations that aim to stop protected speech before it occurs by targeting a platform or other communications medium, or to limit the distribution of protected speech through such a platform, are quintessential prior restraints.  *See Grosjean v. American Press Co.*, 297 U.S. 233, 244 (1936) (treating Huey Long's newspaper tax as a "previous restraint" because its "direct tendency is to restrict circulation"); *City of Ladue v. Gilleo*, 512 U.S. 43, 55 (1994).

Second, Costello does not take issue with Adam Roach's expert opinion that "[k]ey WeChat functions, such as voice and video calls, may be severely limited" by the second and third prohibitions in the Identification. ECF No. 84-1 at ¶ 8.  Nor could he— Mr. Costello lacks the technical background to opine on the likely effects of the prohibitions.  Such a "severe" impact on WeChat users' primary means of communicating with family, friends, and political and religious associates clearly implicates the First Amendment.  *See Currier v. Potter*, 379 F.3d 716, 727 (9th Cir. 2004) ("It is axiomatic

that restrictions upon the mail system implicate the First Amendment.").

Third, the Costello declaration further confirms that the prohibitions will not address the government's stated national security interests related to surveillance and censorship during the pendency of this case. Mr. Costello states that it "would take 1-2 years [from the date of the prohibitions] for the functionality of the app to degrade to the point of causing an otherwise dedicated WeChat user to stop using the app and delete it from his or her device." ECF No. 93-1 at ¶ 8. Mr. Costello then proceeds to assert that the third prohibition in the Identification will have only a "limited" effect on the WeChat app's functionality and usability, and that he "do[es] not expect the impact of this prohibition…to deter otherwise dedicated users of the WeChat application from continuing that use." *Id.* at ¶ 12. Without conceding the accuracy of Mr. Costello's predictions or his projected timeline for shutting down WeChat in the United States, Plaintiffs note that the anticipated delay effectively undermines the government's argument that it will suffer irreparable harm if the Court's injunction is not stayed pending appeal. A stay is an extraordinary remedy, available only when the party seeking the stay demonstrates harm that is *imminent*—or at least that the harm will occur before the Court of Appeals has an opportunity to review the injunction. By their own admission, Defendants will not suffer irreparable harm in the absence of a stay because even if the prohibitions were in effect, use of the WeChat app in the United States would not significantly decline until months or even years down the road.

Fourth, the Costello declaration attempts to reassure the Court that Defendants "considered the risk of an unpatched security vulnerability" before issuing the Identification. But Mr. Costello does not quantify or otherwise explain what the risk is beyond conclusorily asserting that it is "vastly outweighed by the long-term security benefits of the prohibition." *Id.* at ¶ 7. Costello also summarily asserts that security vulnerabilities requiring app updates are rare, but even a brief survey of recent technology

reporting shows that such vulnerabilities are extremely common.[1]  Mr. Costello's conclusory, post-hoc assertion that Defendants considered and rejected, for unspecified reasons, the likely possibility that a prohibition on app updates would actually *exacerbate* threats to Americans' data security, does not come close to showing the kind of well-reasoned, narrowly tailored policy design necessary to justify the WeChat Ban's extraordinary and unprecedent burden on protected speech.

Finally, by confirming that WeChat Pay "is not currently available in the United States," the Costello declaration contradicts Defendants' statement to the Court at the October 15 hearing that Defendant Ross was referring only to WeChat Pay when he stated, on national television on the morning of September 18, 2020, that the prohibited transactions would effectively "shut down" WeChat by the evening of Monday, September 21, 2020.  *See* Hearing Transcript at 31:10-32:7 (Oct. 15, 2020).  In fact, at the time of his comment Defendant Ross was well aware that WeChat Pay is not available to American users of the app, *see* ECF No. 93-2 at 4 (noting that WeChat Pay is "not currently available in the United States"), and it is simply implausible that he was referring

---

[1] *See, e.g.*, Samuel Gibbs, "WhatsApp hack: have I been affected and what should I do?" *The Guardian* (May 14, 2019), https://www.theguardian.com/technology/2019/may/14/whatsapp-hack-have-i-been-affected-and-what-should-i-do; Adam Clark Estes, "Google's Fixing the Hangouts Hack With 'Biggest Software Update Ever,'" *Gizmodo* (Aug. 5, 2015), https://gizmodo.com/googles-fixing-the-hangouts-hack-with-biggest-software-1722296396; Mike Isaac and Sheera Frenkel, "Facebook Security Breach Exposes Accounts of 50 Million Users," *N.Y. Times* (Sept. 28, 2018), https://www.nytimes.com/2018/09/28/technology/facebook-hack-data-breach.html; Shannon Liao, "Facebook Messenger had a vulnerability that could let hackers see who you contact," *The Verge* (Mar. 7, 2019), https://www.theverge.com/2019/3/7/18254788/facebook-messenger-vulnerability-attack-imperva-iframe-malicious; Maya Shwayder, "Vulnerability in Signal messaging app could let hackers track your location," *Digital Trends* (May 20, 2020), https://www.digitaltrends.com/news/signal-vulnerability-hack-location/; Brian Fung, "A Snapchat security breach affects 4.6 million users. Did Snapchat drag its feet on a fix?" *Wash. Post* (Jan. 1, 2014), https://www.washingtonpost.com/news/the-switch/wp/2014/01/01/a-snapchat-security-breach-affects-4-6-million-users-did-snapchat-drag-its-feet-on-a-fix/; Lee Bell, "Skype security flaw 'ignored' by Microsoft could allow hackers to gain access to users' computers," *ITPro* (Feb. 14, 2018), https://www.itpro.co.uk/security/30539/skype-security-flaw-ignored-by-microsoft-could-allow-hackers-to-gain-access-to-users; Lily Hay Newman, "Hackers Can Break Into an IPhone Just by Sending a Text," *Wired* (Aug. 7, 2019), https://www.wired.com/story/imessage-interactionless-hacks-google-project-zero/.

1 | to WeChat Pay being shut down rather than the app as a whole.

3 | DATED:  October 20, 2020               Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Alexander Gourse*
    Alexander Gourse

Attorneys for Plaintiffs