1   KEESAL, YOUNG & LOGAN
    Peter R. Boutin,  SBN 65261
2   450 Pacific Avenue
    San Francisco, CA 94133
3   Telephone: (415) 398-6000
    Facsimile: (415) 981-0136
4   peter.boutin@kyl.com

5   PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
    Roberto J. Gonzalez  (*pro hac vice pending*)
6   Jake E. Struebing  (*pro hac vice pending*)
    2001 K Street, NW
7   Washington,  DC 20006
    Telephone: (202) 223-7300
8   Facsimile: (202) 223-7420
    rgonzalez@paulweiss.com
9   jstruebing@paulweiss.com

10  Anand Sithian  (*pro hac vice forthcoming*)
    Julie L. Rooney (*pro hac vice pending*)
11  1285 Avenue of the Americas
    New York, NY 10019
12  Telephone: (212) 373-3000
    Facsimile: (212) 757-3990
13  asithian@paulweiss.com
    jrooney@paulweiss.com

14  *Attorneys for Proposed Intervenor Tencent Holdings Limited*

15

16              **UNITED STATES DISTRICT COURT**

17              **NORTHERN DISTRICT OF CALIFORNIA**

18              **SAN FRANCISCO DIVISION**

19  U.S. WECHAT USERS ALLIANCE, CHIHUO     )   Case No. 3:20-cv-05910-LB
    INC., BRENT COULTER, FANGYI DUAN,      )
20  JINNENG BAO, ELAINE PENG, and XIAO     )   **NONPARTY TENCENT HOLDINGS**
    ZHANG,                                 )   **LIMITED'S NOTICE OF MOTION**
21                                         )   **AND UNOPPOSED MOTION TO**
                                           )   **INTERVENE FOR A LIMITED**
                        Plaintiffs,        )   **PURPOSE AND UNOPPOSED**
22                                         )   **MOTION TO MAINTAIN CERTAIN**
            v.                             )   **INFORMATION UNDER SEAL**
23                                         )
    DONALD J. TRUMP, in his official capacity as )
24  President of the United States, and WILBUR  )
    ROSS, in his official capacity as Secretary of )  Date:  December 10, 2020
25  Commerce,                              )   Time:  9:30 AM PT
                                           )   Place: Courtroom B
26                      Defendants.        )
                                           )
27  _____    )

28

1

## NOTICE OF MOTION

2      PLEASE TAKE NOTICE that, on December 7, 2020 at 9:00 a.m. PT, or as soon

3  thereafter as counsel may be heard in Courtroom B of the U.S. District Court for the Northern

4  District of California, located at 450 Golden Gate Avenue, San Francisco, California, before the

5  Honorable Laurel Beeler, Nonparty and Proposed Intervenor Tencent Holdings Limited

6  ("Tencent") will move, and hereby moves, on an unopposed basis, for leave to intervene for the

7  limited purpose of maintaining the court-ordered seal on its confidential business information in

8  (i) Appendix I to the Commerce Department's Decision Memorandum (the "Mitigation

9  Proposal," ECF No. 85-5, Ex. A) (ii) the Declaration of John Costello (the "Costello

10  Declaration," ECF No. 94-3), and (iii) the Commerce Department Decision Memorandum (the

11  "Decision Memo," ECF No. 94-4).

12      *First*, Tencent seeks an Order pursuant to Fed. R. Civ. P. 24 allowing it to intervene in

13  this action for the limited purpose of arguing that its confidential business information should

14  remain under seal, as previously ordered by the Court.  *See* ECF Nos. 92, 103.

15      *Second*, Tencent seeks an Order pursuant to N.D. Cal. Civ. L. R. 79-5 that its Mitigation

16  Proposal should remain under seal in its entirety because it contains confidential business

17  information provided by Tencent in the course of confidential negotiations with the U.S.

18  Department of Commerce ("Commerce").  Tencent also seeks to maintain certain redactions to

19  the Costello Declaration and Decision Memo because they pertain to confidential business

20  information provided by Tencent in response to an administrative subpoena served by

21  Commerce.  Tencent believes, however, that certain redactions in these two documents may be

22  lifted.

23      This Motion is based on this Notice of Motion, the accompanying Memorandum of

24  Points and Authorities, the Declaration of Brent Irvin, the Declaration of Roberto J. Gonzalez,

25  and all other matters properly before the Court.

26

27

28

- i -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  November 2, 2020

Respectfully  submitted,

KEESAL, YOUNG & LOGAN

By:/s/  Peter R. Boutin
Peter R. Boutin

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Roberto J. Gonzalez  (*pro hac vice pending*)
Anand Sithian  (*pro hac vice forthcoming*)
Jake E. Struebing  (*pro hac vice pending*)
Julie L. Rooney (*pro hac vice pending*)

*Attorneys for Proposed Intervenor Tencent
Holdings Limited*

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES.............................................................................1

I.      STATEMENT OF ISSUES ............................................................................................................1

II.     INTRODUCTION ..........................................................................................................................1

III.    BACKGROUND ............................................................................................................................3

IV.     ARGUMENT ..................................................................................................................................6

        A.      THIS COURT SHOULD GRANT TENCENT'S REQUEST TO
                INTERVENE FOR THE LIMITED PURPOSE OF PROTECTING
                ITS CONFIDENTIAL BUSINESS INFORMATION...........................................6

        B.      COMPELLING REASONS EXIST TO KEEP TENCENT'S
                CONFIDENTIAL BUSINESS INFORMATION UNDER SEAL. .......................7

                1.      Compelling Reasons Exist to Maintain the Seal on the
                        Mitigation Proposal in its Entirety. ...............................................................8

                2.      Compelling Reasons Exist to Maintain the Seal on Most of
                        the Information Currently Redacted in the Costello
                        Declaration and Decision Memo. ................................................................. 13

