KEESAL, YOUNG & LOGAN
Peter R. Boutin, SBN 65261
450 Pacific Avenue
San Francisco, CA 94133
Telephone: (415) 398-6000
Facsimile: (415) 981-0136
peter.boutin@kyl.com

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Roberto J. Gonzalez (*pro hac vice pending*)
Jake E. Struebing (*pro hac vice pending*)
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
rgonzalez@paulweiss.com
jstruebing@paulweiss.com

Anand Sithian (*pro hac vice forthcoming*)
Julie L. Rooney (*pro hac vice pending*)
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
asithian@paulweiss.com
jrooney@paulweiss.com

*Attorneys for Proposed Intervenor Tencent Holdings Limited*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| U.S. WECHAT USERS ALLIANCE, CHIHUO INC., BRENT COULTER, FANGYI DUAN, JINNENG BAO, ELAINE PENG, and XIAO ZHANG,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, and WILBUR ROSS, in his official capacity as Secretary of Commerce,<br><br>Defendants. | Case No. 3:20-cv-05910-LB<br><br>**DECLARATION OF BRENT IRVIN IN SUPPORT OF NONPARTY TENCENT HOLDINGS LIMITED'S UNOPPOSED MOTION TO INTERVENE FOR A LIMITED PURPOSE AND UNOPPOSED MOTION TO MAINTAIN CERTAIN INFORMATION UNDER SEAL**<br><br>Date: December 10, 2020<br>Time: 9:30 AM PT<br>Place: Courtroom B |

1. I am currently employed as Vice President and General Counsel of Tencent Holdings Limited ("Tencent"). I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would competently testify to the facts herein.

2. I make this declaration in accordance with Local Rule 79-5(d)(1)(A) and in support of nonparty Tencent's Unopposed Motion to Intervene for a Limited Purpose, and Unopposed Motion to Maintain Certain Information under Seal.

3. On August 6, 2020, President Trump issued Executive Order 13943, "Addressing the Threat Posed by WeChat, and Taking Additional Steps to Address the National Emergency with Respect to the Information and Communication Technology and Services Supply Chain" (the "Executive Order"). 85 Fed. Reg. 48,641.

4. After the Executive Order was issued, over the course of many weeks, Tencent made significant investments in technological, business, and legal research and analysis, and engaged in extensive discussions internally and with advisors regarding, among other things, potential steps Tencent could take to address the government's stated concerns regarding WeChat's operation in the United States as an alternative to the restrictions contemplated by the Executive Order.

5. As part of this process, Tencent engaged in discussions with several potential U.S. business partners and technical experts relating to Tencent's current and potential future operation of WeChat in the United States, including details regarding technological solutions to safeguard U.S. user data and source code, and compliance policies and audit mechanisms to further increase protections. These discussions involved complex business, technological, and legal issues related to Tencent's business in the United States.

6. Following the Executive Order, Tencent engaged in a series of discussions with officials from the U.S. Department of Commerce ("Commerce"). Among other things, these discussions addressed Tencent's successive mitigation proposals designed to address the government's stated concerns and serve as an alternative to a ban on WeChat in the United States. These proposals evolved over the course of Tencent's discussions with Commerce, and also reflected the research and analysis performed by Tencent internally and with third party

1    experts and potential business partners.  I came to learn that the last two mitigation proposals
2    were attached as Appendix I (the "Mitigation Proposal," ECF No. 85-5, Ex. A) to the Commerce
3    Decision Memo.  Defendants' counsel provided the Mitigation Proposal to Plaintiffs' counsel
4    subject to certain confidentiality conditions and with Tencent's consent.  Plaintiffs submitted the
5    Mitigation Proposal under seal, pursuant to the court's October 19, 2020 Order granting their
6    motion to seal.  *See* ECF No. 85; ECF No. 85-1, Bien Decl. ¶ 10; ECF No. 85-5, Ex. A; ECF
7    No. 92.

8         7.    Tencent had a legitimate expectation that the Mitigation Proposal it provided to
9    Commerce and the negotiations and discussions regarding those proposals would remain
10   confidential, and both Tencent and Commerce acknowledged the value of keeping the content of
11   their discussions confidential.  Each time Tencent submitted a mitigation proposal to Commerce,
12   Tencent marked the proposal "confidential" and stated that the information therein, if disclosed,
13   "could adversely affect the commercial, financial, and competitive position" of Tencent.

14        8.    Rather than accept Tencent's Mitigation Proposal or request changes, Commerce
15   issued the "Identification of Prohibited Transactions to Implement Executive Order 13943" (the
16   "Identification") on September 18, 2020.

17        9.    Although Tencent's discussions with Commerce regarding mitigation paused after
18   the issuance of the Identification, at a future date, and regardless of the outcome of this litigation,
19   Tencent and Commerce could reengage in these discussions.

