MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
VAN SWEARINGEN – 259809
BENJAMIN BIEN-KAHN – 267933
ALEXANDER GOURSE – 321631
AMY XU – 330707
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
Email: mbien@rbgg.com
egalvan@rbgg.com
vswearingen@rbgg.com
bbien-kahn@rbgg.com
agourse@rbgg.com
axu@rbgg.com

KELIANG (CLAY) ZHU – 305509
DEHENG LAW OFFICES PC
7901 Stoneridge Drive #208
Pleasanton, California 94588
Telephone: (925) 399-5856
Facsimile: (925) 397-1976
Email: czhu@dehengsv.com

ANGUS F. NI – Admitted *Pro Hac Vice*
AFN LAW PLLC
502 Second Avenue, Suite 1400
Seattle, Washington 98104
Telephone: (773) 543-3223
Email: angus@afnlegal.com

THOMAS R. BURKE – 141930
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111-6533
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
Email: thomasburke@dwt.com

DAVID M. GOSSETT – Admitted *Pro Hac Vice*
COURTNEY T. DETHOMAS – 294591
DAVIS WRIGHT TREMAINE LLP
1301 K Street N.W., Suite 500 East
Washington, D.C. 20005-3366
Telephone: (202) 973-4216
Facsimile: (202) 973-4499
Email: davidgossett@dwt.com
courtneydethomas@dwt.com

JOHN M. BROWNING – Admitted *Pro Hac Vice*
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020-1104
Telephone: (212) 603-6410
Facsimile: (212) 483-8340
Email: jackbrowning@dwt.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| U.S. WECHAT USERS ALLIANCE, CHIHUO INC., BRENT COULTER, FANGYI DUAN, JINNENG BAO, ELAINE PENG, and XIAO ZHANG,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, and WILBUR ROSS, in his official capacity as Secretary of Commerce,<br><br>Defendants. | Case No. 3:20-cv-05910-LB<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND REPORT OF RULE 26(F) CONFERENCE**<br><br>Judge: Hon. Laurel Beeler<br><br>Trial Date: None Set |

Plaintiffs U.S. WeChat Users Alliance ("USWUA"), Chihuo, Inc., Brent Coulter, Fangyi Duan, Jinneng Bao, Elaine Peng, and Xiao Zhang ("Plaintiffs"), and Defendants President Donald Trump and Secretary Wilbur Ross ("Defendants") (collectively, "the parties"), through counsel, have met and conferred to the extent required by Rule 26(f) of the Federal Rules of Civil Procedure[1] and jointly submit the following Case Management Conference Statement, which includes the parties' joint report pursuant to Rule 26(f)(2).

1.  **JURISDICTION AND SERVICE**

    A.  **Plaintiffs' Position**

    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331. No party contests venue. All parties have been served.

    B.  **Defendants' Position**

    Defendants dispute that the Court has jurisdiction over Plaintiffs' claims against the President and Executive Order 13943 (the "Executive Order"). Defendants do not contest venue or service, and do not contest statutory subject matter jurisdiction under 28 U.S.C. § 1331. However, Defendants may contest Plaintiffs' standing to raise certain theories, such as those asserting vagueness challenges under the Fifth Amendment, if those claims survive Defendants' pending motion to dismiss on other grounds, ECF No. 141. Defendants may also contest whether there has been a valid waiver of sovereign immunity as to certain of Plaintiffs' theories regarding review under the Administrative Procedure Act ("APA").

---

[1] Defendants dispute that Rule 26(f) applies to this proceeding. Plaintiffs seek judicial review of final agency action, which is presumptively based upon an administrative record, not civil discovery. *See, e.g.*, *Friends of the Earth v. Hintz*, 800 F.2d 822, 828-29 (9th Cir. 1986) ("With a few exceptions, . . . judicial review of agency action is limited to a review of the administrative record."). Rule 26(f) thus appears to be inapplicable on its own terms. *See* Fed. R. Civ. P. 26(a)(1)(B), (f)(1) (exempting from Rule 26(f)'s requirements "action[s] for review on an administrative record"). Nevertheless, Defendants do not see any benefit to motion practice on the issue, particularly on the current record, and Defendants are therefore jointly submitting this report with Plaintiffs.