V.      CONCLUSION ............................................................................................................................ 14

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

CASES

3

4

*United States* v. *Aetna, Inc.*,
   No. 1:16-cv-01494 (JDB), 2017 WL 8809512 (D.D.C. Feb, 19, 2017) ............................ 8, 13

5

*In re Anthem, Inc. Data Breach Litig.*,
   No. 15-MD-02617-LHK, 2018 WL 3092256 (N.D. Cal. Mar. 16, 2018) ............................ 10

6

7

*United States* v. *Anthem, Inc.*,
   No. 1:16-cv-01493 (ABJ), 2017 WL 8893165 (D.D.C. Jan. 3, 2017) .................................... 9

8

*In re Apple Inc. Device Performance Litig.*,
   No. 5:18-md-02827-EJD, 2019 WL 1767158 (N.D. Cal. Apr. 22, 2019) ............................... 9

9

10

*Armour of Am.* v. *United States*,
   70 Fed. Cl. 240 (2006) ............................................................................................................ 6

11

12

*Aya HealthCare Services, Inc.* v. *AMN Healthcare, Inc.*,
   2020 WL 1911502 (S.D. Cal. Apr. 20, 2020) ........................................................................ 8

13

*In re Bayerische Motoren Werke AG*,
   No. 19-mc-80272-VKD, 2020 WL 3869184 (N.D. Cal. July 9, 2020) .................................. 7

14

15

*United States* v. *Bazaarvoice, Inc.*,
   No. 13-CV-00133-WHO, 2014 WL 11297188 (N.D. Cal. Jan. 21, 2014) ........................... 11

16

17

*Beckman Indus., Inc.* v. *International Ins. Co.*,
   966 F.2d 470 (9th Cir. 1992) .................................................................................................. 7

18

*Bohannon* v. *Facebook, Inc.*,
   No. 12–cv–01894–BLF, 2014 WL 5598222 (N.D. Cal. Nov. 3, 2014) ............................... 12

19

20

*Cal. Parents for Equalization of Educ. Materials* v. *Torlakson*,
   No.17-cv-00635-CRB(JSC), 2018 WL 3930141 (N.D. Cal. Aug. 16, 2018) ........................ 7

21

*Clark* v. *Bunker*,
   453 F.2d 1006 (9th Cir. 1972) ................................................................................................ 7

22

23

*Ctr. for Auto Safety* v. *Chrysler Grp., LLC*,
   809 F.3d 1092 (9th Cir. 2016) ................................................................................................ 7

24

*EON Corp. IP Holdings LLC* v. *Cisco Sys. Inc.*,
   No. 12–cv–01011–JST, 2014 WL 1017514 (N.D. Cal. Mar. 11, 2014) ................................ 9

25

26

27

- iv -

28

*Formulabs, Inc.* v. *Hartley Pen Co.*,
    275 F.2d 52 (9th Cir. 1960) ...................................................................................................6

*In re Google Inc. Gmail Litig.*,
    No. 13–MD–02430–LHK, 2013 WL 5366963 (N.D. Cal. Sept. 25, 2013) ...........................10

*Google Inc.* v. *Eolas Techs. Inc.*,
    No. 15-cv-05446-JST, 2016 WL 9243337 (N.D. Cal. Mar. 22, 2016) .................................14

*Google Inc.* v. *IXI Mobile (R&D) Ltd.*,
    No. 16-CV-04173-LHK, 2016 WL 10749145 (N.D. Cal. Oct. 11, 2016) ...........................14

*In re Hewlett-Packard Co. S'holder Derivative Litig.*,
    No. 3:12–cv–06003–CRB, 2015 WL 1153864 (N.D. Cal. Mar. 13, 2015) ...........................9

*J.M. Woodworth Risk Retention Grp., Inc.* v. *Uni-Ter Underwriting Mgmt. Corp.*,
    No. 2:13-cv-00911-JAD-PAL, 2014 WL 12769806 (D. Nev. May 20, 2014) .......................9

*Kamakana* v. *City & Cty. of Honolulu*,
    447 F.3d 1172 (9th Cir. 2006) ...............................................................................................7

*Murphy* v. *Kavo Am. Corp.*,
    No. CV 11 0410 YGR, 2012 WL 1497489 (N.D. Cal. Apr. 27, 2012) .................................12

*Network Appliance, Inc.* v. *Sun Microsystems Inc.*,
    No. C-07-06053 EDL, 2010 WL 841274 (N.D. Cal. Mar. 10, 2010) .................................13

*Northrop Grumman Info. Tech., Inc.* v. *United States*,
    74 Fed. Cl. 407 (2006) ...........................................................................................................6

*In re Qualcomm Litig.*,
    No. 3:17-cv-0108, 2017 WL 5176922 (S.D. Cal. Nov. 8, 2017) ......................................8, 9

*Selling Source, LLC* v. *Red River Ventures, LLC*,
    No. 2:09–cv–01491–JCM–GWF, 2011 WL 1630338 (D. Nev. Apr. 29, 2011) ..................14

*Southwest Ctr. for Biological Diversity* v. *Berg*,
    268 F.3d 810 (9th Cir. 2001) .................................................................................................6

*Sumotext Corp.* v. *Zoove, Inc.*,
    No. 16-cv-01370-BLF, 2020 WL 836737 (N.D. Cal. Feb. 20, 2020) .................................12

*Synchronoss Technologies, Inc.* v. *Dropbox Inc.*,
    No. 16-cv-00119-HSG, 2018 WL 6002319 (N.D. Cal. 2018) ...............................................8

*SEC* v. *Telegram Grp. Inc.*,
    No. 19-cv-9439 (PKC), 2020 WL 3264264 (S.D.N.Y. June 17, 2020) ...............................10

*U.S. Commodity Futures Trading Comm'n* v. *Whitney*,
    441 F. Supp. 2d 61 (D.D.C. 2006) ......................................................................................11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**OTHER AUTHORITIES**