20        10.   The Mitigation Proposal contains the highly confidential business information of
21   Tencent, including details regarding fundamental aspects of its potential business operations and
22   strategy in the United States, including with respect to potential corporate organizational and
23   governance structures, business partners, product design, source code, and technological and
24   security arrangements.

25        11.   For example, the Mitigation Proposal addresses, among other things, the
26   following: (i) Tencent's proposed U.S. WeChat corporate structure, board and management
27   composition, and governance structure; (ii) the proposed nature of a new WeChat U.S. app; (iii)
28   the nature, technical aspects, and security aspects of a proposed partnership with a potential U.S.-

based business partner; (iv) the nature and potential provider of proposed audits; (v) Tencent's proposed future business plans related to the WeChat U.S. app; (vi) the proposed nature of future interaction with the U.S. government; and (vii) the nature of Tencent's proposed security policies.

12. Such commercially valuable and highly confidential business information of Tencent appears on every page of the Mitigation Proposal, ECF No. 85-5, Ex. A as described in the chart below:

| PAGE | INFORMATION AT ISSUE |
|---|---|
| AR-1653 | Highly confidential business information related to (i) Tencent's proposed U.S. WeChat corporate structure, board and management composition, and governance structure, (ii) the proposed nature of a new WeChat U.S. app, and (iii) the nature, technical aspects, and security aspects of a proposed partnership with a potential U.S.-based business partner. |
| AR-1654 | Highly confidential business information related to (i) the nature, technical aspects, and security aspects of a proposed partnership with a potential U.S.-based business partner; (ii) the nature and potential provider of proposed audits, (iii) Tencent's proposed future business plans related to the WeChat U.S. app, and (iv) the proposed nature of future interaction with the U.S. government. |
| AR-1655 | Highly confidential business information related to (i) Tencent's proposed U.S. WeChat corporate structure, board and management composition, and governance structure, and (ii) the proposed nature of future interaction with the U.S. government. |
| AR-1656 | Highly confidential business information related to (i) Tencent's proposed U.S. WeChat corporate structure, board and management composition, and governance structure, (ii) the proposed nature of future interaction with the U.S. government, and (iii) the nature of Tencent's proposed security policies. |
| AR-1657 | Highly confidential business information related to (i) the nature and potential provider of proposed audits, (ii) Tencent's proposed business plans related to the WeChat U.S. app, (iii) the nature of Tencent's proposed security policies, and (iv) the nature, technical aspects, and security aspects of a proposed partnership with a potential U.S.-based business partner. |
| AR-1658 | Highly confidential business information related to (i) the nature and potential provider of proposed audits, (ii) the nature, technical aspects, and security aspects of a proposed partnership with a potential U.S.-based business partner, (iii) the proposed nature of future interaction with the U.S. government, and (iv) Tencent's proposed business plans related to the WeChat U.S. app. |

13. Each of these proposed, customized details is the product of substantial financial and other investment by Tencent, constitutes valuable, highly confidential business information, and involves sensitive matters that Tencent does not reveal to the public or its competitors.

14. Moreover, the substance and structure of the Mitigation Proposal, as a whole, reflect the evolution of Tencent's confidential discussions with Commerce, as well as its extensive internal and external discussions with experts and business partners following the announcement of the Executive Order regarding the commercial, technological, and logistical feasibility for Tencent of various data security-related and other proposals.

15. As a result, the disclosure of the Mitigation Proposal, in whole or in part, would result in competitive harm to Tencent and there are compelling reasons to keep it under seal.

16. In particular, if all or part of the Mitigation Proposal were publicly revealed, a third-party company would gain insights that could aid it in competing against Tencent in the United States or otherwise. For example, information related to Tencent's proposed governance structures, operational and security infrastructure, and business partners for a new U.S. business could give competitors insights into Tencent's overarching business models, strategy, and capacities. Particularly at a time when many technology and social media companies are reevaluating their governance structures and security measures to address quickly evolving governmental scrutiny and guidance, and to account for user concern related to data privacy, such information is competitively valuable and would advantage Tencent's competitors if revealed.

17. Additionally, the revelation of all or part of the Mitigation Proposal would benefit a competitor that is currently negotiating with—or will in the future negotiate with—the U.S. government regarding similar data security concerns. Increasingly, a range of non-U.S. companies are grappling with how to address U.S. government regulation and scrutiny in this area, and there is keen industry interest in structures and techniques that can be used to address such concerns. More broadly, as regulatory scrutiny on technology companies and their data privacy practices has increased, so too has the advantage that companies can obtain by gaining

insight into their competitors' approach to unique governance structures, bespoke security arrangements, and interaction models with governments.