## 2. FACTS

### A. Plaintiffs' Position

On August 6, 2020, President Trump issued the Executive Order, which prohibits "transactions" with WeChat as identified by the Secretary of Commerce ("the Secretary"). While framing the Executive Order as necessary to combat Chinese Communist Party censorship and protect national security, the Executive Order was in service of garnering pre-election publicity and inciting anti-Chinese animus. On September 17, 2020, the Commerce Department released its "Identification of Prohibited Transactions to Implement Executive Order 13943" (the "Identification"). The Identification sets forth eleven defined terms and identifies seven "transactions" to be prohibited pursuant to the Executive Order. Executive Order 13943 and the Identification effectively ban the use of WeChat in the United States.

In a stark violation of the First Amendment, the Executive Order and Identification target and silence WeChat users, the overwhelming majority of whom are members of the Chinese and Chinese-speaking communities. They regulate and prohibit constitutionally protected speech, expression, and association. Defendants' ban on WeChat is not narrowly tailored to restrict only that speech which presents national security risks to the United States, nor does it leave open ample alternative avenues of communication for WeChat users. Because of its substantial burdens on the free exercise of religion, the ban on WeChat violates First Amendment and the Religious Freedom Restoration Act.

The Executive Order and the Identification fail to define key terms and do not apprise reasonable persons of what conduct may be prohibited, and are therefore void for vagueness under the First and Fifth Amendments to the U.S. Constitution.

By prohibiting the use of WeChat but not other apps that are owned and used primarily by people who are not of Chinese or Chinese-American ancestry, the Executive Order and the Identification single out people of Chinese and Chinese-American ancestry and those who wish to communicate and associate with them, and subject them to disparate treatment on the basis of race, ethnicity, nationality, national origin, and alienage.

The International Emergency Economic Powers Act ("IEEPA") includes specific limits on Defendants' authority to prohibit transactions related to WeChat. The prohibitions under the WeChat ban exceed each of the four specific limits on Defendants' authority contained in 50 U.S.C. § 1702(b).

In issuing the Identification, the Secretary failed to consider relevant evidence, did not adequately explain rationales for the Identification's prohibitions, and failed to consider alternatives. The Secretary's actions are in excess of statutory authority and his actions and omissions render the Identification arbitrary, capricious, an abuse of discretion, and/or otherwise not in accordance of law.

### B. Defendants' Position

The U.S. Intelligence Community has determined that the routine and systemic cyber espionage activities of the communist government of the People's Republic of China ("PRC") represent not only a growing attack threat to our core military and critical infrastructure systems, but the greatest long-term threat to our nation's information and intellectual property, and to our economic vitality. This growing threat is enhanced by the PRC's practice of pursuing hostile objectives through the purportedly private business activities of Chinese companies, which—though nominally private, are in fact instrumentalities of the Chinese state. Chinese technology companies in particular are increasingly required by the PRC government to organize their business activities around the demands of the Chinese state and its unrelenting efforts to achieve digital dominance across the globe. These companies have been known to provide the PRC government with access to massive amounts of online data, in what has been likened to a "massive surveillance project." Moreover, to ensure cooperation with this mass surveillance project, the PRC government has enacted national intelligence laws that oblige Chinese individuals, organizations, and institutions—even those outside of mainland China—to assist the PRC in carrying out a wide array of intelligence work.

Congress has directed the Executive Branch to investigate and respond to the growing national security threat from the PRC. *See, e.g.*, Pub. L. No. 115-232 §§ 1260(5), 1261. The

Executive Branch has done so through a multi-pronged set of efforts. As relevant here, on May 15, 2019, the President declared a national emergency under the IEEPA and the National Emergency Act, finding that "foreign adversaries are increasingly creating and exploiting vulnerabilities in information and communications technology and services, which store and communicate vast amounts of sensitive information, facilitate the digital economy, and support critical infrastructure and vital emergency services, in order to commit malicious cyber-enabled actions." Securing the Information and Communications Technology and Services Supply Chain, Exec. Order No. 13,873, 84 Fed. Reg. 22,689 (2019) ("ICTS Order"), pmbl. In the ICTS Order, the President found that those risks are exacerbated by the unrestricted use in the United States of information and communications technology or services supplied by persons subject to the jurisdiction or direction of foreign adversaries. *Id.* The President has since renewed this national-emergency declaration. *See* 85 Fed. Reg. 29,321 (May 13, 2020).