*Addressing the Threat Posed by WeChat, and Taking Additional Steps to Address*
*the National Emergency with Respect to the Information and Communication*
*Technology and Services Supply Chain*, 85 Fed. Reg. 48641 (Aug. 6, 2020) ........................3

Civil Local Rule 79-5 ................................................................................................1, 3, 12, 13

Fed. R. Civ. P. 24 ................................................................................................................1, 6

Fed. R. Civ. P. 24(a) ................................................................................................................6

Fed. R. Civ. P. 24(a)(2) ........................................................................................................1, 6

Fed. R. Civ. P. 24(b) ................................................................................................................7

Fed. R. Civ. P. 24(b)(1)(B) ......................................................................................................1, 7

*Foreign Investment, Jobs, and National Security: The CFIUS Process Before the*
*Subcomm. on Domestic and Int'l Monetary Policy, Trade, and Tech. of the H.*
*Comm. on Fin. Serv.*, 109th Cong. (2006) (statement of Treasury Deputy
Secretary Robert M. Kimmitt) ..............................................................................................11

Reuters Staff, *Tencent to Engage with Indian Authorities to Ensure Continued*
*Availability of Apps*, Reuters (Sept. 3, 2020),
https://www.reuters.com/article/us-china-india-apps/tencent-to-engage-with-
indian-authorities-to-ensure-continued-availability-of-apps-
idUSKBN25U2C8. ..............................................................................................................11

U.S. Dep't of State, Fact Sheet, *The Clean Network Safeguards America's Assets*
(Aug. 11, 2020), https://www.state.gov/the-clean-network-safeguards-
americas-assets/ ................................................................................................................10

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Federal Rules of Civil Procedure 24(a)(2) and 24(b)(1)(B), Tencent respectfully moves for leave to intervene for the limited purpose of arguing that its confidential business information should remain under seal, as previously ordered by this Court.  *See* ECF Nos. 92, 103.  Pursuant to Civil Local Rule 79-5, Tencent also respectfully moves to maintain the sealing of its Mitigation Proposal and certain information currently redacted in the Costello Declaration and Decision Memo, all of which is confidential business information that, if disclosed, could harm the company's competitive standing.  Plaintiffs support Tencent's combined motion and Defendants do not oppose it. *See* Gonzalez Decl. ¶¶ 4, 5.[1]

## I.    STATEMENT OF ISSUES

1.  Does Tencent have the right to intervene in this matter pursuant to Federal Rule of Civil Procedure 24 to protect the confidentiality of its business information?

2.  Should Tencent's Mitigation Proposal (ECF No. 85-5, Ex. A) remain under seal in its entirety because it is replete with detailed confidential business information—including proposals regarding potential governance structures, product features, security arrangements, and business partners—offered in the course of confidential negotiations with Commerce?

3.  Should certain redacted portions of the Costello Declaration (ECF No. 94-3) and Decision Memo (ECF No. 94-4) remain under seal because they contain confidential business information provided by Tencent in response to an administrative subpoena issued by Commerce?

## II.    INTRODUCTION

Nonparty Tencent seeks to intervene in these proceedings for the limited purpose of protecting its confidential business information.  The confidential materials should remain under seal for multiple reasons.

---

[1]  Citations in the form of "Gonzalez Decl." refer to the Declaration of Roberto J. Gonzalez in Support of Proposed Intervenor Tencent Holding Limited's Unopposed Motion to Intervene for a Limited Purpose and Unopposed Motion to Maintain Certain Information Under Seal, dated November 2, 2020.

*First*, the Mitigation Proposal contains Tencent's proposed business plans submitted to Commerce in the course of confidential negotiations regarding the future state of WeChat in the United States.   Specifically, the Mitigation Proposal reflects numerous confidential details regarding the potential structure of Tencent's WeChat business in the United States—including, but not limited to, details regarding potential corporate organizational and governance structures, business partners, product design, source code, and technological and security arrangements. Further, the Mitigation Proposal in fact contains Tencent's last two mitigation proposals submitted to Commerce on successive dates.   As a result, the public disclosure of these documents would reveal the evolution of Tencent's proposals as the confidential discussions with Commerce proceeded.

Tencent's potential business plans and strategies, offered in the course of private negotiations, are quintessential confidential business information meriting protection.   They reflect Tencent's existing and future commercial, technological, security, and logistical arrangements and capacities.   If this information were publicly revealed, a third-party would gain insights that could aid it in competing against Tencent in the United States or elsewhere. Tencent's proposals were also the product of significant investment in technological, business, and legal analysis.   The revelation of such proposals could benefit a competitor that is currently negotiating with—or will in the future negotiate with—the U.S. government regarding similar concerns.   Such companies would have a keen competitive interest in learning Tencent's proposals and gaining insight into the puts and takes of its discussions with the U.S. government. Finally, regardless of the outcome of this litigation, Tencent may find itself in the position of continuing negotiations with the U.S. government, as well as potentially engaging in similar negotiations with other governments such as India.   The public revelation of these non-final proposals could seriously prejudice Tencent in such negotiations with these governmental counterparties.

Tencent made its Mitigation Proposal to Commerce with the legitimate expectation and express request that its confidential business information remain protected.   While, as the Court noted, the Decision Memo contains two sentences that provide a high-level description of certain

- 2 -

elements of the Mitigation Proposal, this passage was publicly disclosed without prior notice to, or the consent of, Tencent.  In any event, this general description lacks specific details regarding the actual content of Tencent's potential business plans.  It therefore in no way warrants the full or partial disclosure of the Mitigation Proposal, which is replete with highly sensitive details regarding proposed business arrangements.  Under governing case law, the sealing of the entire document is appropriate and satisfies the narrow tailoring requirement of Civil Local Rule 79-5.