18. Further, the revelation of the information would seriously prejudice Tencent if, in the future, it finds itself in the position of continuing its negotiations with Commerce. Negotiating in a fishbowl, where successive non-final proposals have been publicly revealed, would threaten to damage, if not completely undermine, the ability of such a negotiation to succeed. The revelation of Tencent's proposals would also damage Tencent in the event that it finds itself negotiating with other governments, such as India.

19. Revelation of the Mitigation Proposal could also harm Tencent and its users if bad actors used the information as a roadmap to assess and uncover ways to attack Tencent's security infrastructure. Indeed, aside from its competitive value, a core reason that Tencent does not publicly reveal the details of its existing and potential security infrastructure and business partnerships is to prevent such information from falling into the hands of bad actors.

20. Because of the volume and specificity of highly confidential information appearing on each and every page of the Mitigation Proposal, preventing such harm to Tencent would not be feasible if the Proposal were not sealed in its entirety. For the same reason, filing a public redacted version also would not provide any substantial or comprehensible information to the public.

21. As a result, the disclosure of the Mitigation Proposal, in whole or in part, would result in harm to Tencent and there are compelling reasons to keep it under seal in its entirety. Maintaining the seal in its entirety satisfies the narrow tailoring requirement of Civil Local Rule 79-5.

22. For similar reasons, the large majority of redactions the government made to the Costello Declaration, ECF No. 94-3, and the Decision Memo, ECF No. 94-4, should remain intact because they pertain to valuable confidential business information. As the government stated, the information reflected in these documents was provided by Tencent pursuant to an administrative subpoena issued by Commerce. Tencent designated its subpoena response as

"confidential" and stated that it contained "commercially sensitive, proprietary, and non-public information" that should not be made public.

23. However, Tencent believes that certain redactions in these documents can be removed because they do not satisfy this standard.[1]

24. The chart below provides a line-by-line account of such information in the Costello Declaration, ECF No. 94-3:

| PAGE | INFORMATION AT ISSUE | DISPOSITION |
|---|---|---|
| 5, lines 22–24 | | Remove redaction. |
| 6, line 4 (one word) | Confidential business information related to Tencent's U.S. business partners and infrastructure, including its agreements with content delivery network providers. | Retain redaction. |
| 7, lines 3 and 5 (one word) | Confidential business information related to Tencent's U.S. business partners and infrastructure, including its agreements with content delivery network providers. | Retain redaction. |

25. The chart below provides a line-by-line account of such information in the Decision Memorandum, ECF No. 94-4:

| PAGE | INFORMATION AT ISSUE | DISPOSITION |
|---|---|---|
| 10, paragraph 2, sentence 2 | | Remove redaction. |
| 10, paragraph 3, sentences 2–3, footnotes 67, 69, 70 | | Remove redaction. |
| 10, paragraph 3, sentence 4 | Confidential business information related to Tencent's data collection, retention, and security practices and business model with respect to | Retain redaction. |

---

[1] By arguing for the maintaining or lifting of certain redactions, Tencent is not taking a position on the full accuracy or completeness of the statements at issue.

| | | |
|---|---|---|
| | advertising. | |
| 10, paragraph 3, sentence 5 and footnote 71 | Confidential business information related to Tencent's data security practices and business strategy and business model with respect to third-party advertising. | Retain redaction. |
| 10, paragraph 3, sentence 6 | Confidential business information related to Tencent's business strategy and partnerships, including its business model with respect to third-party advertising. | Retain redaction. |
| 15, paragraph 1, middle of sentence 3 | Confidential business information related to Tencent's business partners and infrastructure. | Retain redaction. |
| 15, paragraph 5, sentences 1–2 | Confidential business information related to Tencent's business partners and infrastructure, including its internet hosting services, exists in the middle of sentence 1. Other portions of sentences contain primarily public information. | Partially retain redaction. |
| 16, paragraph 1, sentence 1 (one word) | Confidential business information related to Tencent's U.S. business partners and infrastructure, including its agreements with content delivery network providers. | Retain redaction. |
| 16, paragraph 3, sentence 1 (one word) | Confidential business information related to Tencent's U.S. business partners and infrastructure, including its peering agreements. | Retain redaction. |

26. The statements that Tencent believes should remain redacted constitute valuable, highly confidential business information, and involve sensitive matters that Tencent does not reveal to the public or its competitors. Like the information in the Mitigation Proposal, their disclosure would allow companies to gain insights that could aid them in competing against Tencent in the United States or otherwise, and could allow bad actors to gain insights that could aid them in assessing and attacking Tencent's security infrastructure. As a result, the disclosure of this information would result in harm to Tencent and there are compelling reasons to keep it redacted. The continued redaction of such information satisfies the narrow tailoring requirement of Civil Local Rule 79-5.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

DATED: November 2, 2020
Washington State

_____
Brent Irvin