Pursuant to the ICTS Order, on August 6, 2020, the President issued the Executive Order at issue here, 85 Fed. Reg. 48,641, pertaining to WeChat, a mobile "superapp" created and operated by the Chinese firm Tencent Holdings Ltd. ("Tencent"). Tencent is one of the PRC's largest technology companies that has officially been named by the PRC as an artificial intelligence "national champion." The President determined that WeChat's automatic and ongoing collection of vast swaths of information from United States users threatens "to allow the [CCP] access to Americans' personal and proprietary information," thereby creating an unacceptable national security threat. The Executive Order directed the Secretary of Commerce (the "Secretary") to prescribe a set of prohibited WeChat-related transactions to mitigate the threat.

On September 18, 2020, the Secretary, after consultation with the U.S. Intelligence Community and the Department of Homeland Security, issued a notice (the "Identification"), identifying for prohibition six categories of technological services that facilitate operation of the WeChat mobile app. Specifically, the Secretary restricted U.S. app stores from continuing to offer the WeChat mobile application and accompanying

software updates for download by U.S. users; the provision of U.S.-based internet hosting services to the WeChat mobile application; the provision of certain internet transmission and cloud storage services to optimize the speed and functionality of the WeChat mobile application in the United States; the provision of financial services to support WeChat's mobile payment functionalities; and use of the WeChat mobile application's constituent code or functions in other software within the United States.  Importantly, these identified restrictions regulate only the WeChat mobile application and services that support it, not user activity or expression, which may continue to take place through a wide range of alternative apps and communication technologies, including non-mobile versions of WeChat itself.

The Department of Commerce has produced to counsel for Plaintiffs the administrative record underlying the Identification (the "Administrative Record"), *see* ECF No. 122, consisting of public and certain non-public information considered by the Secretary in determining that these particular prohibitions were warranted under the Executive Order.   The relevant findings of the Secretary, and the materials he considered, are contained within that record.

Because it is Defendants' position that the only claims permitted to be asserted in this action are those that challenge the Secretary's action (rather than the President's), Defendants believe that the Court's review in this action is properly limited to the Administrative Record, even as to Plaintiffs' constitutional claims.  *See, e.g.*, *Jiahao Kuang v. DOD*, No. 18-CV-03698-JST, 2019 WL 293379, at *2–3 (N.D. Cal. Jan. 23, 2019) (concluding that that "Plaintiffs' constitutional claims do not warrant extra-record discovery" based on the nature of the claims); *Afianian v. Duke*, No. CV1707643FMORAOX, 2018 WL 9619346, at *5-6 (C.D. Cal. Nov. 30, 2018) (similar); *Bellion Spirits, LLC v. United States*, 335 F. Supp. 3d 32, 43 (D.D.C. 2018) ("district courts have been hesitant to permit a plaintiff asserting a constitutional challenge to agency action to avoid the APA's bar on extra-record evidence.").  Defendants therefore do not anticipate substantial, if any, factual issues for resolution.  *See, e.g.*, *Janjua v. Neufeld*, No.

15-CV-05475-EMC, 2017 WL 2876116, at *3 (N.D. Cal. July 6, 2017) (judicial review of agency action generally does not involve "resolv[ing] factual questions" but instead is directed at "the purely legal question of whether the agency could have reasonably reached the decision that it did" on the basis of an administrative record).  Moreover, even if factual disputes exist, Defendants do not believe that it is necessary to resolve them to dispose of Plaintiffs' claims, each of which fails for legal reasons.

Nevertheless, if the Court disagrees, and depending on the claims that survive Defendants' pending Motion to Dismiss and the outcome of the pending review by the Court of Appeals for the Ninth Circuit, Defendants anticipate potential factual disputes regarding the impact of the prohibitions identified by the Secretary (both in general, and as to Plaintiffs in particular) and the availability of alternative means of communication.