*Second*, most, but not all, of the current redactions to the Costello Declaration and Decision Memo should remain in place because they reflect Tencent's confidential business information, designated as such in response to an administrative subpoena issued by Commerce. This highly sensitive information concerns Tencent's data collection and retention measures, business model with respect to third-party advertising, and agreements with content delivery network providers.  The disclosure of such information would allow competitors to better understand and therefore compete against Tencent's business model.  As set forth more fully in the accompanying Declaration of Brent Irvin,[2] however, Tencent believes that certain statements in the Costello Declaration and Decision Memo may be unredacted because they are not business sensitive and reflect publicly-available information.

## III.   BACKGROUND

On August 6, 2020, President Trump issued Executive Order 13943, "Addressing the Threat Posed by WeChat, and Taking Additional Steps to Address the National Emergency with Respect to the Information and Communication Technology and Services Supply Chain" (the "Executive Order").  85 Fed. Reg. 48641.

After the Executive Order was announced, Tencent engaged in confidential discussions with Commerce officials regarding, among other things, mitigation proposals to address the government's stated concerns and to serve as an alternative to a ban on WeChat in the United States.  *See* Irvin Decl. ¶ 6.  The Mitigation Proposal (or "Appendix I" to the Commerce

---

[2]   Citations in the form of "Irvin Decl." refer to the Declaration of Brent Irvin in Support of Proposed Intervenor Tencent Holding Limited's Unopposed Motion to Intervene for a Limited Purpose and Unopposed Motion to Maintain Certain Information Under Seal, dated November 2, 2020.

Decision Memo) contains the last two proposals that Tencent made, each of which was put forward following discussion with Commerce regarding a respective prior proposal. *Id.* Each proposal was marked "confidential" and stated that the information therein, if disclosed, "could adversely affect the commercial, financial, and competitive position" of Tencent. *Id.* ¶ 7. Rather than accept Tencent's last proposal or request changes, Commerce issued the "Identification of Prohibited Transactions to Implement Executive Order 13943" on September 18, 2020. *Id.* ¶ 8.

After this litigation ensued and the Court issued a preliminary injunction, on September 28, 2020, the government publicly filed a redacted version of Commerce's Decision Memo. *See* ECF No. 76-1, Ex. A to Costello Decl. Tencent was not provided prior notice of the inclusion, without redaction, in the Decision Memo of two sentences that list in general terms some of the high-level features of the Mitigation Proposal. Appendix I, which contained the Mitigation Proposal, was not included in the public filing.

On September 29, 2020, Plaintiffs' counsel contacted Tencent's counsel, stating that Plaintiffs' counsel requested from Defendants' counsel a copy of Appendix I. Defendants' counsel stated they would provide it prior to the entry of a protective order if Tencent's counsel consented. In response, Tencent's counsel stated its position to both parties that the Mitigation Proposal "should not be publicly disclosed, both because it constitutes highly business sensitive/trade secret information, including potential business plans and potential business partners, and out of respect for the Commerce/Tencent discussions." ECF No. 85-1, Bien Decl. ¶ 6. Tencent's counsel stated, however, that it would consent to the government providing a copy of the Mitigation Proposal to Plaintiffs' counsel so long as the document would be (i) subject to "attorneys' eyes only" review, (ii) afforded "the highest protections available under the forthcoming protective order," and (iii) "used solely in connection with the *US WeChat Users Alliance v. Trump* action." *Id.*[3] Pursuant to an agreement among Defendants' counsel,

---

[3] The Court subsequently approved a protective order defining "Highly Confidential – Attorneys' Eyes Only" information as "extremely sensitive" information, the disclosure of which "would create a substantial risk of serious harm that could not be avoided by less restrictive means." ECF No. 100 at 3. Tencent's Mitigation Proposal and the information redacted in the Costello Declaration and Decision Memo have been designated as such. *See* ECF No. 85-1, Bien Decl. ¶ 6; ECF No. 94-1, Orloff Decl. ¶ 2.

Plaintiffs' counsel, and Tencent, Defendants provided a copy of the Mitigation Counsel to Plaintiffs for "attorneys' eyes only" review on September 30, 2020.   Plaintiffs subsequently submitted an unopposed motion for leave to file the Mitigation Proposal under seal on October 8, 2020.   *See* ECF No. 85; ECF No. 85-1, Bien Decl. ¶ 10.   The court granted the motion on October 19, 2020.   *See* ECF No. 92.

On October 19, 2020, Defendants also filed a motion, unopposed by Plaintiffs, to seal portions of the Costello Declaration and the Commerce Decision Memo, which included "certain sensitive and sealable information provided by Tencent in response to an administrative subpoena served by the Department of Commerce."   ECF No. 94 at 2.   Tencent's subpoena response identified specific data and content delivery network providers, "and was designated by Tencent as confidential business information."   ECF No. 94-1, Orloff Decl. ¶ 2; Irvin Decl. ¶ 22. The Court granted the motion on October 23, 2020.   *See* ECF No. 103.

On October 23, 2020, the Court denied Defendants' motion to stay the preliminary injunction.   *See* ECF Nos. 104 (under seal) and 105 (redacted).   The Court instructed the parties, however, to file a joint statement reconsidering the sealing of information in Tencent's Mitigation Proposal and in the Costello Declaration and the Decision Memo by October 27, 2020.   ECF No. 105.   To provide Tencent "an opportunity to provide the parties with its position on the issues raised by the Court and, if necessary, to defend any equities in sealing on its own accord," the parties entered into a stipulation extending the time to file their joint statement to November 3, 2020.   ECF No. 107 at 2.   The Court so ordered the stipulation on October 27, 2020.   *See* ECF No. 108.