**3.     LEGAL ISSUES**

    **A.     Plaintiffs' Position**

        1.     Whether the Executive Order and Identification violate Plaintiffs' rights to free speech and association under the First Amendment?

        2.     Whether the Executive Order and Identification violate Plaintiffs' rights to free exercise of religion under the First Amendment?

        3.     Whether the Executive Order and the Identification are therefore void for vagueness under the First and Fifth Amendments to the U.S. Constitution?

        4.     Whether the Executive Order and the Identification violate Plaintiffs' rights to equal protection guaranteed by the Fifth Amendment to the United States Constitution?

        5.     Whether the Executive Order and the Identification exceeds the limits on Defendants' authority under IEEPA?

        6.     Whether the Executive Order and the Identification violate Plaintiffs' rights protected by the Religious Freedom Restoration Act?

        7.     Whether the Identification is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, within the meaning of 5 U.S.C. §

706(2)(B), and whether it is arbitrary, capricious, an abuse of discretion, and/or otherwise not in accordance with law, within the meaning of 5 U.S.C. § 706(2)(A).

### B. Defendants' Position

1. Whether the Court possesses jurisdiction over Plaintiffs' claims asserted against the Executive Order, notwithstanding the Supreme Court's long-established recognition that courts have "no jurisdiction of a bill to enjoin the President in the performance of his official duties." *Mississippi v. Johnson*, 71 U.S. 475, 501 (1866); *see also Franklin v. Massachusetts*, 505 U.S. 788, 802-03 (1992).

2. Whether the Identification's prohibition of specific economic transactions in order to reduce espionage risks flowing from the WeChat mobile app implicates Plaintiffs' freedom of speech so as to require heightened scrutiny under the Free Speech Clause of the First Amendment, and if so whether such scrutiny is satisfied.

3. Whether the Identification's prohibition of specific economic transactions in order to reduce espionage risks flowing from the WeChat mobile app implicates Plaintiffs' freedom of religion so as to require heightened scrutiny under the Free Exercise Clause of the First Amendment, and if so whether such scrutiny is satisfied.

4. Whether the Identification is unconstitutionally vague under the Fifth Amendment and whether Plaintiffs have standing to assert such a challenge in light of the express provisions in the Identification clarifying that user activity of the sort Plaintiffs allege is not subject to prohibition.

5. Whether the Identification satisfies the Equal Protection Clause.

6. Whether the Identification exceeds the limits of the authority conferred under IEEPA, and if so, whether alternate authority exists.

7. Whether the Identification violates the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.*

8. Whether the Secretary's selection of prohibited transactions to address the national security threat posed by WeChat is committed to agency discretion and thus is exempt from arbitrary and capricious review under 5 U.S.C. § 706(a), and if not, whether

the Identification satisfies the deferential standard of reasoned decisionmaking under the APA, particularly in light of the broad deference due to the Executive Branch in areas of national security and foreign policy.

9. Depending on resolution of the foregoing questions, what relief (if any) is narrowly tailored to address any legal defects in the Identification, without unduly infringing the Executive Branch's authority to address the serious national security concerns at issue.

**4.  MOTIONS**

Plaintiffs filed a Motion for Preliminary Injunction on August 28, 2020. ECF No. 17. Plaintiffs also moved for expedited discovery on September 3, 2020, ECF No. 18, which the Court denied on September 10, 2020. ECF No. 25. Following the issuance of the Secretary's Identification and at the Court's request, Plaintiffs filed a Renewed Motion for Preliminary Injunction on September 18, 2020. ECF No. 48. On September 19, 2020, the Court granted "the plaintiffs' motion for a nationwide injunction against the implementation of Executive Order 13,943 (limited to the Secretary of Commerce's Identification of Prohibited Transactions 1 through 6)." ECF No. 59.

On September 24, 2020, Defendants filed a Motion to Stay Injunction Pending Appeal ("Motion to Stay," ECF No. 68) as well as a Motion to Shorten Time (ECF No. 69) for briefing on their stay motion. The Court set an abbreviated briefing schedule for the Motion to Stay (ECF No. 73) and denied the Motion to Stay on October 23, 2020 (ECF No. 105).