Counsel for Tencent subsequently contacted Plaintiffs' counsel and Defendants' counsel to inform them that Tencent would be moving to intervene in the litigation for the limited purpose of maintaining the seal on its confidential business information.   Gonzalez Decl. ¶ 3. Tencent's counsel further explained that Tencent would take the position that the Mitigation Proposal should remain sealed in its entirety, and that most, but not all, of the redactions to the Costello Declaration and Decision Memo should remain in place.   *Id.*   Tencent's counsel attached PDFs showing Tencent's proposed modifications to the redactions.   *Id.*   Plaintiffs'

1  counsel indicated that Plaintiffs support Tencent's combined motion. *Id.* ¶ 4. Defendants'

2  counsel stated that "[t]he government does not oppose Tencent's intervention solely for purposes

3  of defending Tencent's confidentiality interests with respect to materials produced in this

4  litigation," and that the government does not oppose the sealing of the Mitigation Proposal in its

5  entirety or the modified redactions to the Costello Declaration and the Decision Memo. *Id.* ¶ 5.

6  **IV.    ARGUMENT**

7          **A.    THIS COURT SHOULD GRANT TENCENT'S REQUEST TO
               INTERVENE FOR THE LIMITED PURPOSE OF PROTECTING ITS
8              CONFIDENTIAL BUSINESS INFORMATION.**

9          Tencent respectfully submits that it satisfies the requirements for intervention as of right

10  for the purpose of protecting its confidential business information. *See* Fed. R. Civ. P. 24(a)(2).

11  The Ninth Circuit has stated that Rule 24 should be interpreted liberally in favor of potential

12  intervenors, and that its construction should be guided by practical, rather than technical

13  distinctions. *See Southwest Ctr. for Biological Diversity* v. *Berg*, 268 F.3d 810, 818 (9th Cir.

14  2001).    Tencent's application for intervention is timely, and Tencent has a "significantly

15  protectable" interest in protecting its confidential business information at issue.    *See, e.g.*,

16  *Formulabs, Inc.* v. *Hartley Pen Co.*, 275 F.2d 52, 56 (9th Cir. 1960) (allowing a third party to

17  intervene for the purpose of challenging the defendant's disclosure of trade secrets); *see also*

18  *Northrop Grumman Info. Tech., Inc.* v. *United States*, 74 Fed. Cl. 407, 414 (2006); *Armour of*

19  *Am.* v. *United States*, 70 Fed. Cl. 240, 244 (2006). "The loss of trade secrets or other proprietary

20  information by [Tencent] undoubtedly constitutes a practical injury" for purposes of intervention

21  under Rule 24(a). *Armour of Am.*, 70 Fed. Cl. at 245. Further, Tencent's interests in protecting

22  its confidential business information are not adequately represented by the existing parties. The

23  parties' focus in this litigation lies with other issues, and Tencent has a better understanding of

24  the competitive value of its confidential information and a stronger motivation to protect it. *See*

25  *Northrop Grumman*, 74 Fed. Cl. at 420 ("[W]hile it is true that the government has a statutory

26  duty not to release Lockheed's proprietary information . . . , it may very well not vociferously

27  protect Lockheed's secrets as Lockheed would.").

28

1    Alternatively, Tencent should be granted permissive intervention to protect its

2  confidential business information. *See* Fed. R. Civ. P. 24(b)(1)(B); *see, e.g.*, *Beckman Indus.,*

3  *Inc.* v. *International Ins. Co.*, 966 F.2d 470, 473 (9th Cir.1992) (holding that Fed. R. Civ. P.

4  24(b) permits limited intervention for the purpose of challenging a confidentiality order); *In re*

5  *Bayerische Motoren Werke AG*, No. 19-mc-80272-VKD, 2020 WL 3869184, at *2 (N.D. Cal.

6  July 9, 2020) (allowing nonparty to intervene for the limited purpose of objecting to the public

7  disclosure of an unredacted copy of licensing agreement); *Cal. Parents for Equalization of Educ.*

8  *Materials* v. *Torlakson*, No.17-cv-00635-CRB(JSC), 2018 WL 3930141, at *6 (N.D. Cal. Aug.

9  16, 2018) (allowing nonparty to intervene for the limited purpose of moving to maintain

10  confidential designation under protective order).

11       **B.    COMPELLING REASONS EXIST TO KEEP TENCENT'S
             CONFIDENTIAL BUSINESS INFORMATION UNDER SEAL.**

12

13    The party seeking to file under seal must demonstrate "compelling reasons" for limiting

14  public access to court records. *Ctr. for Auto Safety* v. *Chrysler Grp., LLC*, 809 F.3d 1092, 1096–

15  97 (9th Cir. 2016).[4]   Compelling reasons include preventing the public disclosure of "trade

16  secrets." *Kamakana* v. *City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).[5]   To

17  satisfy the compelling reasons standard, a party need not establish a certainty of competitive

18  harm, but rather must show that disclosures "*might* be used . . . 'as sources of business

19  information that *might* harm a litigant's competitive standing.'" *Ctr. for Auto Safety*, 809 F.3d at

20  1097 (emphasis added) (quoting *Nixon* v. *Warner Commnc'ns, Inc.*, 435 U.S. 589, 598 (1978)).

21  Confidential business information in the form of "license agreements, financial terms, details of

22  confidential licensing negotiations, and business strategies" satisfies the compelling reasons

23  ─────────────
     [4]    The parties have taken the position that the lower "good cause" standard applies here because
24  the documents at issue relate to a motion for a preliminary injunction. *See* ECF No. 85 at 4; ECF
     No. 94 at 3 (citing *Jam Cellars, Inc.* v. *Wine Grp. LLC*, No. 19-cv-01878-HSG, 2020 WL
25  5576346, at *2 (N.D. Cal. Sept. 17, 2020)).   Regardless of whether the "compelling reasons" or
     "good cause" standard applies, Tencent satisfies either standard.