The Court granted administrative motions brought by Plaintiffs (ECF No. 85) and Defendants (ECF No. 94) asking the Court to seal business information and related references that non-party Tencent Inc. designated as confidential business information when it produced such information in response to an administrative subpoena served by the Department of Commerce, and which was included in the Administrative Record and produced to counsel for Plaintiffs subject to a stipulated protective order. *See* ECF Nos. 92, 103, 108. On November 3, 2020, non-party Tencent Inc. moved to intervene for the

limited purpose maintaining its mitigation proposal and related references under seal (ECF No. 125), which the Court granted-in-part on November 24, 2020 (ECF No. 133).

Defendants moved to dismiss the First Amended Complaint on November 16, 2020 (ECF No. 130).  On December 8, 2020, Plaintiffs filed a Second Amended Complaint (ECF No. 136), thereby mooting the pending Motion to Dismiss.  On December 23, 2020, Defendants moved to dismiss the Second Amended Complaint in part.  ECF No. 141.  Plaintiffs' Opposition is due by February 1, 2021, Defendants' Reply is due by February 15, 2021, and the hearing on that motion is set for March 4, 2021 at 9:30 a.m.  Defendants note, however, that on January 20, 2021, due to the change in administration, there was new leadership at the Department of Commerce.  In order to provide sufficient time for new Department of Commerce officials to become familiar with the issues in this case, Defendants may seek to extend the briefing and hearing schedule on their Motion to Dismiss.  If so, they will confer with Plaintiffs and seek such relief, as appropriate.

As explained in Section 21 below, Plaintiffs intend to bring a Motion to Compel Completion of the Administrative Record.

The parties may bring other motions as developments warrant, including cross motions for summary judgment.  As necessary, the parties will update the Court concerning additional motions that the parties intend to pursue.

**5.   AMENDMENT OF PLEADINGS**

Plaintiffs do not anticipate amending the operative Second Amended Complaint at this time but reserve the right to seek stipulation of counsel or leave from the Court to do so upon the discovery of new facts of relevance.  Defendants have not yet answered and their time to respond to claims that are not subject to the pending Motion to Dismiss is tolled pending resolution of that motion.  *See* ECF No. 140 at 2.

**6.   EVIDENCE PRESERVATION**

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and taken adequate steps to ensure that evidence will be preserved.  In light of the January 7, 2021 resignation of Deputy Assistant Secretary for

Intelligence and Security John Costello (who presided over the drafting of the Decision Memorandum and certified the administrative record) as well as the potential for change in personnel due to the transition of presidential administrations, Plaintiffs have asked Defendants to confirm that they have issued preservation notices to all personnel who may have created or received relevant materials. Undersigned counsel for Defendants provided that confirmation during their telephonic discussion on January 13, 2021. Prior to that request, undersigned counsel also issued additional guidance to agency counsel on January 13, 2021, regarding the requirement to preserve relevant materials of departing employees. Nevertheless, Defendants do not believe the departure of any agency employees is likely to impact this litigation in light of the fact that the Administrative Record has already been compiled.

The parties intend to further meet and confer regarding any additional issues relating to evidence preservation, if applicable, after either (1) the Court rules on Defendant's pending Partial Motion to Dismiss, or (2) the Ninth Circuit grants Defendants' appeal (in the event that court so rules) — whichever occurs first.

**7.    DISCLOSURES**

Although the parties disagree about whether any disclosure requirements under Rule 26 apply to this proceeding (and, more broadly, whether discovery is otherwise appropriate), they agree that resolution of the appeal currently pending before the Ninth Circuit, the pending Motion to Dismiss, ECF No. 141, and disputes relating to the Administrative Record will likely inform the proper scope of any discovery. Accordingly, the parties have discussed and agreed to delay any exchange of initial disclosures, if applicable, and to meet and confer regarding whether discovery is appropriate and, if so, its scope, until after either (1) the Court rules on Defendant's pending Partial Motion to Dismiss, or (2) the Ninth Circuit grants Defendants' appeal (in the event that court so rules) — whichever occurs first.