26  [5]    The Ninth Circuit has adopted the definition of "trade secrets" set forth in the Restatement of
     Torts, holding that "[a] trade secret may consist of any formula, pattern, device or compilation of
27  information which is used in one's business, and which gives him an opportunity to obtain an
     advantage over competitors who do not know or use it." *Clark* v. *Bunker*, 453 F.2d 1006, 1009
28  (9th Cir. 1972) (quoting Restatement (First) of Torts § 757 cmt. b)).

1   standard. *In re Qualcomm Litig.*, No. 3:17-cv-0108, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8,

2   2017). "Where a third party's property and privacy rights are at issue the need for minimizing

3   intrusion is especially great." *United States* v. *Aetna, Inc.*, No. 1:16-cv-01494 (JDB), 2017 WL

4   8809512, at *1 (D.D.C. Feb, 19, 2017) (quoting *United States* v. *Hubbard*, 650 F.2d 293, 319

5   (D.C. Cir. 1980)).

6           **1.    Compelling Reasons Exist to Maintain the Seal on the Mitigation**

7                   **Proposal in its Entirety.**

8           Here, there are compelling reasons for the Mitigation Proposal to remain sealed. The

9   Mitigation Proposal reflects Tencent's increasingly detailed proposed business plans and

10  strategies with respect to WeChat in the United States.   The details of Tencent's proposed

11  business plans address, but are not limited to, the following: (i) Tencent's proposed U.S. WeChat

12  corporate structure, board and management composition, and governance structure; (ii) the

13  proposed nature of a new WeChat U.S. app; (iii) the nature, technical aspects, and security

14  aspects of a proposed partnership with a potential U.S.-based business partner; (iv) the nature

15  and potential provider of proposed audits; (v) Tencent's proposed future business plans related to

16  the WeChat U.S. app; (vi) the proposed nature of future interaction with the U.S. government;

17  and (vii) the nature of Tencent's proposed security policies. *See* Irvin Decl. ¶ 11.  Each of these

18  proposed bespoke elements is competitively sensitive; reflects investment in business,

19  technological, and legal analysis that is valuable to an industry increasingly focused on

20  addressing governmental regulation regarding data security and national security; and was

21  specifically calibrated by Tencent in the course of ongoing confidential discussions with

22  Commerce.

23          Such *proposed* business plans and strategies, put forward during confidential

24  negotiations, are quintessential examples of confidential business information that merit

25  protection. *See Synchronoss Technologies, Inc.* v. *Dropbox Inc.*, No. 16-cv-00119-HSG, 2018

26  WL 6002319, at *3 (N.D. Cal. 2018) (finding compelling reasons to seal where the information

27  discloses "confidential negotiations and business strategies."); *Aya HealthCare Services, Inc.* v.

28  *AMN Healthcare, Inc.*, 2020 WL 1911502 (S.D. Cal. Apr. 20, 2020) (finding compelling reasons

to seal "proprietary business strategies, and confidential negotiations and agreements with third parties"); *United States* v. *Anthem, Inc.*, No. 1:16-cv-01493, at *5 (ABJ), 2017 WL 8893165, at *2 (D.D.C. Jan. 3, 2017) (granting nonparty's motion to seal "sensitive business information regarding particular product offerings, and details regarding current and future business strategy").   For example, the details of Tencent's proposed organizational and governance structures for its U.S. business involve highly sensitive matters that Tencent does not reveal to the public or its competitors.  *See* Irvin Decl. ¶ 13.  Disclosing these "corporate governance revisions" could give competitors access to Tencent's "sensitive corporate playbook."  *In re Hewlett-Packard Co. S'holder Derivative Litig.*, No. 3:12–cv–06003–CRB, 2015 WL 1153864, at *5 (N.D. Cal. Mar. 13, 2015); *see also J.M. Woodworth Risk Retention Grp., Inc.* v. *Uni-Ter Underwriting Management Corp.*, No. 2:13-cv-00911-JAD-PAL, 2014 WL 12769806, at *1 (D. Nev. May 20, 2014) (sealing memorandum because it contained confidential information about "the corporate structure and internal governance of Plaintiff's business").

Disclosure of the Mitigation Proposal could also result in competitors in the communications and social media space "gaining insight" into Tencent's existing and proposed "business model and strategy," which could enable them to better compete against and distinguish themselves from Tencent whether in the United States or elsewhere.  *In re Qualcomm Litig.*, 2017 WL 5176922, at *2.   The Mitigation Proposal's forward-looking discussion of product development plans for a new U.S. version of WeChat is also precisely the type of confidential business information that would result in competitive injury if disclosed.  *See In re Apple Inc. Device Performance Litig.*, No. 5:18-md-02827-EJD, 2019 WL 1767158, at *2 (N.D. Cal. Apr. 22, 2019) (observing that courts "applying the compelling reasons standard have upheld the sealing" of "product development plans" that, if disclosed, "could harm a party's competitive standing"); *EON Corp. IP Holdings LLC* v. *Cisco Sys. Inc.*, No. 12–cv–01011–JST, 2014 WL 1017514, at *2 (N.D. Cal. Mar. 11, 2014) (granting motion to seal information related to "product configurations, security features, and network configurations").

Revealing the details of Tencent's potential U.S. business arrangements would not only harm Tencent competitively, it would also give bad actors a roadmap for exploiting Tencent's

proposed data security measures.  *See* Irvin Decl. ¶ 19; *see also In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3092256, at *2 (N.D. Cal. Mar. 16, 2018) (granting motion to seal information regarding "current methods for data security" and "methods for data security that Anthem intends to implement in the future" because, if disclosed, it "could allow cyberattackers greater opportunity to defeat these defenses"); *In re Google Inc. Gmail Litig.*, No. 13–MD–02430–LHK,, 2013 WL 5366963, at *3 (N.D. Cal. Sept. 25, 2013) (sealing information about the Gmail system because "hackers and spammers could use this information to circumvent Google's anti-virus and anti-spam mechanisms").