**8.    DISCOVERY**

See Section 7, above.

**9.    CLASS ACTIONS**

This case is not a class action.

**10.   RELATED CASES**

The parties are not currently aware of any related cases.

**11.   RELIEF**

**A.    Plaintiffs' Position**

Plaintiffs seek relief and judgment as follows:

1. An order declaring that Executive Order 13943 and the Identification are unconstitutional under the First Amendment;

2. An order declaring that Executive Order 13943 and the Identification are unconstitutional under the Fifth Amendment;

3. An order declaring Executive Order 13943 and the Identification do not comply with the limitations on presidential power in the National Emergency Act and the International Emergency Economic Powers Act, and are thus ultra vires;

4. An order declaring that Executive Order 13943 and the Identification violate the Religious Freedom Restoration Act;

5. An order declaring that the Identification violates the APA;

6. An order preliminarily and permanently enjoining Defendants from enforcing the Executive Order and the Identification;

7. An order preliminarily and permanently staying the implementation date of any of the penalty provisions applicable to the Executive Order and the Identification; and

8. Granting such other and further relief as this Court may deem just and proper, including an award to Plaintiffs of the costs of this suit and reasonable attorneys' fees and litigation expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412(d).

**B.    Defendants' Position**

Defendants contest that Plaintiffs are entitled to the requested relief, or any relief whatsoever. At a minimum, the Court lacks jurisdiction to award equitable relief relating

to the Executive Order itself.  No monetary damages are sought or appropriate.

## 12. SETTLEMENT AND ADR

This action was assigned to the Alternative Dispute Resolution (ADR) Multi-Option Program governed by ADR Local Rule 3.  *See* ECF No. 4.  Counsel for the parties have discussed the selection of an ADR process.  Plaintiffs are open to participating in Early Neutral Evaluation.  Defendants do not believe that participation in ADR will be a fruitful use of the parties' resources, particularly in light of the national security sensitivities of this case.  As required by the Court's November 20, 2020 Order (ECF No. 132), the parties are filing today their ADR certification forms.

## 13. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

The parties have consented to Magistrate Judge Beeler conducting all proceedings in this case.

## 14. OTHER REFERENCES

This case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## 15. NARROWING OF ISSUES

The parties may be willing to stipulate to certain facts, if appropriate and to be determined after any issues relating to discovery have been resolved.

## 16. EXPEDITED TRIAL PROCEDURE

This case is not the kind of case that should be handled on an expedited basis with streamlined procedures.

## 17. SCHEDULING

The scheduling of discovery cut off dates and hearing of any other dispositive motions is premature at this time, particularly in light of the parties' threshold dispute as to whether discovery is warranted.  Plaintiffs seek to have the Court approve an expedited briefing schedule for Plaintiffs' Motion to Compel Completion of the Administrative Record, as discussed below in Section 21.

**18. TRIAL**

**A.     Plaintiffs' Position**

The Plaintiffs anticipate that trial will last approximately seven to ten court days.

**B.     Defendants' Position**

Defendants do not anticipate that a trial will be necessary to resolve this case. In the event the Court disagrees, Defendants anticipate that any trial would take three to five days. Plaintiffs have not made a jury demand.

**19. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

Plaintiffs filed a disclosure of interested entities or persons on January 19, 2021, identifying no interested entities other than Plaintiffs themselves. Plaintiffs filed a supplemental certification on January 20, 2021 stating that Tencent Holdings Ltd. is an interested entity within the meaning of Civil L.R. 3-15 in that it (i) has a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) has a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding. No such disclosure is required of the Government. *See* Local Rule 3-15.