In addition, Tencent and its competitors may currently or in the future find themselves in negotiations with the U.S. government over similar stated concerns regarding data security and national security issues.  For example, the U.S. government has announced potential governmental action against non-U.S. companies across a range of areas, including telecommunications carriers, apps, smartphones, and cloud services.[6]  More broadly, regulatory scrutiny in the area of data privacy continues to grow and technology companies have been investing heavily in this area.  *See* Irvin Decl. ¶¶ 16–17.  Within this context of growing governmental scrutiny, the Mitigation Proposal reflects sensitive concepts and methods that are the product of Tencent's technical, business, and legal analysis.  *Id.* ¶¶ 4–5, 15, 17.  Industry competitors would have keen interest in learning these customized proposals and gaining insight into the puts and takes of the government negotiations in which they were formed.  Thus, public revelation of this information could allow a competitor to unfairly capture the value of Tencent's investment in developing mechanisms to address U.S. governmental regulation.  *See* Irvin Decl. ¶¶ 16–17; *see also SEC* v. *Telegram Grp. Inc.*, No. 19-cv-9439 (PKC), 2020 WL 3264264, at *3 (S.D.N.Y. June 17, 2020) (sealing "proprietary internal analyses" of "investment opportunity" because it could "provide competitors with an unearned advantage").[7]

---

[6]   U.S. Dep't of State, Fact Sheet, *The Clean Network Safeguards America's Assets* (Aug. 11, 2020), https://www.state.gov/the-clean-network-safeguards-americas-assets/.

[7]   Similarly, competitors have significant interest in understanding what mitigation agreements were reached by non-U.S. companies that clear the Committee on Foreign Investment in the United States ("CFIUS")national security review process.  The U.S. government protects the confidentiality of such mitigation agreements and related negotiations for the "important reason,"

Moreover, regardless of whether Commerce's WeChat prohibitions ever come into effect, Tencent may find itself in the position of continuing its negotiations with the U.S. government. *See* Irvin Decl. ¶¶ 9, 18.   The public revelation of Tencent's non-final proposals could seriously prejudice—if not undermine—such discussions, as well as chill the willingness of other companies to engage in similar discussions.   *See United States* v. *Bazaarvoice, Inc.*, No. 13-CV-00133-WHO, 2014 WL 11297188, at *1 (N.D. Cal. Jan. 21, 2014) (granting sealing where disclosure could damage third parties, and noting that "[i]f the Court required the information to be disclosed, it would chill investigations in the future where third party documents are essential.").   Furthermore, Tencent could one day engage in similar negotiations with other governments such as India.   *See* Irvin Decl. ¶ 18.[8]   The public revelation of its Mitigation Proposal could damage Tencent in such discussions, placing Tencent at a disadvantage vis-à-vis its governmental counterparties, as well as competitors that may also be involved in similar government negotiations.

While the Commerce Decision Memo contains two sentences listing some of the high-level elements of the Mitigation Proposal, this fact does not warrant the full or even partial disclosure of the Mitigation Proposal.[9]   This two-sentence description contains only high-level concepts (*e.g.,* "create a new U.S. version of the app," "deploy specific security measures to protect the new app's source code," and "U.S.-based entity with a USG approved governance

---

among others, that that the U.S. government "want[s] these companies to feel comfortable filing with CFIUS and providing their most sensitive proprietary data" to CFIUS. *Foreign Investment, Jobs, and National Security: The CFIUS Process Before the Subcomm. on Domestic and Int'l Monetary Policy, Trade, and Tech. of the H. Comm. on Fin. Serv.*, 109th Cong. (2006) (statement of Treasury Deputy Secretary Robert M. Kimmitt), *available at* https://www.govinfo.gov/content/pkg/CHRG-109hhrg30179/html/CHRG-109hhrg30179.htm.

[8]   *See also* Reuters Staff, *Tencent to Engage with Indian Authorities to Ensure Continued Availability of Apps*, Reuters (Sept. 3, 2020), https://www.reuters.com/article/us-china-india-apps/tencent-to-engage-with-indian-authorities-to-ensure-continued-availability-of-apps-idUSKBN25U2C8.

[9]   The two sentences about the Mitigation Proposal in the Decision Memo were publicly filed in this litigation (as to which Tencent is not a party) without the government providing prior notice to, or obtaining the consent of, Tencent.   The government's unilateral disclosure here should not lead to *additional* disclosure of Tencent's confidential business information. *See U.S. Commodity Futures Trading Comm'n* v. *Whitney*, 441 F. Supp. 2d 61, 73 (D.D.C. 2006) (granting nonparty's motion to seal where "the public information differs from the information it now seeks to protect").

structure"), with no specific details or context given.   This description, for example, reveals nothing about Tencent's proposals about the nature of a new U.S. application or how it would be developed and maintained.   Nor does the description give any indication, across a range of potential options, of what the data security measures may be or what the proposed governance structure would actually entail.   By contrast, the Mitigation Proposal is replete with highly confidential business information concerning these and other competitively sensitive details.   *See* Irvin Decl. ¶ 12.   Because of the volume and specificity of highly confidential information appearing on each and every page of the Mitigation Proposal, preventing competitive harm to Tencent would be infeasible if the document were not sealed in its entirety.   *Id.* ¶ 20.