**20. PROFESSIONAL CONDUCT**

All attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21. OTHER MATTERS**

**A.     Plaintiffs' Position**

1.     <u>Plaintiffs' Motion to Compel Completion of the Administrative Record</u>. Defendants produced a certified administrative record on November 2, 2020, but did not include a privilege log. The Declaration of John Costello Certifying Administrative Record suggests that privileged material has been withheld from the administrative record. *See* ECF No. 122-1 at paragraph 3 ("This Administrative Record contains all non-privileged materials directly or indirectly considered by Commerce in making the above-cited decision."). Plaintiffs and Defendants have traded multiple rounds

of letters concerning Plaintiffs' concern that the administrative record is not complete, including because Defendants have not produced a privilege log.  Counsel for the parties have also met and conferred regarding these issues.  Defendants assert that numerous categories of information are privileged, including but not limited to:  drafts of the Identification and Decision Memo, internal working group documents (regarding setting goals, plans, agendas), press strategy documents, subpoena drafts and related documents, draft analyses including analyses relating to mitigation proposals, internal emails concerning the recommended prohibitions, and external emails and communications with other agencies including the Department of Justice, Department of the Treasury, and certain inter-agency groups.

Defendants have taken the position that predecisional and deliberative documents are not logged because the internal deliberations of the agency are never part of the administrative record.  Defendants are incorrect.  As explained in *Institute for Fisheries Resources v. Burwell*:

> A complete administrative record includes "all documents and materials directly or indirectly considered by agency decision-makers." It is obvious that in many cases internal comments, draft reports, inter– or intra-agency emails, revisions, memoranda, or meeting notes will inform an agency's final decision. Therefore, the government is wrong to assert that these types of materials, as a categorical matter, should be excluded from the universe of materials "directly or indirectly considered by agency decision-makers."  Of course, these types of materials could be protected from disclosure by the deliberative process privilege. But the scope of the privilege doesn't define the scope of the material directly or indirectly considered. If a privilege applies, the proper strategy isn't pretending the protected material wasn't considered, but withholding or redacting the protected material and then logging the privilege.

Case No. 16-CV-01574, 2017 WL 89003, at *1 (N.D. Cal. Jan. 10, 2017) (cleaned up).

Plaintiffs intend to bring a Motion to Compel Completion of the Administrative Record.  Counsel for the parties have discussed a briefing schedule for Plaintiffs' anticipated motion, and have agreed—subject to the Court's approval—that Plaintiffs' motion will be filed by February 19, Defendants' Opposition will be due by March 1, and Plaintiffs' Reply will be due by March 5.  Plaintiffs ask the Court to set the briefing schedule accordingly, and to set a hearing at the Court's earliest opportunity.

      2.    <u>Executive Order 13971 Prohibiting Transactions with WeChat Pay</u>.

On January 5, 2021, President Trump issued Executive Order 13971, titled "Addressing the Threat Posed by Applications and Other Software Developed or Controlled by Chinese Companies." *See* Exhibit A. This executive order prohibits "any transaction by any person, or with respect to any property, subject to the jurisdiction of the United States, with persons that develop or control the following Chinese connected software applications, or with their subsidiaries, as those transactions and persons are identified by the Secretary of Commerce (Secretary) under subsection (e) of this section: … WeChat Pay….".

Executive Order 13971 therefore serves to evade the Court's preliminary injunction entered September 20, 2020, which enjoins Defendants from implementing the Identification's fifth prohibited transaction, which prohibits "Any provision of services through the WeChat mobile application for the purpose of transferring funds or processing payments to or from parties within the land or maritime borders of the United States and its territories."

Plaintiffs have informed Defendants that Executive Order 13971 appears to evade the Court's preliminary injunction. Counsel for Defendants have incorrectly stated that Executive Order 13971 does not evade the Court's preliminary injunction because WeChat Pay is a separate app and is unavailable in the United States. However, WeChat Pay is a function *within* WeChat (not a separate app), and it *is* used by some WeChat users in the United States. Plaintiffs' raise this issue to the Court for discussion at the case management conference, including as to whether a briefing schedule should be discussed so as to avoid rushed briefing as the parties and court recall were required by the Secretary's issuance of the Identification one business day before the prohibitions related to WeChat were set to go into effect.

    **B.**    **Defendants' Position**

      1.    <u>Plaintiffs' Motion to Compel Completion of the Administrative Record</u>.

Defendants disagree with Plaintiffs' characterization of the dispute above.