While in theory the Mitigation Proposal could be redacted to reveal isolated words and phrases in which the high-level terms contained in the Decision Memo appear, there is no practical benefit to doing so and case law does not require such an outcome.   *See, e.g.*, *Sumotext Corp.* v. *Zoove, Inc.*, No. 16-cv-01370-BLF, 2020 WL 836737, at *3 (N.D. Cal. Feb. 20, 2020) (sealing commercial agreement in its entirety because it primarily contained "closely-negotiated" and "customer-specific terms," and observing that, "[a]lthough the Court could require Defendants to unredact certain portions of the agreement, those portions would be too insignificant to have any probative value."); *id.* at *2 (sealing due diligence report in its entirety where the Court was "satisfied that it does not include significant amounts of non-sealable information and that, consequently the request is not overbroad"); *Murphy* v. *Kavo Am. Corp.*, No. CV 11 0410 YGR, 2012 WL 1497489, at *2 (N.D. Cal. Apr. 27, 2012) (sealing entire exhibit because the document could not be "redacted to provide meaningful information otherwise").   Because the Mitigation Proposal contains substantial amounts of confidential business information, "such that attempts to redact the document[] would leave very little public information unredacted," Tencent's request to maintain it under seal entirely is "narrowly tailored in conformance with Civil Local Rule 79-5."   *Bohannon* v. *Facebook, Inc.*, No. 12–cv–01894–BLF, 2014 WL 5598222, at *3 (N.D. Cal. Nov. 3, 2014).

In any event, the two-sentence description found in the Decision Memo is more than sufficient for public understanding of the Court's decision denying a stay of the preliminary

injunction.  Because the public interest in "highly technical" features of the Mitigation Proposal is attenuated, and disclosure has "the potential to cause significant harm" to Tencent's competitive standing, there are compelling reasons to maintain the Mitigation Proposal under seal.  *Network Appliance, Inc.* v. *Sun Microsystems Inc.*, No. C-07-06053 EDL, 2010 WL 841274, at *3 (N.D. Cal. Mar. 10, 2010).[10]  Tencent's status as a nonparty further strengthens the need to protect its confidential business information.  *See Aetna*, 2017 WL 8809512, at *1.

### 2. Compelling Reasons Exist to Maintain the Seal on Most of the Information Currently Redacted in the Costello Declaration and Decision Memo.

The Costello Declaration and Decision Memo bear certain limited redactions made by Defendants' counsel to protect Tencent's confidential business information, which had been submitted to Commerce pursuant to an administrative subpoena.  As discussed in the accompanying Irvin Declaration, Tencent believes that the majority of redactions are necessary to protect its confidential business information and are narrowly tailored in conformance with Civil Local Rule 79-5.  Tencent, however, has identified several redactions that it believes should be lifted because they reflect publicly-available information.  *See* Irvin Decl. ¶¶ 23–25.[11]

For those redactions that Tencent believes are appropriate and necessary, they pertain to sensitive, non-public information concerning, among other things, (i) WeChat's data collection and retention measures, (ii) Tencent's business arrangements with respect to third-party advertising, (iii) internet hosting services for WeChat, (iv) agreements with content delivery networks, and (v) peering agreements.  The disclosure of such information would give competitors a greater understanding Tencent's business model and operational details, allowing them to better compete against Tencent.  *See* Irvin Decl. ¶ 26.  It could also allow bad actors to gain valuable "insights that could aid them in assessing and attacking Tencent's data security infrastructure."  *Id.*  Courts have consistently recognized that compelling reasons exist to seal

---

[10]  Tencent respectfully submits that the Court's discussion of the Mitigation Proposal in its Order denying Defendants' motion to stay should remain fully redacted.  *See* ECF No. 104 at 3:14–5:3.

[11]  For the same reason, Tencent respectfully submits that the redacted references to the Decision Memo and Costello Declaration in the Court's Order denying Defendants' motion to stay may be lifted.  *See* ECF No. 104 at 7:21–22, 13:4–7.

such information. *See Selling Source, LLC* v. *Red River Ventures, LLC*, No. 2:09–cv–01491–JCM–GWF, 2011 WL 1630338, *6 (D. Nev. Apr. 29, 2011) ("Where the material includes information about proprietary business operations, a company's business model or agreements with clients, there are compelling reasons to seal the material."); *see also Google Inc.* v. *IXI Mobile (R&D) Ltd.*, No. 16-CV-04173-LHK, 2016 WL 10749145, at *2 (N.D. Cal. Oct. 11, 2016) (granting motion to seal "confidential information relating to the organization of Plaintiff's business and the locations of Plaintiff's data centers and servers, information that could cause competitive harm to Plaintiff if disclosed"); *Google Inc.* v. *Eolas Techs. Inc.*, No. 15-cv-05446-JST, 2016 WL 9243337, at *2 (N.D. Cal. Mar. 22, 2016) (same).

## V.  CONCLUSION

For these reasons, Tencent respectfully requests that the Court (i) permit Tencent to intervene for the limited purpose of protecting its confidential business information, (ii) hold that the Mitigation Proposal (ECF No. 85-5, Ex. A) should remain sealed in its entirety, (iii) hold that the redactions to the Costello Declaration (ECF No. 94-3) and Decision Memo (ECF No. 94-4) remain intact and sealed, except for those redactions identified in the accompanying declaration, and (iv) hold that the redactions to the Court's Order Denying Defendants' Motion to Stay (ECF No. 104) remain intact and sealed, except for those redactions that correspond to redactions Tencent proposes removing from the Costello Declaration and Decision Memo.  Tencent has submitted proposed orders to this effect.  Tencent does not seek argument on its motion to intervene for a limited purpose and motion to maintain certain information under seal, but is prepared to address these issues at the Court's convenience should the Court conclude a hearing is appropriate.

Dated: November 2, 2020

Respectfully submitted,

KEESAL, YOUNG & LOGAN

By: /s/ Peter R. Boutin
Peter R. Boutin

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

- 14 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Roberto J. Gonzalez (*pro hac vice pending*)
Anand Sithian (*pro hac vice forthcoming*)
Jake E. Struebing (*pro hac vice pending*)
Julie L. Rooney (*pro hac vice pending*)

*Attorneys for Proposed Intervenor Tencent
Holdings Limited*

TENCENT'S MOTION TO INTERVENE
CASE NO. 3:20-CV-05910-LB