Defendants have not taken the position that a privilege log is never required with respect to an administrative record.  Rather, Defendants' position is that they have not withheld from the Administrative Record any materials that should otherwise have been included.  In particular, Defendants disagree with the premise that agency materials that simply reflect the deliberative process, such as drafts of the Identification, drafts of administrative subpoenas issued to Tencent, and intra- or inter-agency emails reflecting agency deliberations, are properly part of the administrative record.  *See Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) ("predecisional and deliberative documents 'are not part of the administrative record to begin with,' so they 'do not need to be logged as withheld from the administrative record.'" (citation omitted)); *see also, e.g.*, *Luis & Delta-Mendota Water Auth. v. Jewell*, No. 1:15-cv-01290-LJO-GSA, 2016 WL 3543203, at *19 (E.D. Cal. June 23, 2016) ("deliberative documents are not part of the administrative record").  Indeed, not only are such materials privileged, they are irrelevant: absent a showing of bad faith or improper behavior (not at issue here), the lawfulness of an "agency's action is judged in accordance with its stated reasons. . . . [T]he actual subjective motivation of agency decisionmakers is irrelevant as a matter of law[.]"  *In re Subpoena Duces Tecum Served on Office of the Comptroller of the Currency*, 156 F.3d 1279, 1279-80 (D.C. Cir. 1998) (citations omitted)).[2]

Defendants recognize that certain judges in the Northern District of California have concluded otherwise, but the Government disagrees with those decisions and they are not binding on this Court.  Nevertheless, Defendants believe that there would be value in conducting a further meet and confer on this issue to determine whether the parties can find a mutually acceptable middle ground.  In the event further discussions between the

---

[2] Plaintiffs correctly note that Mr. Costello's certification includes language clarifying that the Administrative Record does not include privileged material.  Defendants included that language in the interest of transparency and in light of their recognition that judges in this District have disagreed with the Government (and other courts) regarding whether deliberative materials are properly included in an administrative record as a matter of course.  That language was not intended to suggest that Defendants believe that deliberative materials are properly included in an administrative record, which is contrary to the Government's long-held position on this issue.

1 | parties do not resolve this issue, Defendants consent to the expedited briefing schedule
2 | requested by Plaintiffs.

### 2. Executive Order 13971

Defendants disagree that Executive Order 13971 evades the Court's injunction and believe that any possible dispute in this regard is premature. The Court did not enjoin the Secretary from taking further action, even under the Executive Order at issue in this case, to mitigate the threat posed by WeChat. *See* Prelim. Inj. Order, ECF No. 59 at 22 ("Nothing in this order prevents the Secretary . . . from identifying 'any other transaction that is related to WeChat . . . under the authority delegated by [the Executive Order].'"). Moreover, the Secretary has not yet identified any transactions for prohibition under Executive Order 13971, and the Executive Order sets no particular deadline for him to do so. Furthermore, the relationship between WeChat Pay, and the WeChat mobile application is potentially disputed. Indeed, WeChat Pay appears to raise entirely different issues than the speech-related claims that Plaintiffs have thus far pressed as a basis for emergency, preliminary relief. In light of all of these considerations, Defendants respectfully submit that it is premature to contemplate litigation regarding action that the Secretary has not yet taken. If a dispute arises in the future regarding the consistency of any action taken under Executive Order 13971 and the existing injunction, it can be brought to the Court's attention at that time.

//
//
//
//
//
//
//
//
//

3. <u>Remote Proceedings</u>

In light of the ongoing pandemic, the parties propose that the parties and the Court continue their practice of using remote procedures to convene any necessary and appropriate proceedings in this case.

DATED: January 21, 2021                    Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By:   *Van Swearingen*
         Van Swearingen

Attorneys for Plaintiffs

DATED: January 21, 2021                    MICHAEL D. GRANSTON
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Branch Director

DIANE KELLEHER
Assistant Branch Director

By:   *Serena M. Orloff*
         Serena M. Orloff
         Amy Powell
         U.S. Department of Justice, Civil Division
         Federal Programs Branch
         1100 L Street NW, Room 12512
         Washington, DC 20005
         (202) 305-0167 (office)
         (202) 616-8470 (fax)
         Serena.M.Orloff@usdoj.gov

Attorneys for Defendants